UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE ASSOCIATED PRESS, | ) CASE NO.: 2:12-CV-01087-DLC-FM<br>) ECF CASE<br>) |
| Plaintiff, | ) **DEFENDANTS' ANSWER TO**<br>) **COMPLAINT AND** |
| v. | ) **COUNTERCLAIMS**<br>) |
| MELTWATER U.S. HOLDINGS, INC.;<br>MELTWATER NEWS U.S, INC.; and<br>MELTWATER NEWS U.S. 1, INC., | )<br>) **JURY TRIAL DEMANDED**<br>) |
| Defendants. | )<br>) |

In its Complaint, The Associated Press ("AP") challenges one of the core functions of the Internet.  Search engines, which index online content and provide information about its existence and location in response to users' search queries, have existed since the earliest days of the Internet and are essential to its operation.   Meltwater offers just such a search engine, which allows its corporate and institutional customers to discovery, analyze, and educate others about information in the news media relevant to their businesses.  The search results that Meltwater returns to its users—headlines of articles, along with a short snippet of text, and a link to the complete article hosted on the publisher's website—comprise the same basic information returned by numerous other Internet search services.  Meltwater's news-specific search engine operates fully within the bounds of U.S. copyright law.

Beyond its misguided attack on Meltwater's search engine, AP brings claims based on the purported conduct of Meltwater's users that have no basis in fact.  AP asserts that unidentified Meltwater customers have used Meltwater's system to store and distribute to third parties' full text versions of certain AP articles.  Those assertions are false, and premised entirely on speculation as to what some hypothetical user might theoretically be able to do, not on what any actual customer has ever actually done.  AP's naked conjecture does not give rise to a viable

legal claim.  In addition, AP seeks not merely to resurrect, but to dramatically expand the so-called "hot news" doctrine, trying to use it to circumvent the various problems that doom its copyright claims.  AP's efforts are legally infirm and should alarm anyone who values the ability to find information that others have freely published on the Internet.  Against this backdrop, Defendants answer AP's complaint and assert their own counterclaims for declaratory judgment, libel, and tortious interference.

## ANSWER

Defendants Meltwater US Holdings Inc., Meltwater News US Inc., and Meltwater News US1 Inc. (collectively, "Defendants" or "Meltwater"), by their undersigned attorneys, answer the Complaint of Plaintiff The Associated Press ("AP") as follows:

## NATURE OF THE ACTION

1.      Defendants deny the allegations of Paragraph 1 of the Complaint.

2.      Defendants deny the allegations of Paragraph 2 of the Complaint.

3.      Paragraph 3 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 3 of the Complaint.

4.      Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 4 of the Complaint.

5.      Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 5 of the Complaint.

6.      Defendants deny that the Meltwater entities named as Defendants in the Complaint were founded in 2001.  Defendants further state as follows:  Defendant Meltwater US Holdings Inc. was incorporated in 2007 (as Magenta News US Holdings Inc.); Defendant Meltwater News US Inc. was incorporated in 2007 (as Magenta News US Operations Inc.); and Defendant Meltwater News US1 Inc. was incorporated in 2005 (as Magenta News US Inc.).

Defendants admit that Paragraph 6 of the Complaint quotes from the website of Meltwater Group, the corporate group of which the Meltwater entities named as Defendants in the Complaint are part.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 6 of the Complaint.

7.      Defendants deny the allegations of Paragraph 7 of the Complaint.

8.      Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of the second sentence of Paragraph 8 of the Complaint.  Defendants deny the remaining allegations of Paragraph 8 of the Complaint.

9.      Defendants deny the allegations of Paragraph 9 of the Complaint.

10.      Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 10 of the Complaint.

11.      Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 11 of the Complaint.

12.      Defendants admit that Paragraph 12 of the Complaint quotes Article I, Section 8, Clause 8 of the U.S. Constitution.  Defendants deny the remaining allegations of Paragraph 12 of the Complaint.

13.      Defendants deny the allegations of Paragraph 13 of the Complaint.

14.      Paragraph 14 of the Complaint is a summary of AP's claim and does not require a response.

**PARTIES**

15.      Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 15 of the Complaint.

16.      Defendants admit that Meltwater US Holdings Inc. is a Delaware corporation, with its principle place of business at 50 Fremont Street, San Francisco, California.

17.     Defendants admit that Meltwater News US Inc. is a Delaware corporation, with its principle place of business at 50 Fremont Street, San Francisco, California.

18.     Defendants admit that Meltwater News US1 Inc. is a Delaware corporation, with its principle place of business at 50 Fremont Street, San Francisco, California.

19.     Defendants admit that Meltwater News US Inc. has an office located at 49 West 27th Street, New York, New York.  Defendants further admit that Meltwater News US1 Inc. is registered to do business in New York as a foreign corporation.

## JURISDICTION AND VENUE

20.     Paragraph 20 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants do not contest jurisdiction in this judicial district for the limited purpose of this action only, for so long as the federal claims remain in the suit.  Defendants reserve the right to challenge subject matter jurisdiction in the event Plaintiff's federal claims are dismissed.

21.     Paragraph 21 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants do not contest venue in this judicial district for the limited purpose of this action only.

22.     Paragraph 22 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants do not contest personal jurisdiction in this judicial district for the limited purpose of this action only.

## FACTUAL BACKGROUND

A.     **THE ASSOCIATED PRESS**

*Overview of AP's Business*

23.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 23 of the Complaint.

24. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 24 of the Complaint.

25. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 25 of the Complaint.

26. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 26 of the Complaint.

27. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 27 of the Complaint.

28. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 28 of the Complaint.

29. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 29 of the Complaint.

30. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 30 of the Complaint.

*Composition of a Story*

31. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 31 of the Complaint.

32. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 32 of the Complaint.

33. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 33 of the Complaint.

34. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 34 of the Complaint.

35. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 35 of the Complaint.

36.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 36 of the Complaint.

*Subscriptions to the AP Wire*

37.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 37 of the Complaint.

38.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 38 of the Complaint.

39.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 39 of the Complaint.

40.     Defendants deny the allegations of Paragraph 40 of the Complaint.

**B.     MELTWATER GROUP**

*Overview of Meltwater Group*

41.     Defendants admit the allegations of Paragraph 41 of the Complaint, and further state that there are additional optional components to Meltwater News beyond the four offerings described in that Paragraph.

42.     Defendants admit that Meltwater News has on some occasions described itself as an alternative to a traditional clipping service.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 43 of the Complaint.

43.     Defendants admit that Meltwater Group's website asserts that Meltwater News monitors "more than 162,000 global news sources in 190 countries and 100 languages" in order to provide search results responsive to its users' search queries.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 43 of the Complaint.

44.     Defendants admit that the second sentence of Paragraph 44 of the Complaint quotes an excerpt from Meltwater Group's website.  Defendants admit that Meltwater Group, which includes (but is not limited to) the Defendants named in this action, has 55 offices and

employs over 800 individuals worldwide.  Defendants further admit that Meltwater Group (which is not a party to this action) earned over $100 million in revenue in 2010.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 44 of the Complaint.

45.     Defendants admit that in 2009, a district court in Oslo, Norway ordered Meltwater News AS, which is not a party to this action, to pay NOK 3,700,000 and NOK 520,000 in costs to Mediebedriftenes Klareringstjeneste AS, and that this order is currently on appeal. Defendants further admit that on July 27, 2011, in an action involving Meltwater Holding BV and Meltwater News UK Limited (which are not parties to this action), the Court of Appeal of England and Wales affirmed a lower court decision holding that most users of Meltwater's services in the U.K. must have a license to receive and use Meltwater News's service, and that this decision is currently on further appeal to the U.K. Supreme Court.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 45 of the Complaint.

*Meltwater News: Global Media Monitoring Service*

46.     Defendants admit that Meltwater's Global Media Monitoring service is available to all Meltwater News subscribers.  Defendants further admit that Paragraph 46 of the Complaint quotes an excerpt from Meltwater Group's website.  Defendants further admit that Meltwater uses computer programs to index content from publicly available websites.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 46 of the Complaint.

47.     Defendants admit the allegations of the first sentence of Paragraph 47 of the Complaint.  Defendants admit that the current list price of Meltwater's Global Media Monitoring service is $5,000, which includes 5 "agents" (not 10 agents) of the user's choosing.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 47 of the Complaint.

48.     Defendants admit that Meltwater users may choose to receive daily email reports that contain search results generated from the user's designated search queries ("agents"). Defendants further admit that the search results returned by Meltwater to its users include the

headline of each responsive article, along with a short snippet of text from the opening of the article and from the text immediately surrounding one appearance in the article of the user's designated search term.  Defendants further admit that Meltwater users can click on the headline returned in their search results to link to the full story on its originating website.  To the extent not expressly admitted, Defendants deny the allegations of paragraph 48 of the Complaint.

49.    Defendants admit that Meltwater News service includes the capability for users to log into their account through Meltwater's website and review search results generated from the user's "agents" during the previous six months.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 49 of the Complaint.

50.    Defendants admit that Meltwater users may perform unlimited ad hoc searches of Meltwater's index using any combination of keywords, and that the search results returned by Meltwater to its users include the headline of each responsive article (which links to the URL for the full article on its originating webpage), information about the source of each article, along with two short snippets of text, one from the opening of the article, and another immediately surrounding one appearance in the article of the customer's designated search term.  Defendants further admit that Meltwater's search engine includes a basic search function and advanced search function with Boolean capabilities.  The third and fourth sentences of Paragraph 50 of the Complaint posit a hypothetical scenario to which no response is required.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 50 of the Complaint.

51.    Defendants admit that the search results that Meltwater News returns to its users in response to their search queries may include headlines of, snippets from, and links to the URLs for AP stories, but deny the characterization in Paragraph 51 of the Complaint of those reports being "hot off the AP wires."  Defendants further admit that the second sentence of Paragraph 51 of the Complaint contains two excerpts from Meltwater Group's website, but Defendants deny Plaintiff's characterization of that quotation as reflecting or touting a "hot off

8

the wire" feature.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 51 of the Complaint.

52.    Defendants deny that Meltwater "encourages" its users to target search results from specific news organizations.  Defendants admit that Meltwater News provides a drop-down menu that allows users to limit their search results to four pre-designated "source selections," and Defendants further admit that among those pre-designated source selections is "USA Top Sources," which limits search results to approximately 1,300 publications, including some AP and AP-member publications.  Defendants deny that any of the source selections pre-designated in the drop-down menu allow a user to limit its searches only to articles authored or published by AP.  Defendants admit that, instead of selecting from among the four pre-designated source selections, a user may click on "new source selection" and by using keywords attempt to manually limit search results to a specific source.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 52 of the Complaint.

53.    Defendants deny the first sentence of Paragraph 53 of the Complaint.  Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of the second and third sentences of Paragraph 53 of the Complaint.  The fourth sentence of Paragraph 53 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of the fourth sentence of Paragraph 53 of the Complaint.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 53 of the Complaint.

54.    Defendants admit that Meltwater offers a trial subscription to prospective customers who would like to try Meltwater News before becoming a subscriber.  Defendants further admit that an agent for AP obtained a trial subscription to Meltwater News service in December 2011 by falsely representing to Meltwater that the agent was a prospective customer interested in subscribing to Meltwater News.  Defendants admit that, in response to the searches

performed by AP's agent during the trial subscription, Meltwater News's service returned search results that included the headline of articles that matched the agent's search queries (which linked to the URL for the originating webpage where the full article was published), information about the source of each article, along with a short snippet of text from the article. Defendants admit that the search results returned to AP's agent during the trial subscription period referenced and linked to the URLs for some of the articles described in Paragraph 54 of the Complaint, but Defendants lack sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegation that such search results referenced and linked to each of the articles described in Paragraph 54 of the Complaint. Defendants deny AP's characterization of those search results as "infringing excerpts." Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in the final two sentences of Paragraph 54 of the Complaint about the reporting team of Adam Goldman and Matt Apuzzo. To the extent not expressly admitted, Defendants deny the allegations of Paragraph 54 of the Complaint.

55.     Defendants deny the allegations of the first two sentences of Paragraph 55 of the Complaint. Defendants admit that the search results returned to AP's agent during the trial subscription period included the headline of, link to the URL for, and short snippet from the article described in Paragraph 55 of the Complaint, but Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of the remaining allegations of Paragraph 55 of the Complaint, which describe the purported actions of AP's agent and speculation about the actions of Meltwater's users, who are not parties to this action.   To the extent not expressly admitted, Defendants deny the allegations of Paragraph 55 of the Complaint.

56.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 56 of the Complaint concerning "AP's practice" and the report of a "media research firm." Defendants deny the remaining allegations of Paragraph 56 of the Complaint.

57.     Defendants admit that in responding to users' search queries, Meltwater returns search results that include the headline of each responsive article (which links to the URL for the full article on its originating webpage), information about the source of each article, along with a short snippet of text from the article.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 57 of the Complaint.

58.     Defendants deny the allegations of the first sentence of Paragraph 58 of the Complaint.  Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegation in Paragraph 58 that Google News and Yahoo News are "AP-licensee aggregators."  Defendants admit that the AP news content at issue in this action was already available on the Internet at the time it was indexed by Meltwater and that it could be located free of charge through ordinary Internet searches.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 57 of the Complaint.

*Meltwater's Archive of Articles*

59.     Defendants admit that Meltwater News's search function allows Meltwater users to conduct ad hoc searches for, and retrieve the headline, short snippet, and link to the URL for the webpage of, "many older articles."  Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 59 of the Complaint, but note that if an article is no longer freely available at the originating webpage because it has been removed from the Internet or placed behind a "paywall," Meltwater users will not be able to access the full text of that article, either by clicking on the link provided by Meltwater or otherwise through Meltwater News.   To the extent not expressly admitted, Defendants deny the allegations of Paragraph 60 of the Complaint.

60.     Defendants deny the allegations of Paragraph 60 of the Complaint.

61.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegation in Paragraph 61 of the Complaint that during the AP agent's trial

11

subscription, Meltwater returned search results referencing each of the articles listed in Paragraph 61 of the Complaint, but Defendants note that, to the extent Meltwater's system did return search results referencing those articles in response to the AP's agent's search queries, the information provided would have been limited to the headline of the article, along with a short snippet of its text and a link to the URL for the originating webpage where the full article was published.  Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegation in Paragraph 61 of the Complaint that the articles listed in that Paragraph are "no longer available from the original site listed in Meltwater's search results."  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 61 of the Complaint.

62.     Defendants admit that Meltwater's service includes an "Archive" feature that allows users to save the search results they receive from Meltwater News in response to their search queries, i.e., the headlines of responsive articles, information about the article's source, a short snippet of text from the article, and a link to the URL for the full article on its originating webpage.  Defendants further admit that the Archive feature includes an "Article Editor" function that allows Meltwater users to create new articles using their own content (for example, an original press release) and store those user-created articles in their Archive.  Defendants further admit that Meltwater users can access the material saved in their Archive for as long as they remain Meltwater subscribers.  Defendants further admit that material saved by users in their Archive is stored on servers operated by Meltwater.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 62 of the Complaint.

63.     Defendants admit that Meltwater users can add material of their own choosing and creation to their Archive by using the Article Editor function.  Defendants further admit that if a user clicks on the "+New Article" link in its Archive, a pop-up box appears with the following fields: "date," "title," "opening text," "body text," "URL," "Name of publisher (i.e. company name)," and "country."  Defendants further admit that if a user wants to create its own

article to add to its Archive, the user can fill in the fields with text of its own choosing, and the user-created article will then be stored in its Archive.  Defendants further admit that if a user wants to add to their Archive a link to an article that did not appear in its search results, the user can fill in the title and URL fields in the "+New Article" pop-up box and the user-generated title with a hyperlink to the user-supplied URL will then be stored in the user's Archive.  Defendants deny that the purpose or intended use of the Article Editor function is for users to manually add to their Archive full copies of news articles that they did not create or independently license, and Defendants further state that Meltwater's Terms of Use expressly forbid such use of the service. Defendants further deny that any Meltwater user—except for AP's own agent described in Paragraph 54 of the Complaint—stored full copies of any of the articles listed in Paragraph 78 of the Complaint in a Meltwater Archive.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 63 of the Complaint.

64.     Defendants admit knowledge that some customers have used their Archive to store full text articles of the customer's own creation and articles for which customers have represented they have independently licensed from third parties.  Defendants further admit that Meltwater has at times promoted the Archive feature as allowing Meltwater News customers to store user-created material, for example, customer-created press releases.  Without admitting to the authenticity of Exhibit D to Plaintiff's Complaint, Defendants admit that Exhibit D includes the statement "unlimited archiving (all on our servers)," but Defendants deny Plaintiff's characterization of the quotation in Paragraph 64 of the Complaint. To the extent not expressly admitted, Defendants deny the allegations of Paragraph 64 of the Complaint.

65.     Defendants admit that Meltwater users have the ability to "export" information that they have stored in their Archive into a spreadsheet.  Defendants further admit that Paragraph 65 of the Complaint quotes an excerpt from a pricing proposal that Meltwater provided to AP's agent after the agent falsely represented to Meltwater that it was ready to

purchase a subscription to Meltwater News.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 65 of the Complaint.

66.     Defendants deny that customers who use Meltwater News to store the results of their search queries are free to remove the information Meltwater provides identifying the source of each responsive article before storing that result in their Archive.  Defendants admit that customers who use the Article Editor feature to create articles to add to their Archive can enter text of their own choosing in the various fields of the pop-up box described in Paragraph 63 of this Answer and use their own computers to edit that content prior to saving it in a Meltwater News Archive.  Defendants deny that they have ever facilitated and/or encouraged any Meltwater customer to remove copyright management information from any article that any customer stored in a Meltwater Archive.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 66 of the Complaint.

67.     Paragraph 67 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 67 of the Complaint.

*Meltwater News: Newsletter and Other Services*

68.     Defendants admit that Meltwater's Newsletter feature is an optional add-on to a customer's basic subscription to Meltwater News's Global Media Monitoring search engine. Defendants further admit that the Newsletter feature provides a functionality that allows subscribing users to create and send customized newsletters by email to the recipients that the user chooses.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 68 of the Complaint.

69.     Defendants admit that Meltwater's Newsletter service allows subscribing users to create a branded newsletter that may include content the user selects from its Archive. Defendants further admit that, depending upon the content selected by the user for inclusion, the

14

Newsletter created by the user may contain archived search results—*i.e.*, the headline of the article (which includes a link to the URL for the originating webpage), information about the source of the article, and a short snippet of the article's text—or archived user-created articles, which will contain either a link to the URL for the article at the Internet address supplied by the user or content that the user has previously created and stored in its Meltwater Archive.  Without admitting to the authenticity of Exhibit E to Plaintiff's Complaint, Defendants admit that the newsletter attached as Exhibit E was created by Meltwater and that it was provided to AP's agent upon request.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 69 of the Complaint.

70.     Paragraph 70 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 70 of the Complaint.

71.     Paragraph 71 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 71 of the Complaint.

72.     Defendants admit that Meltwater provides its subscribers access to a third-party translation service, which under certain conditions allows Meltwater subscribers to view a translation of news articles that they discover through the Meltwater service.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 72 of the Complaint.

73.     Paragraph 73 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 73 of the Complaint.

74.     Paragraph 74 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 74 of the Complaint.

## C.     MELTWATER'S ALLEGED INFRINGEMENT OF AP'S COPYRIGHTS

75.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegation in Paragraph 75 of the Complaint that "AP owns the copyright in all stories on its news wires."  The remaining allegations of Paragraph 75 of the Complaint state legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 75 of the Complaint.

76.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 76 of the Complaint.

77.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 77 of the Complaint.

78.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 78 of the Complaint.

79.     Paragraph 79 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 79 of the Complaint.

80.     Defendants deny the allegations of Paragraph 80 of the Complaint.

81.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 81 of the Complaint that excerpts of all of the "Registered Articles" identified in Paragraph 78 of the Complaint were returned as search results to users of Meltwater News, and otherwise denies the allegations of the first sentence of Paragraph 81 of the Complaint.  The remainder of Paragraph 81 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 81 of the Complaint.

82.     Defendants deny the allegations of the first sentence of Paragraph 82 of the Complaint and further state that Plaintiffs lack sufficient information and belief to make such an

allegation.  The second sentence of Paragraph 82 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of the second sentence of Paragraph 82 of the Complaint.

83.     Paragraph 83 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 83 of the Complaint.

84.     Paragraph 84 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 84 of the Complaint.

**D.      MELTWATER'S ALLEGED MISAPPROPRIATION OF AP'S "HOT NEWS" CONTENT**

85.     Defendants deny the allegations of Paragraph 85 of the Complaint.

86.     Defendants deny the allegations of Paragraph 86 of the Complaint.

87.     Defendants admit that Meltwater returns to its customers search results that include the headline of each responsive article with a link to the URL for the originating webpage, along with information about the source of each article, and a short snippet of text from the article, as described above.  Defendants further admit that Meltwater does not create its own news articles or extract breaking facts from existing news articles, but instead provides a subscription service that allows its customers to search for and receive information about news articles that have already been published and made available for free on publicly available websites.  To the extent not expressly admitted, Defendants deny the allegations of Paragraph 87 of the Complaint.

88.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of the first sentence of Paragraph 88 of the Complaint and the allegation

regarding the "price point" that AP can offer to potential subscribers.  Defendants deny the remaining allegations of Paragraph 88 of the Complaint.

89.     Defendants deny the allegations of Paragraph 89 of the Complaint.

90.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 90.

91.     Defendants deny the allegations of Paragraph 91 of the Complaint.

## FIRST CAUSE OF ACTION

### (Copyright Infringement)

92.     Defendants incorporate by reference their responses to Paragraphs 1-91.

93.     Paragraph 93 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 93 of the Complaint.

94.     Paragraph 94 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 94 of the Complaint.

95.     Paragraph 95 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 95 of the Complaint.

96.     Paragraph 96 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 96 of the Complaint.

97.     Paragraph 97 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 97 of the Complaint.

98.     Paragraph 98 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 98 of the Complaint.

99.     Paragraph 99 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 99 of the Complaint.

**SECOND CAUSE OF ACTION**

**(Contributory Copyright Infringement)**

100.     Defendants incorporate by reference their responses to Paragraphs 1-99.

101.     Paragraph 101 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 101 of the Complaint.

102.     Paragraph 102 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 102 of the Complaint.

103.     Paragraph 103 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 103 of the Complaint.

104.     Paragraph 104 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 104 of the Complaint.

105.     Paragraph 105 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 105 of the Complaint.

106.    Paragraph 106 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 106 of the Complaint.

107.    Paragraph 107 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 107 of the Complaint.

108.    Paragraph 108 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 108 of the Complaint.

109.    Paragraph 109 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 109 of the Complaint.

### THIRD CAUSE OF ACTION

### (Vicarious Copyright Infringement)

110.    Defendants incorporate by reference their responses to Paragraphs 1-109.

111.    Paragraph 111 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 111 of the Complaint.

112.    Paragraph 112 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 112 of the Complaint.

113.    Paragraph 113 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 113 of the Complaint.

114.    Paragraph 114 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 114 of the Complaint.

115.    Paragraph 115 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 115 of the Complaint.

116.    Paragraph 116 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 116 of the Complaint.

117.    Paragraph 117 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 117 of the Complaint.

## FOURTH CAUSE OF ACTION

### (Declaratory Judgment)

118.    Defendants incorporate by reference their responses to Paragraphs 1-117.

119.    Defendants admit that Meltwater News returns search results in response to its customers' search queries that include headlines and short excerpts of news articles, but deny Plaintiff's characterization of those excerpts as "substantial."    To the extent not expressly admitted, Defendants deny the allegations of Paragraph 119 of the Complaint.

120.    Defendants deny the allegations of Paragraph 120 of the Complaint.

121.    Paragraph 121 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 121 of the Complaint.

122.     Paragraph 122 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 122 of the Complaint.

123.     Defendants admit the allegations of Paragraph 123 of the Complaint.

124.     Defendants deny the allegations of Paragraph 124 of the Complaint.

125.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 125 of the Complaint.

126.     Paragraph 126 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants admit that there is a justiciable controversy between the parties as to whether Meltwater and/or its users have infringed or are infringing any of the articles described in Paragraph 78 of the Complaint. To the extent not expressly admitted, Defendants deny the allegations of Paragraph 126 of the Complaint.

127.     Paragraph 127 of the Complaint is a summary of Plaintiff's claim and does not require a response.  To the extent a response is required, Defendants admit that Plaintiff seeks a declaratory judgment regarding Meltwater News's business practices, but deny that Plaintiff is entitled to the relief that it seeks.

## FIFTH CAUSE OF ACTION

### ("Hot News" Misappropriation Under New York Common Law)

128.     Defendants incorporate by reference their responses to Paragraphs 1-127.

129.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 129 of the Complaint.

130.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 130 of the Complaint.

131.     Defendants deny the allegations of Paragraph 131 of the Complaint.

132.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 132 of the Complaint regarding the customer base of AP's Wire Services.  Defendants deny the remaining allegations of Paragraph 132 of the Complaint.

133.    Defendants deny the allegations of Paragraph 133 of the Complaint.

134.    Defendants deny the allegations of Paragraph 134 of the Complaint.

135.    Paragraph 135 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 135 of the Complaint.

136.    Paragraph 136 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 136 of the Complaint.

137.    Paragraph 137 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 137 of the Complaint.

138.    Paragraph 138 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 138 of the Complaint.

## SIXTH CAUSE OF ACTION

### (Removal or Alteration of Copyright Management Information)

139.    Defendants incorporate by reference their responses to Paragraphs 1-138.

140.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 140 of the Complaint.

141.    Paragraph 141 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 141 of the Complaint.

23

142.     Paragraph 142 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 142 of the Complaint.

143.     Paragraph 143 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 143 of the Complaint.

144.     Paragraph 144 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 144 of the Complaint.

145.     Paragraph 145 of the Complaint states legal conclusions as to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 145 of the Complaint.

Defendants further deny that Plaintiff is entitled to the relief requested in Plaintiff's demand for judgment contained in paragraphs a-i of pages 40-41 of the Complaint, or to any relief whatsoever.  All remaining allegations not specifically admitted above are denied.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants set forth the following affirmative and other defenses.  Defendants do not concede that they bear the burden of proof or persuasion on any of these defenses.

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

Plaintiff's state-law claims are barred for lack of subject matter jurisdiction because, to the extent Plaintiff has failed to state a claim under, or otherwise fails to prove a violation of, 17 U.S.C. §§ 101 and 501 et seq., this Court lacks supplemental jurisdiction over such claims.

**THIRD DEFENSE**

Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.  Meltwater has offered its service to customers in the United States since 2007.  In that time, among other things, (i) AP has knowingly acquiesced to Defendants' allegedly infringing activities by failing to initiate any action against Defendants until now, (ii) Meltwater has operated its service on the understanding that its operations fall within the fair use doctrine codified in U.S. copyright law, and (iii) Defendants have relied to their detriment on Plaintiff's acquiesce by investing significant resources in the development of their service in the United States.

**FOURTH DEFENSE**

Plaintiff's claims are barred in whole or in part by the doctrine of waiver.  As stated above, Meltwater has operated its service in the United States since 2007.  Among other things, by failing to bring this action against Defendants for over five years, AP has knowingly and intentionally waived its right to recovery.

**FIFTH DEFENSE**

Plaintiff's claims are barred in whole or in part by the doctrine of laches.  As stated above, Meltwater has offered its service to customers in the United States since 2007 on the understanding that its operations are consistent with U.S. copyright law.  Among other things, AP has unreasonably delayed in bringing this action against Defendants for over five years, and Defendants have suffered prejudice as a result.

**SIXTH DEFENSE**

Plaintiff's claims are barred in whole or in part because Plaintiff has failed to mitigate its damages, if any.  Among other things, to the extent that Plaintiff (i) was aware of Defendants' allegedly infringing activities, (ii) delayed in initiating its action against Defendants, and/or (iii) failed to take other reasonable steps to mitigate its damages, including by failing to communicate

25

with Meltwater about the issues raised in its Complaint before filing this lawsuit, Plaintiff's claims for damages are barred.

## SEVENTH DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of copyright misuse. Through this Complaint and through other means, Plaintiff seeks to misuse its limited copyright monopoly to extend its control over the Internet search market more generally, thereby improperly expanding the protections afforded by U.S. copyright law.  Among other things, AP has misused its copyright monopoly by demanding that third parties take licenses for search results, which do not require a license under U.S. copyright law, and AP has also formed a consortium (called NewsRight) with the purpose of further misusing its copyright monopoly to extract licensing fees that exceed what the law allows.

## EIGHTH DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.  Among other things, AP brought this Complaint only after retaining an agent that obtained access to the Meltwater News service under false pretenses and through false representations and that thereafter misused Meltwater News's service, with AP's authorization, in an effort to manufacture a claim for copyright infringement.

## NINTH DEFENSE

Based on the facts asserted in Meltwater's Counterclaim, Plaintiff's copyright infringement claims are barred in whole or in part by the doctrine of fair use.

## TENTH DEFENSE

Plaintiff's secondary copyright infringement claims are barred in whole or in part based on the doctrine of substantial non-infringing use.  Among other things, Meltwater News provides its users with various tools that they can use to keep track of, analyze, and inform others of the existence of news stories of interest to their company.  The tools that Meltwater News provides,

including the Archive and Newsletter tools, have substantial noninfringing uses, and Plaintiff does not and could not allege that those tools are used primarily or exclusively for infringement.

## ELEVENTH DEFENSE

Plaintiff's claims are barred in whole or in part by implied licenses granted or authorized to be granted by Plaintiff.  Among other things, AP makes its content freely available for public access on a variety of Internet sites and does not attempt to limit others from locating and providing links to such content.  Based upon accepted custom and practice, AP and its licensees have impliedly licensed such use of their content by search engines like the one offered by Defendants.  Additionally, AP's acquiescence to Defendants' allegedly infringing conduct gave rise to an implied license that bar Plaintiff's claims.

## TWELFTH DEFENSE

Plaintiff's claims are barred to the extent that any person based on whose conduct Plaintiff seeks to hold Defendants liable is an innocent infringer.  Among other things, insofar as Meltwater and/or any Meltwater user relied on an authorized copy of the articles listed in Paragraph 78 of the Complaint from which the copyright notice had been removed, Plaintiff is barred from seeking recovery for that alleged infringement.

## THIRTEENTH DEFENSE

Plaintiff's claims are barred in whole or in part by the First Amendment of the U.S. Constitution.  Among other things, Meltwater's delivery of search results to its customers constitutes free speech and/or free expression protected by the First Amendment.

## FOURTEENTH DEFENSE

Plaintiff's state-law claim for "hot news misappropriation" is barred in whole or in part by the Communications Decency Act, 47 U.S.C. § 230(c) because, among other things, Meltwater is a provider of an "interactive computer service" and the material made accessible though its service is provided or supplied by third parties.

27

**FIFTHTEENTH DEFENSE**

Plaintiff's state-law claim for "hot news misappropriation" is preempted by the federal Copyright Act, 17 U.S.C. § 101, et seq.

**SIXTEENTH DEFENSE**

Plaintiff's copyright infringement claims are barred in whole or in part because, based on the facts set forth in Defendants' Counterclaim, Meltwater is protected by the safe harbor provision of the Digital Millennium Copyright Act, 17 U.S.C. § 512.

**SEVENTEENTH DEFENSE**

Defendants reserve all defenses at law or equity that may now exist or in the future be available on discovery and further factual investigation in this case.

## COUNTERCLAIMS AND DEMAND FOR JURY TRIAL

Counterclaim-Plaintiffs Meltwater US Holdings Inc., Meltwater News US Inc., and Meltwater News US1 Inc. (collectively, "Meltwater"), by and through their undersigned attorneys, bring these Counterclaims against Counterclaim-Defendant The Associated Press ("AP").  Counterclaim-Plaintiffs' allegations are based on personal knowledge as to their own actions and on information and belief as to the actions of others.

## NATURE OF THE ACTION

1.      Through its "Meltwater News" service, Meltwater offers a specialized Internet search engine that allows customers to search for and obtain information about news items that have been published on a wide variety of Internet websites around the world.

2.      Nearly all of Meltwater News's more than 4,000 U.S. customers are corporations, non-profit organizations, or government agencies.  By using Meltwater News, those customers are able to track what is being said about them in a wide variety of media outlets, learn about published news accounts relevant to their business, and evaluate the success of their marketing and public relations campaigns.

3.      Meltwater News provides a more sophisticated and specialized version of the news monitoring services offered by companies such as Google and Yahoo! via their Google News and Yahoo! News services.

4.      Like other Internet search engines, Meltwater News creates a search index by using automated computer programs to "crawl" publicly available websites and obtain information about their content.

5.      Meltwater News's search index contains information about millions of news items, including articles published in newspapers, trade journals, and blogs.  Before being indexed by Meltwater, each of those items was either already available to the public for free on the Internet or expressly licensed by Meltwater for use in connection with its search index.

6.      Meltwater does not store full text copies of the items it indexes.

7.      Customers can formulate queries to search Meltwater News's index for news items of interest to them.  The search results that Meltwater returns in response to customers' queries do not contain the full text of the responsive news articles.  Instead, Meltwater provides to its customers only the headline of each responsive article, information about the article's source, and a short snippet of text from the article.

8.      Like other Internet search engines, Meltwater also includes in its search results a "hyperlink" that directs the user to the URL for the third-party webpage where the item was published.  If the item is still accessible at that webpage, these links allow Meltwater customers, with the click of a button, to view the full text of any search result at the Internet location where the publisher has made it freely available to the public.

9.      Meltwater does not deliver or display to its customers the full text of the articles referenced in their search results.  If an item referenced in a search result is no longer available at its originating webpage, Meltwater customers cannot access the full text of that article by using the link provided by Meltwater or otherwise through Meltwater's system.

10.     In addition to its news search engine, Meltwater News offers proprietary tools that customers can use to keep track of, analyze, and inform others of the existence of news stories of interest to their companies.  Those tools allow customers to store their search results, analyze trends in how their companies are mentioned in the press, and create company newsletters that include search results chosen by the customer.

11.     Meltwater strives at all times to be respectful of intellectual-property rights and to abide by all applicable copyright laws.  Meltwater launched Meltwater News in the United States on the understanding that its processes for indexing news sources publicly available on the Internet and returning short snippets of articles in the form of search results responsive to its

30

users' queries fall within the fair-use doctrine codified in U.S. copyright law.  Before February 14, 2012, Meltwater had never been accused of violating U.S. copyright law.

12.     On February 14, 2012, AP sued Meltwater, accusing it of infringing AP's copyrights in 19 specific articles that AP claimed to own, facilitating its customers' infringement of AP's copyrights in those articles, and "hot-news misappropriation" under New York law.

13.     AP's complaint contains numerous falsehoods and other misrepresentations about the Meltwater News service.

14.     AP's misstatements about Meltwater are not confined to its complaint.  On the same day that AP filed suit, it issued a press release making additional false and disparaging statements about Meltwater and its service.  AP intended these out-of-court statements to damage Meltwater's relationships with existing and potential customers and to scare such customers away from doing business with Meltwater News.

15.     AP's press release was widely distributed on the Internet.  The press release has had its intended effect, wrongfully disrupting a number of Meltwater's existing business and prospective relationships and depriving Meltwater of the benefits it was entitled to expect from those relationships.  Current and would-be Meltwater customers have cited AP's accusations as a basis for not subscribing to Meltwater News or for otherwise limiting their relationships with Meltwater.

16.     Meltwater brings this action to confirm the legitimacy of its operations, to clear up the confusion and uncertainly engendered by virtue of AP's actions, and to obtain compensation for AP's misconduct.

### JURISDICTION AND VENUE

17.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a), and 1367.

18.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391, 1400(a).

19.     This court has personal jurisdiction over AP because it is headquartered in New York, and because AP has consented to jurisdiction in this Court by filing the instant action in this jurisdiction.

## PARTIES

20.     Meltwater US Holdings Inc., Meltwater News US Inc., and Meltwater News US1 Inc. are Delaware corporations, with their principle places of business in San Francisco, California.

21.     AP is a New York not-for-profit corporation with its principal place of business in New York, New York.

## FACTUAL ALLEGATIONS

**A.      Meltwater's U.S. Operations**

22.     Meltwater began operating in the United States in 2007.

23.     Meltwater offers a number of different products to its customers, including Meltwater News, Meltwater Buzz (a social media monitoring platform), Meltwater Press (a service for building media contact lists), Meltwater Reach (a service that helps companies optimize their online advertising campaigns); Meltwater Drive (an online portal that provides collaboration tools to businesses and organizations), and Meltwater Talent (a talent management solution that helps organizations more effectively recruit employees).

24.     Meltwater News currently has over 4,000 customers in the United States.

25.     Nearly all of Meltwater News's U.S. customers are corporations, non-profit organizations, or government agencies.  Meltwater News is marketed primarily to the communications and public relations departments of those entities.

26.     Meltwater News offers a suite of products and tools to its customers.  Those include monitoring of news websites via a specialized news search engine ("Global Media

Monitoring"), various quantitative and qualitative news-analytic tools ("Analytics"), and a tool that allows customers to build customized, corporate-branded newsletters ("Newsletter").

27. Through these various products and tools, Meltwater News customers can search for, learn about, keep track of, analyze, and notify others about the existence and location of news items relevant to their businesses.

**B.    Meltwater's Global Media Monitoring Service**

28. Meltwater News's Global Media Monitoring is a specialized news-related Internet search engine.

29. Global Media Monitoring allows Meltwater customers to search for and receive information about news items relevant to their businesses or otherwise of interest.

30. Except for certain content that Meltwater has specifically licensed from its publisher, all of the news items that Meltwater customers can search for using Global Media Monitoring have already been published and made freely available on the Internet by third party publishers.

31. Meltwater News generates a search index of those published items by using automated computer programs known as "web crawlers" to index information about the contents of publicly available websites that publish news-related content.

32. The use of such web crawlers to index publicly available third-party websites in order to generate a search index is standard practice among Internet search engines.

33. Meltwater's news search index is compiled from more than 162,000 news sources in over 190 countries.  Those sources include major news outlets, trade publications, local and regional journals, weekly newspapers, tenders, influential blogs, as well as TV and radio transcripts.

34.     Meltwater has entered into licensing agreements with certain publishers under which, for example, Meltwater is specifically given permission to access and index news content that those publishers have chosen not to make freely available to the public on their websites.

35.     All other news items included in the Meltwater News search index were, at the time they were indexed, available to the public for free on the originating webpage.

36.     Unlike many other Internet search engines, Meltwater does not store in its search index actual copies of the webpages that it indexes or full text versions of the articles that are found at those webpages.

37.     To use the Meltwater News search engine to find information about online news sources, a Meltwater customer can set up standing search queries (known as "agents"), which run periodic word searches against the Meltwater News search index.  A basic U.S. subscription to Meltwater News allows the customer to establish up to five agents.

38.     Meltwater provides search results responsive to customers' agents via periodic email updates, usually once or twice per day.

39.     Customers can log into their accounts on Meltwater's website to view search results from their agents going back approximately six months.

40.     When logged into its Meltwater account, a customer also can run ad-hoc searches of the Meltwater News index.

41.     Regardless of whether a search is done automatically through agents or through ad-hoc keywords, the search results that Meltwater returns to its customers include the following information:  (1) the headline or title of the article, which includes a link to the URL for the webpage on which that article is published and where the customer can view the full article, if it is still available; (2) information about the "source" of each article (the name of the publisher that published the article online); and (3) a short snippet from the article, consisting of no more than 256 characters of the opening text of the article and up to 140 characters of text immediately

surrounding one instance of the customer's search term in the article.  A true and correct screen shot from a Meltwater News search results page is attached as Exhibit 1.

**C.      Meltwater's Archive Tool**

42.      In addition to its Global Media Monitoring news search engine, Meltwater News provides its customers with a number of other proprietary tools that they can use to keep track of, organize, analyze, and notify others of news items relevant to their businesses.  Those additional tools include Archive, Export, Analytics, and Newsletter.

43.      Through the "Archive" tool, customers can choose to save selected search results in a designated Archive folder for later review.

44.      By clicking the Archive icon that appears next to each Meltwater search result, the customer instructs Meltwater's system to store that search result along with any comments the customer wishes to include.  The customer can enter those comments in a text box that appears when the customer selects a search result to be archived.

45.      The information about each search result stored in the customer's Archive is limited.  It includes only:  (1) the headline or title of the article, which contains a link to the URL for the third-party webpage on which that article was published; (2) information about the source of the article; (3) a short snippet of the article, containing up to 256 characters from the opening of the article; and (4) any text the user has chosen to enter in the comment box.

46.      A customer's archived search results are stored on Meltwater's system in private folders that can be viewed only by someone logged into that customer's Meltwater News account.  A true and correct screen-shot of a Meltwater News Archive is attached as Exhibit 2.

47.      In addition to storing search results, Meltwater News customers can also use a tool called "Article Editor" to create their own articles to be stored in their Archives.

48.      When a customer selects the Article Editor tool, a pop-up window appears in which the customer can enter text of their choosing into the following fields: "date," "title,"

"opening text," "body text," "URL," "Name of publisher (i.e. company name)," and "country."
A true and correct screen-shot of a Meltwater News "new article" pop-up box is attached as
Exhibit 3.

49.     The text that the customer chooses to enter into the various fields of the Article
Editor pop-up box is then stored at the customer's direction in the customer's Archive.

50.     The main purpose of the Article Editor is to allow users to add their own original
content to their Archives, such as company press releases and internal memos.

51.     A customer can also use the Article Editor tool to add to its Archives a link to an
article of interest that was published online but may not have been included in the customer's
search results.  To do so, the customer enters the URL to the webpage containing the article in
the "URL" field of the Article Editor pop-up box.  When the customer enters a URL, the only
text displayed in the customer's Archive is what the customer entered in the "Title" field of the
pop-up box.  Clicking on that title in the Archive activates a link that takes the customer directly
to the URL that the customer entered for the webpage hosting the article.

52.     The majority of Meltwater News customers have not used the Article Editor
feature to add articles to their Archive.

**D.     Meltwater's Newsletter Tool**

53.     A minority of Meltwater News customers have subscriptions that also give them
access to Meltwater's "Newsletter" tool.

54.     The Newsletter tool allows Meltwater customers to create and deliver via email a
branded newsletter to recipients of the customers' choosing.  By using the Newsletter tool,
Meltwater's customers can keep their employees, clients, or other interested parties abreast of the
existence of news articles relevant to their businesses, and provide them with links to the URLs
for the full articles at the originating webpage.

55.     Meltwater customers select the material that will be included in their Newsletters.

56.     The customer can choose to include in a Newsletter selected Meltwater search results or articles created by the customer using the Article Editor feature described above.  A true and correct sample of a Newsletter created using Meltwater News's Newsletter tool is attached as Exhibit 4.

57.     When the customer chooses to add search results, the Newsletter will include, for each search result that the user selects, the headline of the item (which contains a link to the URL for the third-party webpage where the item was published), information about the source of the item, and a short snippet of text from the item.

58.     When the customer chooses to add an article created using the Article Editor, the Newsletter will include the text that the customer created and stored in its Archive, but, if the customer provided a URL when it created the article, the Newsletter will include the headline of the article and a link to that URL, but will not include any text that the customer entered in the "body text" field of the Article Editor.

**E.     Meltwater's Compliance with Copyright Law**

59.     Meltwater takes seriously its compliance with all applicable laws, including copyright law, and insists that its customers likewise comply with all applicable copyright laws.

60.     The search results that Meltwater returns to its customers in response to their search queries do not contain the full text of responsive news articles.

61.      The search results that Meltwater returns to its customers are limited to an article's headline and a short snippet of text that does not exceed 396 characters.  Meltwater also includes in its search results available information about the source of the article, such as the name of the article's publisher, and a link to the URL for the third-party webpage where the full article was published.

62.     Meltwater's General Terms and Conditions of Use, which together with a customer's Order Confirmation constitute the contractual agreement between Meltwater and its

customers, expressly require customers to use Meltwater News, and any content accessed by or provided through Meltwater News, in accordance with all applicable laws.  A true and correct copy of Meltwater's General Terms and Conditions of Use is attached as Exhibit 5.

63.     Meltwater's General Terms and Conditions of Use require each Meltwater customer to agree that "it will not copy, reproduce, distribute, transmit, broadcast, modify, display, sell, license or otherwise exploit" any content obtained from a website to which Meltwater News provides a link, "except in strict compliance with the rights, if any, granted to Customer by any third party."

64.     Meltwater's General Terms and Conditions of Use require each customer to "confirm[] the veracity of all content uploaded and distributed via the Meltwater Services" and to "warrant[] that all content shall comply with all applicable law."

65.     Meltwater's General Terms and Conditions of Use require each customer to defend and indemnify Meltwater, and hold it harmless, from and against any claims arising from, among other things, the customer's "breach of these Terms," "violation of the privacy policies and terms and conditions governing Third Party Content and Third Party Web Sites," or "Customer content distributed through the Meltwater Services."

66.     Meltwater's General Terms and Conditions of Use expressly state that "Meltwater will terminate the account of any Customer, and block access of any user, who infringes any Meltwater or third party intellectual property right."

67.     On or about March 26, 2012, Meltwater designated an agent to receive notifications of claimed copyright infringement sent under the Digital Millennium Copyright Act, 17 U.S.C. § 512 ("DMCA").  On or about that same date, Meltwater also provided to the U.S. Copyright Office the information about its designated agent required by 17 U.S.C. § 512(c)(2).

68.    Meltwater has adopted and implemented a policy for terminating the subscriptions of any customer who Meltwater determines repeatedly uses the Meltwater service to engage in copyright infringement.  Meltwater's repeat-infringer policy has been incorporated into the Meltwater News standard terms of service and posted on a publicly available portion of Meltwater's website.  That policy can be viewed at http://www.meltwater.com/copyright.

69.    On the same publicly available portion of its website, Meltwater also provides instructions to copyright owners about how to send notifications of alleged infringement if the copyright owner believes that material on Meltwater's system is infringing its copyright.

70.    Meltwater accommodates and does not interfere with any standard technical measures, as defined in 17 U.S.C. § 512(*i*)(2), that copyright owners use to identify or protect their copyrighted works.

**F.    Meltwater's Dispute with AP**

*AP's Pre-Litigation Efforts to Obtain Access to and Information about Meltwater News Under False Pretenses*

71.    In December 2011, Keri McKenzie, a representative of the James Mintz Group contacted Meltwater and falsely stated that her company was interested in purchasing a Meltwater News subscription.

72.    In fact, the James Mintz Group was an agent hired by AP and/or its counsel to investigate Meltwater News in contemplation of a lawsuit that AP was preparing to bring against Meltwater.   That fact was never disclosed to Meltwater until AP filed its Complaint in February 2012.

73.    In reliance on Ms. McKenzie's false representations, Meltwater provided the James Mintz Group with a trial subscription that gave it temporary access to the Meltwater News service, including to the Archive tool.

74.     When the initial trial subscription was coming to an end in mid-December 2011, Ms. McKenzie, acting as agent for AP, falsely stated to Meltwater that "I know we will move forward with a subscription for sure" and asked Meltwater to extend the trial period.

75.     In reliance on Ms. McKenzie's false representations, Meltwater agreed to extend the trial subscription and continue to allow the James Mintz Group to have access to the Meltwater News service, including to the Archive tool.

76.     Having obtained and extended the trial subscription under false pretenses, Ms. McKenzie and/or other representatives of the James Mintz Group, acting as agent for AP, made various false or misleading statements in an effort to persuade Meltwater to provide information and documents that the AP hoped to use to attack Meltwater.

77.     Ms. McKenzie and/or other representatives of the James Mintz Group, acting as agent for AP, told Meltwater that James Mintz Group was interested in being able to store additional text from articles beyond the snippet that Meltwater News returns to customers in their search results, and asked for Meltwater's assistance in that regard.

78.     During the trial subscription, James Mintz Group, acting as agent for AP, used the Article Editor feature to store in a Meltwater News Archive the full text of several articles that were purportedly published by AP.

79.     The full text of those articles was not delivered to the James Mintz Group by Meltwater, in the form of search results or otherwise.

80.     Instead, the James Mintz Group, acting as agent for AP, accessed and copied the full text of those articles from the publicly available webpages on which the articles were published.

81.     Having accessed and copied the full text of the articles from the originating webpages, the James Mintz Group, acting as agent for AP, then used its own Internet browser (or other software) to paste that text into the Meltwater News system for storage in its Archive.

82.     The James Mintz Group did not inform Meltwater that it had copied the full text of those articles and pasted that text into its Archive.

83.     In copying the full text of those articles from the Internet and in pasting that text into an Archive, the James Mintz Group was authorized by AP to act as it did.

84.     The actions of the James Mintz Group, while acting as agent for AP, in copying the full text of AP articles from publicly available Internet sites and pasting that text into a Meltwater Archive for storage, did not infringe any of AP's copyrights in those articles.

85.     During the trial subscription period, Ms. McKenzie and/or other representatives of the James Mintz Group, acting as agent for AP, also told Meltwater that James Mintz Group was especially interested in using the Newsletter tool to distribute news articles, and asked Meltwater to provide sample Newsletters for the James Mintz Group to use in that regard.

86.     During the trial subscription period, Ms. McKenzie, still acting as an agent for AP, also falsely stated that she had obtained approval from the James Mintz Group to purchase a subscription to Meltwater News and on that basis asked Meltwater to send a pricing proposal to the James Mintz Group.

87.     In reliance on Ms. McKenzie's false representations, Meltwater prepared and sent a pricing proposal to the James Mintz Group.

88.     Having obtained access to a Meltwater News trial subscription under false pretenses, and used that access to try to obtain information and documents about the Meltwater News service for use by AP in its lawsuit, James Mintz Group finally told Meltwater that it had decided not to purchase a subscription.

*AP's Lawsuit against Meltwater*

89.     On February 14, 2012, AP filed a complaint against Meltwater in the United States District Court for the Southern District of New York asserting claims for direct copyright infringement, contributory copyright infringement, vicarious copyright infringement, declaratory

judgment, hot-news misappropriation, and removal or alteration of copyright management information (the "Complaint").

90.    Before filing its Complaint, AP had never indicated to Meltwater that AP believed that Meltwater or its customers were infringing AP's copyrights through the Meltwater News service.  Instead, the first communication between AP and Meltwater concerning the issues raised in the Complaint was the Complaint itself.

91.    Before filing the Complaint, AP did not request that Meltwater obtain a license from AP in connection with the Meltwater News service.

92.    AP's Complaint alleges that Meltwater is liable for direct, contributory, and vicarious copyright infringement of 19 articles to which AP alleges that it owns the copyrights and has claimed to have registered with the U.S. Copyright office (the "Articles in Suit").

93.    The direct infringement claims made in the Complaint are based on AP's allegations that Meltwater copies and stores entire AP articles in order to populate its search index and that Meltwater returns to its customers excerpts from those articles in response to customers' search queries.

94.    Before being indexed for inclusion on Meltwater News's search engine, each of the Articles in Suit was published by AP or a third-party licensee on a publicly available Internet site.

95.    Before being indexed for inclusion on Meltwater News's search engine, each of the Articles in Suit was available to the public for free via the Internet.

96.    Meltwater does not copy and store full text versions of AP articles in connection with its Meltwater News search index.

97.    The Meltwater News search index does not contain a full text version of any of the Articles in Suit.

98.     Meltwater did not deliver a full text version of any of the Articles in Suit in response to any customer's search query.

99.     The contributory and vicarious infringement claims made in the Complaint are based on AP's allegations about the purported conduct of Meltwater's customers.  For example, the Complaint alleges "on information and belief" that unidentified Meltwater customers engaged in direct infringement by copying, storing, displaying, and distributing full text versions of the Articles in Suit through use of the Meltwater Archive and Newsletter tools.  The Complaint seeks to hold Meltwater liable for such alleged infringement.

100.    AP's allegations that Meltwater customers have used the Archive and Newsletter tools to store and distribute full text versions of the Articles in Suit are speculative and made without any factual support.

101.    AP's allegations that Meltwater customers have used the Archive tool to store and distribute full text versions of the Articles in Suit are based exclusively on the conduct of the James Mintz Group, acting as AP's agent, during its Meltwater News trial subscription.

102.    AP has no evidence that any actual Meltwater News customer has used Meltwater News's Archive tool to store a full text version of any of the Articles in Suit.

103.    AP has no evidence that any actual Meltwater News customer has used Meltwater News's Archive tool to store a full text version of any work for which AP holds a valid copyright.

104.    AP has no evidence that any actual Meltwater News customer has used Meltwater News's Newsletter tool to distribute a full text version of any of the Articles in Suit.

105.    AP has no evidence that any actual Meltwater News customer has used Meltwater News's Newsletter tool to distribute a full text version of any work for which AP holds a valid copyright.

106.    There is no evidence in Meltwater's systems and Meltwater has no knowledge that any Meltwater user (other than the James Mintz Group, acting as AP's agent and with AP's authorization) ever used Meltwater News's Archive tool to store a full text version of any of the Articles in Suit.

107.    There is no evidence in Meltwater's systems and Meltwater has no knowledge that any Meltwater user has ever used Meltwater News's Newsletter tool to distribute a full text version of any of the Articles in Suit.

### *AP's Press Release*

108.    AP was not content to litigate its case in the courtroom and instead has sought to use its press influence to create a false public impression of Meltwater.

109.    On the same day that it filed its lawsuit against Meltwater, AP issued a press release accusing Meltwater of infringing AP's copyrights under U.S. law and facilitating its customer's infringement of AP's copyrights (the "Press Release").

110.    AP's Press Release went beyond merely announcing that AP had taken legal action against Meltwater and describing its claims.

111.    AP's Press Release asserted that Meltwater "has a significant negative impact on the ability of AP to continue providing the high-quality news reports on which the public relies."

112.    That statement is false.  Meltwater News's service has no impact on AP's ability to continue providing whatever quality of service AP believes it provides.

113.    AP's Press Release further stated that Meltwater "facilitates the incorporation of AP articles into customer newsletters to be further distributed" to third parties.

114.    That statement is false.  AP had no factual basis to believe that any Meltwater customer had used Meltwater News's Newsletter service to distribute full text versions of AP articles to third parties.

115.    AP's Press Release further stated that Meltwater "refuses to license the content that it delivers to its customers."

116.    That statement is false.  In fact, Meltwater has entered into licensing agreements with several major news publishers that expressly authorize Meltwater to access those publishers' content, beyond what would be freely available on the Internet, and deliver it to Meltwater News subscribers.

117.    Meltwater has never "refused" to license AP content.

118.    AP has never asked Meltwater to take a license in connection with the Meltwater News service or sought to negotiate with Meltwater about such a license.

119.    AP's Press Release further stated that "Meltwater is a closed system sold only to subscribers for a fee, and not a means of expanding public access."

120.    That statement is false.  Meltwater expands public access to news content published on the Internet by, among other things, providing links in its search results that take its customers directly to the webpage on which the article was published.

121.    AP's Press Release further stated that "Meltwater retains a vast archive of AP articles dating back to at least 2007," and that "Meltwater actively facilitates the storage of those and other articles in customer archives on the Meltwater system."

122.    Those statements are false.  Meltwater does nothing to actively facilitate the storage by its customers of AP articles, nor does Meltwater deliver or make available to its customers full text versions of any AP articles, including articles that are not publicly available.

123.    AP made these false and misleading statements about Meltwater and its operations specifically intending to harm Meltwater's ability to do business with existing and prospective customers.

124.    AP's Press Release was widely distributed in print media, broadcast media, and on the Internet.

125.    AP's false and misleading statements about Meltwater in the Press Release caused current and prospective Meltwater customers to question the legitimacy of Meltwater News's service and express concern about doing business with Meltwater News.

126.    Some existing Meltwater customers cited the AP's accusations as a basis for cancelling their Meltwater News subscriptions.  Likewise, some prospective Meltwater customers cited AP's statements as a basis for declining to subscribe to Meltwater News.

127.    Even now, several weeks after AP filed its Complaint and issued its Press Release, current and prospective Meltwater customers continue to invoke AP's statements as justification for not doing business with Meltwater, and Meltwater continues to lose business because of AP's statements.  That is precisely the result AP sought in issuing its press release containing the misrepresentations described above.

### Count I
### (Declaratory Judgment of Non-Infringement of the Articles in Suit)

128.    Meltwater repeats and realleges the allegations in Paragraphs 1-127 as if fully set forth herein.

129.    There is a definite and concrete, real and substantial, justiciable, and continuing case or controversy between the parties regarding the alleged infringement of the Articles in Suit by Meltwater and its customers.

130.    In particular, Meltwater asserts that its indexing and delivery of search results, including the headline and a short excerpt of news articles, along with a link to the Internet location at which the article was published and made freely available to the public, does not infringe any valid copyright owned by AP in any of the Articles in Suit.  By contrast, AP alleges and has publicly asserted that Meltwater's indexing and delivery of such results does constitute infringement of AP's purported copyrights in the Articles in Suit.

46

131.    AP also alleges and has publicly asserted that unidentified Meltwater users have used Meltwater's Archive and Newsletter tools to store and distribute full text versions of the Articles in Suit, and AP has claimed that such alleged conduct infringed its copyrights in those Articles.  By contrast, Meltwater asserts that none of its customers has used those tools to store or distribute any of the Articles in Suit, and that AP's allegations in that regard are false, and were made without any legitimate basis or factual support.

132.    These controversies between the parties are sufficiently concrete, immediate, and substantial to warrant the issuance of a declaratory judgment by this Court.

133.    AP has specifically alleged that there is an actual and justiciable controversy between AP and Meltwater concerning whether the business practices of Meltwater News, including Meltwater News customers' purported use of the Archive and Newsletter tools, constitute infringements of AP's copyrights in the Articles in Suit.

134.    AP has specifically asserted that the infringing actions it has alleged are continuing and will continue in the future so long as Meltwater News remains in operation.

135.    Meltwater therefore seeks a declaration that neither Meltwater, nor its customers, has infringed any valid copyright owned by AP in any of the Articles in Suit.

136.    Absent such relief, Meltwater is in danger of losing additional existing and potential business due to AP's public and unfounded assertions that Meltwater and its customers have and will continue to engage in copyright infringement.

**Count II**
**(Declaratory Judgment of Safe Harbor from Infringement Claims Based upon the Digital Millennium Copyright Act)**

137.    Meltwater repeats and realleges the allegations in Paragraphs 1-136 as if fully set forth herein.

138.    Meltwater has designated and registered with the U.S. Copyright Office an agent to receive notifications of alleged copyright infringement under section 512(c) of the DMCA.

139.    Meltwater News provides online services to its customers and therefore is a "service provider" within the meaning of 17 U.S.C. § 512(k)(2).

140.    Meltwater accommodates and does not interfere with any "standard technical measures" (as that term is defined in 17 U.S.C. § 512(i)(2)) that copyright owners use to identify or protect their copyrighted works.

141.    Meltwater has adopted and implemented a policy for terminating the subscriptions of customers who repeatedly use the Meltwater News service to infringe copyright.

142.    Meltwater has taken steps to inform subscribers and potential subscribers of its repeat-infringer policy, including by posting a copy of that policy on a publicly available portion of its website.

143.    Meltwater News's Archive tool allows users to store text of their own choosing on Meltwater's system.

144.    AP alleges and has publicly asserted that Meltwater customers have used and will continue to use the Archive tool to store full text copies of the Articles in Suit on Meltwater's system.

145.    AP alleges and has publicly asserted that the storage of full text versions of AP articles, including the Articles in Suit, by Meltwater News customers in their Archives constitutes infringement by those users of AP's copyrights, and have alleged and publicly asserted that Meltwater is liable for contributory and vicarious infringement based on the alleged storage of full text version of AP articles, including the Articles in Suit, in Meltwater Archives.

146.    The infringement claims that AP has made regarding the alleged use of Meltwater Archives to store full text versions of AP articles, including the Articles in Suit, arise by reason of the storage at the direction of material that resides on Meltwater's system.

48

147.    Meltwater has no knowledge and is not aware of facts or circumstances indicating that any of its users—other than AP's own agent—has ever stored a full text version of any of the Articles in Suit in a Meltwater Archive.

148.    Meltwater has not received any notifications of claimed infringement regarding any of the Articles in Suit that substantially comply with the requirements of 17 U.S.C. § 512(c)(3).

149.    Meltwater would receive no financial benefit directly attributable to its customers using the Archive for the alleged storage of full text versions of AP articles, including the Articles in Suit.

150.    Meltwater does not have the right and ability to control its customers' use of the Archive tool to allegedly store full text versions of AP articles, including the Articles in Suit.

151.    AP has specifically alleged that there is an actual and justiciable controversy between AP and Meltwater concerning whether the business practices of Meltwater News, including the use of the Archive tool by Meltwater customers, constitute an infringement of AP's copyrights in the Articles in Suit.

152.    AP has specifically alleged that the infringing actions it has alleged are continuing and will continue in the future so long as Meltwater News remains in operation.

153.    Based on the foregoing, there is a definite and concrete, real and substantial, justiciable, and continuing case or controversy exiting between Meltwater and AP regarding whether the DMCA safe harbor protects Meltwater, on an ongoing basis, against claims for money damages based on Meltwater News customers' alleged use of the Archive tool to store full text versions of AP articles, including the Articles in Suit, on Meltwater's system.

154.    This controversy is sufficiently concrete, immediate, and substantial to warrant the issuance of a declaratory judgment by this Court.

155.    Meltwater therefore seeks a declaration that it is protected by the DMCA safe-harbor provision that applies to "Information Residing on Systems of Networks At Direction of Users" (17 U.S.C. § 512(c)) against any claim for monetary relief based on the alleged ongoing infringement of AP's copyrights by Meltwater News customers using the Archive tool to store full text versions of AP articles, including the Articles in Suit, on Meltwater's system.

156.    Absent such relief, Meltwater is in danger of losing additional existing and potential subscribers due to AP's public and unfounded assertions that Meltwater News customers have engaged and will continue to engage in copyright infringement by allegedly storing full text versions of AP articles, including the Articles in Suit, in their Archives and that Meltwater is liable for copyright infringement based on those alleged actions by its customers.

### Count III
### (Libel Per Se)

157.    Meltwater repeats and realleges the allegations in Paragraphs 1-156 as if fully set forth herein.

158.    Prior to issuing its Press Release, AP conducted a substantial investigation into Meltwater's business.

159.    In its Press Release, AP made false public statements regarding Meltwater and the operations of Meltwater News.  Those statements are described more specifically in Paragraphs 108-122 of these Counterclaims.

160.    AP made the false public statements in its Press Release knowing that they were false.

161.    AP made these knowingly false public statements in an effort to harm Meltwater's reputation as a legitimate purveyor of online services.  By undermining Meltwater's reputation in the business community, AP hoped to harm Meltwater's ability to attract and retain customers.

162.    AP's knowingly false public statements about Meltwater were a substantial factor in inducing others not to do business with Meltwater, and in inducing others to limit their business relationships with Meltwater.  Several of Meltwater's existing and potential customers have cited AP's misrepresentations as the basis for their decisions to terminate, not to expand, or not to commence a business relationship with Meltwater.

163.    AP's false public statements about Meltwater have caused Meltwater substantial damage to its reputation, economic injury in the form of lost profits from existing and future business relationships, and significant remedial expense for outreach efforts to combat AP's misinformation.

### Count IV
### (Tortious Interference)

164.    Meltwater repeats and realleges the allegations in Paragraphs 1-163 as if fully set forth herein.

165.    Prior to issuing its Press Release, AP conducted a substantial investigation into Meltwater's business.

166.    At the time it issued its Press Release, AP knew that Meltwater had contractual relationships with a significant number of companies, non-profits, and governmental agencies.

167.    At the time it issued its Press Release, AP also was aware that Meltwater was growing rapidly, was actively soliciting new customers, and expected to enter contractual relationships with a number of additional customers.

168.    At the time it issued its Press Release, AP knew the identities of a number of Meltwater's existing and/or prospective customers.

169.    Through the knowingly false and deceptive public statements about Meltwater in its Press Release, AP intended to disrupt Meltwater's contractual relationships and business expectancies with those customers and with other current and potential Meltwater customers.

170.    AP succeeded through the knowingly false statements in its Press Release in disrupting Meltwater's contractual relationships and business expectancies.  AP's misrepresentations about Meltwater were a substantial factor in inducing various third parties to terminate their contracts with Meltwater, not to enter, or not to expand business relationships with Meltwater.  Several of Meltwater's existing and potential customers have cited AP's misrepresentations as the basis for their decisions to terminate, not to expand, or not to commence a business relationship with Meltwater.

171.    AP's knowingly false public statements about Meltwater have caused Meltwater substantial damages in the form of lost profits from existing and future business relationships.

## PRAYER FOR RELIEF

WHEREFORE, Meltwater respectfully requests entry of judgment in its favor and against AP as follows:

a)      Dismissing AP's Complaint with prejudice;

b)      Proving a speedy hearing on Meltwater's declaratory judgment counterclaims pursuant to Rule 57 of the Federal Rules of Civil Procedure;

c)      Declaring that Meltwater has not infringed any valid copyright that AP owns in any of the Articles in Suit;

d)      Declaring that Meltwater customers have not infringed any valid copyright that AP owns in any of the Articles in Suit;

e)      Declaring that Meltwater is protected against AP's claims of copyright infringement by the Digital Millennium Copyright Act;

f)      Awarding Meltwater its costs and attorneys' fees;

g)      Awarding Meltwater compensatory damages caused by AP's unlawful acts;

h)      Assessing punitive damages against AP; and

i)      Awarding Meltwater such other and further relief as the Court deems just and

proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Defendants/Counterclaim Plaintiffs

demand a trial by jury on all issues so triable.

Date:  April 6, 2012                                    Respectfully submitted,

s/Tonia Ouellette Klausner
Tonia Ouellette Klausner
Brian M. Willen*
Catherine Grealis
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, New York  10019
(212) 999-5800

David H. Kramer**
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

 (* admission pending)
(** *pro hac vice*)

*Attorneys for Meltwater*