DAVID H. KRAMER (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300

TONIA OUELLETTE KLAUSNER
BRIAN M. WILLEN
CATHERINE GREALIS
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 497-7700

*Attorneys for the Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| THE ASSOCIATED PRESS, | ) CASE NO.: 1:12-CV-01087-DLC |
| | ) ECF CASE |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MELTWATER U.S. HOLDINGS, INC.; | ) |
| MELTWATER NEWS U.S., INC.; and | ) |
| MELTWATER NEWS U.S. 1, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO STRIKE PLAINTIFF'S IMPROPER DECLARATIONS AND 56.1 STATEMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

ARGUMENT ............................................................................................................................... 3

I.      THE COURT SHOULD STRIKE THE DECLARATION OF ELIZABETH
        MCNAMARA IN ITS ENTIRETY .................................................................... 3

II.     THE COURT SHOULD STRIKE SUBSTANTIAL PORTIONS OF THE
        CROSS, JONES, RIZZO, KENT AND CURLEY DECLARATIONS ........................... 7

        A.      The Court Should Strike the Statements that Lack Foundation ............................ 8

        B.      The Court Should Strike the Statements that are Hearsay ..................................... 9

        C.      The Court Should Strike Statements that are Irrelevant or Prejudicial ................ 10

        D.      The Court Should Strike Statements that are Improper Lay Opinion ................... 11

        E.      The Court Should Strike Statements that are Argumentative .............................. 12

        F.      The Court Should Strike Statements Concerning Contents of Documents .......... 15

        G.      The Court Should Strike Statements Concerning Alleged Lost Customers
                Because AP's Designated Corporate Representative Refused To Provide
                Testimony on that Topic ..................................................................................... 15

III.    THE COURT SHOULD STRIKE SUBSTANTIAL PARTS OF AP'S RULE 56.1
        STATEMENT ...................................................................................................... 18

        A.      The Court Should Strike the Statements of Non-Material Facts ......................... 18

        B.      The Court Should Strike the Statements Based on Inadmissible Materials ......... 19

        C.      The Court Should Strike the Statements and Documents Regarding
                Matters Prior to 2009 ......................................................................................... 20

        D.      The Court Should Strike the Statements that are Conclusory, Speculation,
                Conjecture, or Argumentative ............................................................................ 21

        E.      The Court Should Strike the Statements that are Not Supported by the
                Cited Evidence ................................................................................................... 22

CONCLUSION ........................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
561 F.3d 199 (3d Cir. 2009)..................................................................................15

*Adrian Shipholding Inc. v. Lawndale Grp S.A.*,
No. 08-cv-11124 (HB)(GWG), 2012 WL 104939 (S.D.N.Y. Jan. 13, 2012).........16

*Automatic Radio [Mfg.] Co. v. Hazeltine Research, Inc.*,
339 U.S. 827, 70 S. Ct. 894, 94 L. Ed. 1312 (1950).............................................3

*Batori v. AM. Permalight, Inc.*,
Nos. 03-cv-8960 (SAS), 03-cv-8961 (SAS),
2004 WL 2601120 (S.D.N.Y. Nov. 16, 2004)........................................................4

*Beyah v. Coughlin*,
789 F.2d 986 (2d Cir. 1986)...............................................................................3, 9

*Black Horse Lane Assocs., L.P. v. Dow Chem. Corp.*,
228 F.3d 275 (3d Cir. 2000)................................................................................16

*Buti v. Impressa Perosa, S.R.L*,
935 F. Supp. 458 (S.D.N.Y. 1996), *aff'd*, 139 F. 3d 98 (2d Cir. 1998) ..................4

*Cameron v. City of N.Y.*,
598 F.3d 50 (2d Cir. 2010)..................................................................................12

*Costello v. N.Y. State Nurses Ass'n*,
783 F. Supp. 2d 656 (S.D.N.Y. 2011)..................................................................21

*Davis v. Peake*,
No. 08-cv-3570 (KTD), 2011 WL 4407551 (S.D.N.Y. Sept. 22, 2011) ..................7

*Degelman Indus. Ltd. v. Pro-Tech Welding and Fabrication, Inc.*,
No. 06-cv-6346T, 2011 WL 6752565 (W.D.N.Y. Dec. 23, 2011) .........................13

*Ditullio v. Vill. of Massena*,
81 F. Supp. 2d 397 (N.D.N.Y. 2000) .....................................................................5

*Genon Mid-Atlantic, LLC v. Stone & Webster, Inc.*,
No. 11-cv-1299 (HB), 2012 WL 1372150 (S.D.N.Y. Apr. 18, 2012) ......................5

*Harley v. Nesby*,
No. 08-cv-5791 (KBF)(HBP), 2011 WL 6188718 (S.D.N.Y. Dec. 12, 2011) .......17

*Hollander v. AM. Cyanamide Co.*,
  172 F.3d 192 (2d Cir. 1999)................................................................................5, 7, 12

*Humphrey v. N.Y. Life Ins. Co.*,
  No. 04-cv-1001 (SJ), 2006 WL 3837718 (E.D.N.Y. Dec. 28, 2006) ........................................5

*Kamen v. Am. Tel. & Tel. Co.*,
  791 F.2d 1006 (2d Cir. 1986)................................................................................3

*Kyoei Fire & Marine Ins. Co. v. M/V Maritime Antalya*,
  248 F.R.D. 126 (S.D.N.Y. 2007) ............................................................................16

*L-3 Commc'ns Corp. v. OSI Sys., Inc.*,
  No. 02-cv-9144 (PAC), 2006 WL 988143 (S.D.N.Y. Apr. 13, 2006)....................................19

*Lachira v. Sutton*,
  No. 05-cv-1585 (PCD), 2007 WL 1346913 (D. Conn. May 7, 2007)....................................13

*LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortg. Lending, Inc.*,
  No. 04-cv-5452 (PKL), 2007 WL 2324052 (S.D.N.Y. Aug. 13, 2007) ...........................19, 22

*Lerner v. Seaboard Coast Line R. R. Co.*,
  594 F. Supp. 963 (S.D.N.Y. 1984) ...........................................................................4

*Nora Beverages, Inc. v. Perrier Group of AM, Inc.*,
  164 F.3d 736 (2d Cir. 1998)..................................................................................7

*Nosal v. Granite Park LLC*,
  269 F.R.D. 284 (S.D.N.Y. 2010) ............................................................................20

*Omnipoint Commc'ns, Inc. v. Common Council of City of Peekskill*,
  202 F. Supp. 2d 210 (S.D.N.Y. 2002)........................................................................4

*Pacenza v. IMB Corp.*,
  363 Fed. Appx. 128 (2d Cir. 2010)...........................................................................5

*Raskin v. Wyatt Co.*,
  125 F.3d 55 (2d Cir. 1997)...................................................................................7

*Reilly v. Natwest Markets Grp Inc.*,
  181 F.3d 253 (2d Cir. 1999)..........................................................................15, 16, 17

*Risco v. McHugh*,
  868 F. Supp. 2d 75 (S.D.N.Y. 2012).......................................................................4, 7

*Rodriguez v. Schneider*,
  No. 95-cv-4083 (RPP), 1999 WL 459813 (S.D.N.Y. June 29, 1999),
  *aff'd*, 56 Fed. Appx. 27 (2d Cir. 2003) ...................................................................21

*Rohlehr v. Brookdale Univ. Hosp. and Med.l Ctr.*,
   390 F. Supp. 2d 207 (E.D.N.Y. 2005) .................................................................5

*Rosenfeld v. Basquiat*,
   78 F.3d 84 (2d Cir. 1996)..................................................................................9

*Santrayall v. Burrell*,
   993 F. Supp. 173 (S.D.N.Y. 1998) ...................................................................10

*Schiess-Froriep Corp. v. S. S. Finnsailor*,
   574 F.2d 123 (2d Cir. 1978)..............................................................................8

*S.E.C. v. Morelli*,
   143 F.R.D. 42 (S.D.N.Y. 1992) .......................................................................16

*Seiler v. Lucasfilm, Ltd.*,
   808 F.2d 1316 (9th Cir. 1986) .........................................................................15

*Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*,
   No. 10-cv-5256 (KMW), 2011 WL 4111504 (S.D.N.Y. Sept. 13, 2011) ................4

*United States v. Diaz*,
   878 F.2d 608 (2d Cir. 1989)..............................................................................10

*United States v. Garcia*,
   413 F.3d 201 (2d Cir. 2005)..............................................................................12

*United States v. Kaplan*,
   490 F.3d 110 (2d Cir. 2007)..............................................................................10

*United States v. Yost*,
   No. 98-cv-974 (MBM), 2001 WL 536937 (S.D.N.Y. May 21, 2001),
   *aff'd sub nom. United States v. Feyrer*, 333 F. 3d 110 (2d Cir. 2003) ....................9

*Wyler v. United States*,
   725 F.2d 156 (2d Cir. 1983).................................................................................3

## Rules

FED. R. CIV. P. 30(b)(6) .................................................................15, 16, 17

FED. R. CIV. P. 37 ..............................................................................16, 20

FED. R. CIV. P. 56 ...................................................................................passim

FED. R. EVID. 401 .......................................................................................10

FED. R. EVID. 402 .......................................................................................10

FED. R. EVID. 403 .................................................................................................................10

FED. R. EVID. 701 .................................................................................................................11

FED. R. EVID. 702 .................................................................................................................11

FED. R. EVID. 801 ...................................................................................................................9

FED. R. EVID. 802 ...................................................................................................................9

FED. R. EVID. 1002 .........................................................................................................11, 15

Local Rule 56.1 ............................................................................................................. passim

By agreement of the parties, this Court set a 35-page limit for the parties' summary judgment briefs.  Dkt. No. 37.  In an effort to skirt that limit, AP's summary judgment brief "only briefly summarizes the relevant facts" and refers the Court to seven declarations submitted in support of its motion.  Plaintiff's Memorandum of Law in Support of Summary Judgment at 3, n.1.  These declarations include a 54-page, 110-paragraph declaration from AP's lead counsel, Elizabeth McNamara, which contains detailed arguments and statements for which Ms. McNamara has no personal knowledge.  AP's "fact" witness declarations likewise brim with argument and other inadmissible material.  AP also has submitted an 80-page, 359-paragraph Local Rule 56.1 statement consisting largely of immaterial and inadmissible statements.  These papers should be stricken in whole or in part for several reasons.

AP's attorney declaration is improper.  Rather than being based on personal knowledge, it is "based on the discovery in this case."  McNamara Decl. ¶ 1.  It expounds upon topics such as the operation of the Meltwater News Service, how Meltwater markets to new customers, how AP writes a news article, and other matters for which AP's outside counsel could not possibly have personal knowledge.  It also contains purported (and misleading) summaries of the evidence, attaches inadmissible documents, and improperly characterizes the testimony of other witnesses, the veracity of which AP's counsel cannot verify.  Ms. McNamara's declaration also violates the rule against argumentative attorney declarations:  it is organized with argument headings, and offers substantial advocacy concerning the legal issues in this case.  It is, simply put, another brief, submitted in declaration form in violation of the local rules and the briefing limits imposed by the Court.

AP's fact witness declarations are no better.  Six of the seven fact witness declarations that AP submitted in connection with its motion for summary judgment are rife with improper legal and factual argument, inadmissible hearsay, lay opinion evidence, and other matters that either are not relevant to AP's motion or for which no foundation has been laid.  For example, AP declarants Sue Cross and Joy Jones are not users of the Meltwater News service, and neither has personal knowledge about how the service operates or how it is marketed to potential

customers.  Nevertheless, both Ms. Cross and Ms. Jones have submitted declarations that purport

to describe the operation of Meltwater News and that advance legal arguments based on their

"understanding" of the evidence.  This paragraph from Ms. Cross's declaration is illustrative:

> Meltwater is a sophisticated consumer of intellectual property content.  Its
> business is built on the backs of news content reported, edited and distributed by
> others.  It cannot claim ignorance of the basic principles and practices
> surrounding the exploitation of news content created by others.  Indeed, I
> understand that Meltwater has been embroiled in two previous copyright
> actions. . . .  It is inconceivable to me that Meltwater is not fully aware of the
> general practice of most websites to include in their terms of use a strict
> prohibition on the commercial use of content obtained from the websites, as well
> as other critical restrictions routinely violated by Meltwater.  Nor can Meltwater
> plausibly claim that it believed that the AP content that appears on its members
> and licensees' websites is free for the taking and not subject to express terms and
> conditions that it routinely violates.

Cross Decl. at ¶ 27; *see, e.g.*, Jones Decl. ¶ 49 ("I am at a loss should Meltwater try to argue that

including these very basis 'analytics' somehow excuses their systematic taking and selling of AP

content . . . These "analytics" provide little more than graphic window dressing.").

Similarly improper are the declarations of John Rizzo, Thomas Kent, and Thomas

Curley.  Mr. Curley's declaration, for example, is blatantly argumentative.  *E.g.*, Curley Decl.

¶ 24 ("[C]ertain entities cling to what we believe to be the discredited notion that because content

is freely available on the Internet, it can simply be scraped, re-packaged and sold as the

foundation for an ongoing business. Meltwater is one of the few remaining entities to hold tight

to this anachronistic canard.").  These declarations also rely extensively on inadmissible hearsay.

Mr. Rizzo's declaration contains numerous statements about the contents of conversations he

allegedly had with former AP customers.  Mr. Kent bases his declaration on "information

collected from the various editors with whom I regularly work."  Kent Decl. ¶ 1.  And

Mr. Curley refers to what he was told internally about Meltwater and the results of foreign legal

proceedings with which he was not involved.  These declarations violate the requirement of FED.

R. CIV. P. 56(c)(4) that "[a]n affidavit or declaration used to support or oppose a motion must be

made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Compounding the problems created by its improper declarations, AP has also violated Local Rule 56.1(a)'s requirement of a "short and concise" statement containing only "material" facts.  AP's 56.1 Statement is nothing like that.  It is a 359-paragraph behemoth, padded with trivia such as the number of staff that AP employs, the Pulitzer Prizes won by its employees, the protective equipment it buys for reporters in war zones, the details of how it uses technology to track its readers, and the procedural history of this litigation.  None of this is material to the legal issues presented to the Court in AP's motion, making its inclusion in AP's 56.1 Statement improper.  On top of this, AP's Statement is replete with argument and mischaracterization of the cited materials, and relies heavily on inadmissible evidence – most notably, its own attorney and fact witness declarations.  The problems with AP's 56.1 Statement are so pervasive that the Court could properly strike it in its entirety.  At minimum, the immaterial statements and statements based on inadmissible evidence should be stricken and disregarded.

## ARGUMENT

### I.  THE COURT SHOULD STRIKE THE DECLARATION OF ELIZABETH MCNAMARA IN ITS ENTIRETY

An attorney declaration that is not based upon personal knowledge is improper and should be disregarded by the court.  *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("Attorneys' affidavits not based upon personal knowledge have been held not to comply with Rule 56(e) at least since *Automatic Radio [Mfg.] Co. v. Hazeltine Research, Inc.,* 339 U.S. 827, 831, 70 S. Ct. 894, 896, 94 L. Ed. 1312 (1950), a position this court has frequently reiterated . . . ."); *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir. 1983) (attorney affidavit not based on first-hand knowledge not entitled to any weight); *Beyah v. Coughlin*, 789 F.2d 986, 989

(2d Cir. 1986) (reversing grant of summary judgment where district court relied upon attorney affidavit that was not based on personal knowledge).[1]

An attorney may not circumvent the requirement that all summary judgment declarations be based on personal knowledge by submitting statements based on "discovery" or her "familiarity with the case." *Batori v. AM. Permalight, Inc.*, Nos. 03-cv-8960 (SAS), 03-cv-8961 (SAS), 2004 WL 2601120, at *2 (S.D.N.Y. Nov. 16, 2004) ("An attorney's familiarity with a case on which he is working, without more, is not sufficient to establish personal knowledge of the material facts of the case."). Nor may an attorney avoid the personal knowledge requirement by making statements with citations to the record. *Risco v. McHugh*, 868 F. Supp. 2d 75, 88 n.2 (S.D.N.Y. 2012) ("The [attorney's] affirmation is patently improper in that he could not possibly have personal knowledge of the matters discussed, as evidenced by the fact that the affirmation—unlike counsel's other submissions—actually contains citations to the record ….").

In addition, courts have rejected attorney declarations that contain legal argument or otherwise serve as a vehicle for additional legal briefing:

> The district court was correct in holding that the [attorney] affidavit 'flagrantly disregard[ed] the requirements of Rule 56(e),' was 'riddled with inadmissible hearsay, conclusory statements and arguments, and information clearly not made on the affiant's personal knowledge,' and 'more resemble[d] an adversarial memorandum than a bona fide affidavit.' The court acted well within its discretion by striking the inappropriate portions of the affidavit.

*Hollander v. AM. Cyanamide Co.*, 172 F.3d 192, 198, (2d Cir. 1999) (citation omitted),

*abrogated on other grounds by Pacenza v. IMB Corp.*, 363 Fed. Appx. 128 (2d Cir. 2010);

---

[1] *See also, e.g.*, *Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*, No. 10-cv-5256 (KMW), 2011 WL 4111504, at *5 (S.D.N.Y. Sept. 13, 2011) ("Statements in an attorney's affidavit not based on personal knowledge are not entitled to evidentiary weight."); *Omnipoint Commc'ns, Inc. v. Common Council of City of Peekskill*, 202 F. Supp. 2d 210, 213 (S.D.N.Y. 2002) ("When an attorney's affirmation does not comply with Rule 56(e), the court should strike the portions thereof which are not made upon the affiant's personal knowledge, contain inadmissible hearsay or make conclusory statements."); *Buti v. Impressa Perosa, S.R.L*, 935 F. Supp. 458, 463 (S.D.N.Y. 1996) ("The [attorney] affidavit does appear to include facts not based on personal knowledge, and thus is technically improper."), *aff'd*, 139 F. 3d 98 (2d Cir. 1998); *Lerner v. Seaboard Coast Line R. R. Co.*, 594 F. Supp. 963, 969 (S.D.N.Y. 1984) ("An affidavit of the opposing party's attorney which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight.").

*Genon Mid-Atlantic, LLC v. Stone & Webster, Inc.*, No. 11-cv-1299 (HB), 2012 WL 1372150, at *3 (S.D.N.Y. Apr. 18, 2012) (ignoring "portions of the [attorney] Declaration [that] resemble 'an adversarial memorandum [more] than a bona fide affidavit.'") (quoting *Hollander,* 172 F.3d at 198).[2]

The declaration of Elizabeth McNamara, AP's lead counsel in this action, suffers from each of these infirmities.  It does not even purport to be based entirely upon Ms. McNamara's personal knowledge.  Instead, Ms. McNamara affirms that ***"[e]verything contained in this declaration is based on the discovery in this case, as referenced by my citations***, or my personal knowledge, except as otherwise indicated."  McNamara Decl. ¶ 1 (emphasis added).  Rather than attaching documents produced and deposition testimony provided during discovery, all but 6 of the 110 paragraphs in the McNamara Declaration purport to testify regarding the contents and significance of those materials.[3]

For example, the McNamara declaration devotes six pages to a description of the Meltwater service.  McNamara Decl. ¶¶ 2-17.  The first states:  "Meltwater operates a commercial, subscriber-only media monitoring service called the Meltwater News service ("Meltwater News").  Meltwater News is a 'subscription service for businesses' — not a consumer tool for individuals."  It then goes on to cite to, selectively quote from, and

_____

[2] As a consequence, attorney-declarations that do more than attach exhibits are disregarded by the court.  *See Rohlehr v. Brookdale Univ. Hosp. and Med.l Ctr.*, 390 F. Supp. 2d 207, 208 (E.D.N.Y. 2005); *Humphrey v. N.Y. Life Ins. Co.*, No. 04-cv-1001 (SJ), 2006 WL 3837718, at *7 n.5 (E.D.N.Y. Dec. 28, 2006); *Ditullio v. Vill. of Massena*, 81 F. Supp. 2d 397, 403 (N.D.N.Y. 2000) ("To the extent that Defendant's Attorney's affidavit contains factual assertions not made upon personal knowledge and/or legal arguments, such portions of her affidavit will be stricken and not considered by the Court in connection with the pending motions.").

[3] Even those six paragraphs are improper.  Three claim that "evidence" exists demonstrating particular facts without pointing to specific evidence in the record.  *See* ¶ 21 ("[T]here is extensive evidence suggesting that many Meltwater News customers frequently use the service . . . ."); ¶ 70 ("[T]he evidence produced by Meltwater in this action demonstrates that . . . ."); ¶ 105 ("Evidence produced by Meltwater suggests that . . . .").  One asserts, without foundation, that "[v]irtually[the] entire [Meltwater] database "is made up of unlicensed news content." *Id.* ¶ 54.  One characterizes legal proceedings in the UK with which Ms. McNamara was not involved.  *Id.* ¶ 102.

characterize materials attached to the Declaration. *Id.* ¶ 2. But Ms. McNamara never states that she herself has utilized the Meltwater News service, so her statements regarding how it works are improper summaries and characterizations of other materials, rather than factual statements based on first-hand knowledge. *See id.* ¶¶ 18-19, 22-24, 26-38, 40-42. Ms. McNamara similarly provides numerous other statements for which she has no personal knowledge. *See id.* ¶¶ 25, 44-59, 68, 69, 71-76, 78-81, 84, 88-91, 93, 94, 96, 97-104, 106-110. And she improperly summarizes the testimony of other witnesses and the materials attached to her declaration. *See, e.g.*, *id.* ¶ 25 ("As set forth in the Cross Declaration, the AP Exchange platform offers . . . ."); ¶ 24 ("Similarly, in sales pitches and proposals to potential customers, Meltwater . . . ."); ¶ 39 ("Meltwater sales consultant David Houston testified that . . . ."); ¶ 58 ("As explained more fully in the Declaration of Joy Jones, dated November 6, 2012 ("Jones Decl."), a robots.txt file . . . .").[4]

     The McNamara Declaration also is replete with argument:

- "The evidence from Meltwater also demonstrates that the amount of content delivered by Meltwater acts as a substitute for reviewing the full articles." *Id.* ¶ 19.

- "Despite these admissions, Meltwater claims that its customers primarily use Meltwater News to identify 'mentions' of their company or product, rather than for news and information. However, Meltwater concedes . . . ." *Id.* ¶ 20.

- "In fact, although a limited number of Meltwater's clients may sometimes use Meltwater News merely to determine whether their press releases have been picked up by news outlets, there is extensive evidence suggesting that . . . ." *Id.* ¶ 21.

- "As evidenced in the Spreadsheets produced by Meltwater and described below in Paragraph 73, the search terms selected by Meltwater News customers evidence that . . . ." *Id.* ¶ 22.

These are just a few examples. There are many, many others.[5]

---

[4] *See also* ¶¶ 43, 55-64, 66-69, 71-77, 79-82, 86, 89-92, 94-100, 106-110.

[5] *See also id.* ¶¶ 25, 43, 54, 56, 64, 65, 67, 70, 72, 77, 78, 82-88, 91, 93-99, 101, 105, 106.

Because Ms. McNamara has no personal knowledge of the matters for which she has submitted a sworn declaration, and the declaration is filled with improper attorney argument, this Court should disregard all of the statements in her declaration and consider only the documents she attaches that have been authenticated and are admissible.  *See Risco*, 68 F. Supp. 2d at 88 n.2.[6]

## II.   THE COURT SHOULD STRIKE SUBSTANTIAL PORTIONS OF THE CROSS, JONES, RIZZO, KENT AND CURLEY DECLARATIONS

FED. R. CIV. P. 56(c)(4) mandates that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Declarations based on matters not admissible at trial may not be considered by the court.  *Nora Beverages, Inc. v. Perrier Group of AM, Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) ("On a summary judgment motion, the district court properly considers only evidence that would be admissible at trial."); *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("The principles governing admissibility of evidence do not change on a motion for summary judgment.").

It is well established that "[a] court may [ ] strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements."  *Hollander* 172 F.3d at 198; *accord Davis v. Peake*, No. 08-cv-3570 (KTD), 2011 WL 4407551, at *3 (S.D.N.Y. Sept. 22, 2011).  Here, substantial portions of the Cross, Jones, Rizzo, Kent and Curley declarations should be stricken.  Annotated copies of each declaration, which set out Meltwater's specific objections to each paragraph are attached hereto as Exhibits 2-6.[7]

---

[6] Attached hereto as Exhibit 1 is chart with evidentiary objections to the exhibits to the McNamara Declaration.

[7] Exhibit 7 hereto is a chart with evidentiary objections to AP's fact witness exhibits.

## A.      The Court Should Strike the Statements that Lack Foundation

Because declarations in support of summary judgment must be made on the basis of personal knowledge, the declaration must set forth facts showing that the declarant has such knowledge.  *Schiess-Froriep Corp. v. S. S. Finnsailor*, 574 F.2d 123, 126 (2d Cir. 1978) ("[Rule 56] requires that the moving party meet its burden by submitting affidavits made on personal knowledge, which set forth admissible evidentiary facts and affirmatively show that the affiant is competent to testify to the matters contained therein.").

AP's witness declarations contain testimony for which no foundation has been established, including testimony on topics for which the declarants have explicitly disclaimed knowledge.  For example, Ms. Cross is not a user of the Meltwater News service.  At her deposition, she claimed not to have any non-privileged information to support AP's contention that it has lost customers to Meltwater in the marketplace.  Klausner Decl. Ex. 5 (Cross Dep. at 248:13-251:17; 254:15-255:18).  Despite this, Ms. Cross's declaration addresses how Meltwater News operates and how it supposedly has impacted AP:

> 7.      Meltwater News competes directly with AP for its government, non-profit and corporate subscriber business.  In fact, as I will explain below, we believe on several occasions AP licensees have terminated their agreements with the AP and moved to Meltwater's services.  We, of course, expect competition, and routinely rise to the challenges of competition, yet Meltwater News competes on an unfair playing field:  it does not create or license the news content it sells to its subscribers; nor does it not engage in any commentary or critique of the news. Instead, Meltwater News' only investment lies in the technology required to scrape and sort news content from the web, a sales staff to market and distribute all this news created by others, and the minimal costs of distribution in the internet age.  Meltwater obtains AP and other news content by crawling and searching the websites of AP's members and licensees (like Yahoo News) and then systematically re-packages AP articles to deliver on a daily basis verbatim excerpts from the news to its paying customers.

Cross Decl. ¶ 7.  Ms. Cross's speculation about how Meltwater operates, its position in the marketplace, and AP's unsupported beliefs are not admissible.[8]

_____

[8] The following statements also are made without indication that the witness has first-hand knowledge:  Cross Decl. ¶¶ 4, 6-8, 11, 17-21, 23-24, 27, 29, 32-39, 44-45, 48, 51-52, 56-59, 63-64;

(continued...)

**B.      The Court Should Strike the Statements that are Hearsay**

"The hearsay rule itself, Rule 802, is a rule of exclusion that makes an out-of-court statement generally inadmissible when the statement is offered to prove the truth of its contents." *Rosenfeld v. Basquiat*, 78 F.3d 84, 89 (2d Cir. 1996).  Testimony from one witness relating what other individuals told him is hearsay when offered to establish the truth of the statements from the other individuals.  FED. R. EVID. 801; *see, e.g.*, *United States v. Yost*, No. 98-cv-974 (MBM), 2001 WL 536937, at *3 (S.D.N.Y. May 21, 2001), *aff'd sub nom. United States v. Feyrer*, 333 F. 3d 110 (2d Cir. 2003).  Statements based on hearsay are not properly included in summary judgment affidavits.  *Beyah*, 789 F.2d at 989 ("'[h]earsay testimony . . . that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e) affidavit'") (quoting 6 MOORE'S FEDERAL PRACTICE ¶ 56.22[1], at 56–1312 to 56–1316 (2d ed. 1985)).

AP's witness declarations contain hearsay testimony and there is no applicable exception allowing its introduction into evidence.  For example, Mr. Kent's declaration states that his testimony is based, in part, on "information collected from the various editors with whom [Mr. Kent] regularly work[s] as part of [his] role as Standards Editor."  Kent Decl. ¶ 1.  In other words, Mr. Kent's declaration is based on what he was told by others.  This is classic hearsay. Because Mr. Kent's Declaration does not distinguish between statements based on what he was told by AP editors and statements for which he has personal knowledge, his entire declaration is properly stricken as hearsay.

Similarly, Mr. Rizzo testifies as to the details of numerous conversations that he purports to have had with former AP customers.  For example, Mr. Rizzo states:

---

(...continued from previous page)
Curley Decl. ¶¶ 2-28; Jones Decl. ¶¶ 6-13 23-24, 27, 36-38, 42-44, 48-49, 51-52 ; Kent Decl. ¶¶ 3, 5, 7, 11, 14, 15, 18-19, 20, 24, 27, 28-30; Rizzo Decl. ¶¶ 3-4, 13-14, 19-20.

11.    During one of our phone calls, when I asked why the contract would be cancelled, Mr. Moore told me that there had been a two-week side-by-side comparison of the AP wire and a Meltwater subscription, and that Meltwater had beat AP in overall volume of stories and price, since the price of a Meltwater subscription was significantly lower than the price of an AP subscription. Attached as Exhibit 4 is the December 18, 2009 Weekly Report reflecting the reasons Mr. Moore gave me for the cancellation at AP0013561.

Rizzo Decl. ¶ 11.  Mr. Rizzo cannot testify as to what he remembers being told, nor may he introduce as exhibits documents that he created to inform his superiors what he supposedly was told by AP customers.[9]

C.    **The Court Should Strike Statements that are Irrelevant or Prejudicial**

Only relevant evidence is admissible. FED. R. EVID. 401, 402.  Although relevance is a liberal standard, the proponent of evidence must still prove the following:  "'(1) [t]he evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action.'"  *United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007) (quoting *United States v. Diaz*, 878 F.2d 608, 614 (2d Cir. 1989)).  If the proponent cannot demonstrate that the evidence is relevant, it is inadmissible.  *See Santrayall v. Burrell*, 993 F. Supp. 173, 177 (S.D.N.Y. 1998).  Evidence may also be excluded, though relevant, if it would cause unfair prejudice, confusion, or waste of time.  FED. R. EVID. 403.  Here, AP's declarations address facts that have no bearing on any claim or defense and are merely an attempt to lionize AP.

For example, the Mr. Curley proffers evidence on the dangers of news gathering:

9.    Most recently, covering events in Egypt and other areas of the Middle East has been particularly dangerous.  Photographers and television crews have had to relocate due to hostility from street crowds, while police often do not discriminate between journalists covering a confrontation and the militants themselves.  An AP contract video reporter was detained by the military in Cairo in January, 2012 although he managed to convince a senior officer to release him and his

---

[9] The following statements also are based on inadmissible hearsay: Cross Decl. ¶¶ 17-18, 21, 23, 37, 54-56; Curley Decl. ¶¶ 16, 18-19, 21-22, 25-26, 28; Jones Decl. ¶¶ 7, 11, 14, 20, 23, 36-37, 51; Kent Decl. ¶¶ 3-31; Rizzo Decl. ¶¶ 5-6, 8-15.

equipment.  This is but one example of the importance of the training and skills of
AP staffers that yield demonstrated value.

Curley Decl. ¶ 9.  This topic has no bearing on any issue in this case, and is obviously presented
to try and make AP out as "the good guy."

Similarly, irrelevant are many paragraphs of AP's declarations addressing details of
licenses and terms of service of AP licensees.  For example, Ms. Cross states:

> 25.   Similarly, Google, another AP licensee, also restricts the use of its
> displayed content – including Google News RSS feeds – for commercial
> purposes.  Google News, which "aggregates headlines from more than 50,000
> news sources worldwide, groups similar stories together and displays them
> according to each reader's personalized interests" makes clear that:
>
>> [Y]ou may only display Google News content for your own
>> personal use (i.e., non-commercial use) and you may not otherwise
>> copy, reproduce, alter, modify, create derivative works, or publicly
>> display any content.  For example, you may not use Google News
>> content to sell a product or service, to increase traffic to your site
>> for commercial reasons, such as advertising sales, take the results
>> from Google News and reformat and display them, or use any
>> robot, spider, other device or manual process to monitor or copy
>> any content from Google News.

Cross Decl. ¶ 25.  Beyond mischaracterizing the document in various ways in violation of FED.
R. EVID. 1002 (best evidence), the testimony regarding Google News terms of service is
irrelevant because there is no evidence that Meltwater utilizes content obtained from Google
News (and it does not).  Similarly irrelevant matter is presented throughout AP's witness
declarations: Cross Decl. ¶¶ 4-5 7-8, 10, 13-14, 16-21, 24-27, 29, 32, 41-42, 44, 52, 57-61, 63-
65; Curley Decl. ¶¶ 2-10, 12, 15-17, 23, 25-26; Jones Decl. ¶¶ 4, 7-10, 12-21, 23-24, 29-30, 38-
40, 43, 51-52.  Tellingly, most of this material makes no appearance at all in AP's brief.

### D.   The Court Should Strike Statements that are Improper Lay Opinion

Admissible lay witness opinion testimony "is limited" to those opinions or inferences that
are "(a) rationally based on the witness's perception; (b) helpful to clearly understand the
witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or
other specialized knowledge within the scope of Rule 702."  FED. R. EVID 701.  Accordingly, a

lay witness opinion must be "based on the witness's personal perceptions" and may not be based

upon information obtained from other sources. *United States v. Garcia*, 413 F.3d 201, 211 (2d

Cir. 2005). Nor may a lay witness "present testimony in the form of legal conclusions" or

"undertake[] to tell the jury what result to reach." *Cameron v. City of N.Y.*, 598 F.3d 50, 62 (2d

Cir. 2010) (internal marks and citations omitted).

AP's declarations are filled with opinions based on the declarant's "experience" or

relating to subjects outside their perception. For example, Ms. Jones states:

> 49.     I would also like to address two aspects of the Meltwater News service,
> namely its basic analytics and its distribution of the lede from AP articles in
> contrast to Google Alerts. . . .  ***Based on my experience in the industry working
> with AP, NewsRight, and AP's licensees on digital strategy, these analytical
> offerings are extremely rudimentary and unsophisticated.  They do not provide
> for rich correlation of data nor do they include more predictive analytics.
> Furthermore, I am at a loss should Meltwater try to argue that including these
> very basis [sic] "analytics" somehow excuses their systematic taking and selling
> of AP content.***  These analytics are completely free-standing.  Unlike a book
> review or a movie review in which quotes are integrated into the larger review,
> Meltwater could readily supply its customers with such rudimentary statistics like
> the top publications that used a particular "agent" without copying and
> distributing the extensive excerpts from AP articles in its News Reports and other
> search results.  These "analytics" provide little more than graphic window
> dressing.

Jones Decl. ¶ 49 (emphasis added). This is totally improper: Ms. Jones has not been offered as

an expert on "news analytics" and may not offer opinions on the depth or adequacy of the

products Meltwater sells.[10]

### E.     The Court Should Strike Statements that are Argumentative

A district court properly strikes statements in a declaration that "more resemble an

adversarial memorandum than a bona fide affidavit." *Hollander*, 172 F.3d at 198 (affirming

district court's striking of portions of affidavit that were argument) (internal marks and citation

---

[10] The following statements also are impermissible lay witness opinion: Cross Decl. ¶¶ 28, 45; Curley Decl. ¶¶ 12, 14, 18-19, 21-24, 26-28; Jones Decl. ¶¶ 23, 31, 33, 41, 44, 49, 52; Rizzo Decl. ¶¶ 3, 6, 8, 13, 19.

omitted); *accord Degelman Indus. Ltd. v. Pro-Tech Welding and Fabrication, Inc.*, No. 06-cv-6346T, 2011 WL 6752565, at *4 (W.D.N.Y. Dec. 23, 2011) (striking declaration that "contain[s] impermissible legal argument, excessive commentary on the evidence, and in many instances, averments are based on inadmissible expert testimony.").[11]

AP's witness declarations contain a large number of argumentative statements that should be stricken on this ground.  For example, Ms. Cross states:

> 27.    Meltwater is a sophisticated consumer of intellectual property content.  Its business is built on the backs of news content reported, edited and distributed by others.  It cannot claim ignorance of the basic principles and practices surrounding the exploitation of news content created by others.  Indeed, I understand that Meltwater has been embroiled in two previous copyright actions – one in its original home base, Norway, and the other more recently in England – where courts found Meltwater's media monitoring reports to require a license.  It is inconceivable to me that Meltwater is not fully aware of the general practice of most websites to include in their terms of use a strict prohibition on the commercial use of content obtained from the websites, as well as other critical restrictions routinely violated by Meltwater.  Nor can Meltwater plausibly claim that it believed that the AP content that appears on its members and licensees' websites is free for the taking and not subject to express terms and conditions that it routinely violates.

Cross Decl. ¶ 27.  This entire paragraph is argument on matters outside of Ms. Cross's personal knowledge.  Additional paragraphs of the Cross Declaration containing impermissible argument include:  5, 7-8, 16-17, 19, 21, 23-24, 28-36, 38, 41, 44-45, 48, 51-54, 57, 60-61, 63, 65.

The declaration of Thomas Curley is no better.  For example it states:

> 28.    Debunking Meltwater's unfounded thesis that it can systematically scrape thousands of AP articles from the web, excerpt critical components from each article (including the all-important lede to every article) and then sell those excerpts to its subscribers, is of critical importance to the Associated Press.  Meltwater competes directly for AP licenses, but it does so on an unfair playing field.  By simply taking and exploiting AP and other news content without any compensation, Meltwater is largely a sales operation, with distribution costs as its

---

[11] *See also Lachira v. Sutton*, No. 05-cv-1585 (PCD), 2007 WL 1346913, at *2 (D. Conn. May 7, 2007) ("The court will hereby strike the following portions of the [witness] Affidavit because they contain inadmissible hearsay, generalized conclusory and argumentative statements, legal conclusions, information which could not be attributed to plaintiff's personal knowledge, and/or because they contradict, either by addition or omission, Plaintiff's previous deposition testimony ….").

primary expense.  AP receives no value from this rank exploitation.  For years, many of our member news entities thought some value could be achieved through linking, but that false economy has been exposed.  And I understand that Meltwater does not seriously even argue that the media monitoring reports it delivers to thousands of customers somehow drive traffic to AP or member sites through the links it delivers.  I am told that in England, it was ultimately determined that its "click-through" rate was about .05% for British newspapers.  That absurdly low rate exposes what I believe to be the simple fact that Meltwater's service acts primarily as a substitute for AP licenses.  In the end, AP will no longer exist, or will only exist in some truncated and devalued form, if entities like Meltwater that compete directly with AP in disseminating news content can simply free ride on and exploit AP content without any license.  I strongly urge this Court to find Meltwater's actions to be infringing and to grant AP's motion for summary judgment.

Curley Decl. ¶ 28.  Mr. Curley is not an attorney and may not "urge this Court" to take action.

Nor may he advance arguments about market harm or foreign copyright litigation in the guise of

a witness declaration.  Other paragraphs of the Curley declaration containing improper argument

include:  9, 12, 13-15, 18-20, 22-28.

The Declaration of Joy Jones also contains improper argument and advocacy.  For

example, Ms. Jones states:

41.      [ ] The goals that AP has been working toward over the past decade – ensuring that its content is widely available through licensed channels, and curbing unauthorized redistribution – cannot be accomplished overnight.  They require the cooperation of many different news organizations, some of whom have limited budgets to implement significant operational changes in a short time frame.  Nevertheless, AP's proactive and ongoing efforts in this area are helping to ensure that AP and its members are able to continue their crucial newsgathering function into the future and combat the threat posed by unauthorized commercial scrapers such as Meltwater.

Jones Decl. ¶ 41.  There is not an admissible fact in this paragraph.  Other paragraphs in her

declaration containing impermissible argument include:  4-5, 7, 11-13, 17-18, 21-22, 24, 44-49,

51-52.

The Declaration of Thomas Kent likewise contains argument including the following

"conclusion" on page 17:

AP's news stories, including the Registered Articles, are the product of a lengthy creative process involving decisions about selection, arrangement, style, and

> presentation of information based on the skill, judgment, experience and choices
> of AP's reporters and editors.  Meltwater, by delivering excerpts of AP articles to
> its customers that capture the essence of those articles, has effectively substituted
> its products for those of AP.

This "conclusion" improperly opines and advocates on two legal issues before the Court—the
"originality" of AP's works and the degree to which Meltwater's uses can be held to "substitute"
for them.  Such arguments should be in AP's brief, not declarations that are required to be
limited to factual and admissible content.  Paragraphs in the Kent Declaration containing
improper argument include:  5, 7, and the conclusion.  Mr. Rizzo's declaration contains similar
improper argument in paragraphs 1, 2, 6, 13, 19.

### F.   The Court Should Strike Statements Concerning Contents of Documents

Under FRE 1002, to prove the content of a writing or recording, the original writing or
recording must be proffered.  FED. R. EVID 1002; *see also Seiler v. Lucasfilm, Ltd.*, 808 F.2d
1316, 1319 (9th Cir. 1986) ("'[I]n proving the terms of a writing, where the terms are material,
the original writing must be produced unless it is shown to be unavailable for some reason other
than the serious fault of the proponent'") (quoting MCCORMICK ON EVIDENCE § 230, at 704)
(6th ed. 2009).  This rule requires that a Court review the contents of documents themselves,
rather than a witness's quotations there from. *Acumed LLC v. Advanced Surgical Servs., Inc.*,
561 F.3d 199, 222 (3d Cir. 2009) (upholding district court order prohibiting witnesses from
testifying as to the contents of contracts).  AP's declarants frequently testify about and
mischaracterize the contents of documents available as evidence:  Cross Decl. ¶¶ 11, 18-21, 25,
28-29, 31-32, 34-36, 41; Curley Decl. ¶¶ 13, 18; Jones Decl. ¶¶ 7, 13-16, 18-19, 21, 51, 52; Kent
Decl. ¶¶ 17, 19, 25-26, 30.  These statements should be stricken.

### G.   The Court Should Strike Statements Concerning Alleged Lost Customers Because AP's Designated Corporate Representative Refused To Provide Testimony on that Topic

"Under Rule 30(b)(6), when a party seeking to depose a corporation announces the
subject matter of the proposed deposition, the corporation must produce someone familiar with
that subject." *Reilly v. Natwest Markets Grp Inc.*, 181 F.3d 253, 268 (2d Cir. 1999).  In choosing

a corporate designee the party "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed" as to the relevant subject matters." *S.E.C. v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992) (internal marks and citation omitted).  If a party does not produce a proper designee sanctions, including preclusion of evidence, are appropriate.  *Reilly*, 181 F.3d at 268 ("When a party fails to comply with Rule 30(b)(6), Rule 37 allows courts to impose various sanctions, including the preclusion of evidence.").[12]  For the purposes of sanctions "[p]roducing an unprepared witness is tantamount to a failure to appear."  *Kyoei Fire & Marine Ins. Co. v. M/V Maritime Antalya*, 248 F.R.D. 126, 152 (S.D.N.Y. 2007) (ordering adverse fact "established" when a party's 30(b)(6) witness was unable to testify to the noticed factual issue).

Here, many of AP's declarations contain statements regarding customers that were purportedly "lost" to Meltwater.  All such evidence should be excluded because AP's designated corporate representative on the topic of alleged market harm to AP, including alleged lost customers, was unable to "testify about information known or reasonably available to the organization" on this topic.  Indeed, AP counsel explicitly instructed AP's corporate designee on this topic not to answer questions about AP's alleged lost customers on the grounds that all of AP's knowledge on this topic was privileged.

During discovery AP identified in response to an Interrogatory 28 entities that it claimed were "lost" to Meltwater, either because they had cancelled subscriptions to AP in favor of the Meltwater service or because they had chosen to subscribe to Meltwater rather than undertaking a subscription to AP.  Grealis Decl. Ex. 61 (AP Am. Resp. Rog 8).  Meltwater examined this

---

[12] *See also Adrian Shipholding Inc. v. Lawndale Grp S.A.*, No. 08-cv-11124 (HB)(GWG), 2012 WL 104939 (S.D.N.Y. Jan. 13, 2012) (holding that party who failed to properly prepare 30(b)(6) designee on fact issues was precluded from contesting those issues); *Black Horse Lane Assocs., L.P. v. Dow Chem. Corp.,* 228 F.3d 275, 304 (3d Cir. 2000) (affirming sanction when deponent "failed to offer meaningful testimony about most, if not all, of the items specified in the notice of deposition" and precluding party from introducing testimony that varied from statements by witness).

response and discovered that the overwhelming majority of the customers on the list had never been Meltwater customers.  Box Decl. ¶ 13.  In order to explore AP's basis for its seemingly unfounded Interrogatory response, Meltwater included in its notice of deposition of AP pursuant to FED. R. CIV. P. 30(b)(6), a topic addressed at AP's market harm theory, including alleged lost customers.  Klausner Decl. Ex. 58 at Topic 11.  AP designated Sue Cross as its 30(b)(6) representative on this topic.  Klausner Decl. Ex. 5 (Cross Dep. at 13:22-14:15).

At her deposition, Meltwater's counsel asked Ms. Cross about AP's basis for claiming that the 28 entities identified in its response to Interrogatory No. 8 had been "lost" to Meltwater. Other than a hearsay statement regarding the ACLU of Texas (an entity AP does not argue in its papers was "lost" to Meltwater), Ms. Cross could provide no information.  *Id.* at 237:19-238:19. Instead, Ms. Cross was repeatedly instructed by her counsel not to answer the question.  *Id. at* 250:2-251:17.  Although she had been designated by AP to testify as to the company's knowledge related to "market harm" and "lost customers," Ms. Cross testified that she could not provide any non-privileged information to explain the basis for AP's position that it had suffered market harm because of Meltwater's use of AP articles as demonstrated by alleged lost AP subscribers.  *Id. at* 254:7-255:18.

Despite the facts that (1) AP failed to produce a witness to explain the basis for its lost customer theory of market harm, and (2) AP claimed that such information was privileged, several of AP's declarations address this topic.  Ms. Cross herself provides detailed, albeit hearsay statements about AP's claimed loss of two customers identified by AP in its response to interrogatory number 8.  Cross Decl. ¶¶ 54-55.  Mr. Rizzo does as well.  Rizzo Decl. ¶¶ 7-20.

Because AP failed to produce a witness to testify about information known or reasonably available to AP regarding the customers AP claimed in its interrogatory response to have lost because of Meltwater's service, and because AP claimed that any such information was privileged, it should be precluded from presenting evidence on this topic.  *Reilly*, 181 F.3d at 269 (preclusion of witnesses was appropriate sanction for failure to comply with 30(b)(6)); *Harley v. Nesby*, No. 08-cv-5791 (KBF)(HBP), 2011 WL 6188718 (S.D.N.Y. Dec. 12, 2011) (ordering

that material withheld from production on privilege grounds be excluded from summary

judgment motions and trial).

## III.   THE COURT SHOULD STRIKE SUBSTANTIAL PARTS OF AP'S RULE 56.1 STATEMENT

### A.   The Court Should Strike the Statements of Non-Material Facts

Local Rule 56.1 requires a "***short and concise*** statement . . . of the ***material facts*** as to

which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a) (emphasis

added).  Ignoring Rule 56.1's requirements, AP's statement is 359 paragraphs long and includes

hundreds of statements that have no bearing on the legal issues before the Court.  AP's statement

describes its newsgathering operations, technology to track AP articles, the procedural history of

this case, foreign copyright actions against different legal entities under different laws, and

awards won by the AP and its reporters for unrelated matters.   For example, AP devotes over a

page to general information about AP's organization generally, which has nothing to do with

AP's direct copyright infringement claim that it has presented to the Court:

> 10.     Currently, the AP is in 116 countries.  In the United States, the AP is the only news organization with a journalist staffing every statehouse.  Many of AP's reporters and editors are experts in their fields, and brings years of accumulated experience to a story. Curley Decl. ¶ 5.

> 11.     All told, AP employs and protects approximately 2,300 reporters and editors on its staff.  Cross Decl. ¶ 4.

> 12.     In recent years, the AP has expanded its worldwide presence by opening new bureaus and investing millions of dollars to upgrade its communications network.  AP routinely incurs high expenses sending journalists to report on breaking news stories in remote locations, an effort that may involve hiring aircraft, leasing satellite equipment, and evacuating ill or wounded staffers. Curley Decl. ¶ 6; Cross Decl. ¶ 4, Ex. 32.

> 13.     The AP and its wire service peers are often the only sources for timely, high-quality, on-the-ground reporting for news as it breaks around the world. AP's reporting from around the world is increasingly used by many major news organizations to inform their readership and replace their own expensive international or local bureaus.  Curley Decl. ¶ 7.

> 14.     More than 30 AP journalists and photographers have lost their lives in the line of duty since AP was established.  In recent years alone, 19 AP journalists

have been incarcerated or otherwise detained, and at least 23 have been harassed, intimidated, or beaten while gathering the news.  Curley Decl. ¶ 8.

15.      The AP's newsgathering activities require it, often at great expense, to protect its journalists who have been detained or imprisoned in other countries and to provide security for its journalists stationed in conflict zones.  This investment includes providing helmets and flak jackets to correspondents in war-torn areas, purchasing armored vehicles, and employing security guards.  AP also makes a heavy investment in freedom of information, filing hundreds of information requests every year under freedom of information laws in the United States and other nations and often spending heavily to back them up with legal action.  Curley Decl. ¶ 10.

The size, quality, and investments in AP's business are irrelevant to any claims or defenses in this action and do not constitute "material facts" within the meaning of Rule 56.1.  *See, e.g.*, *L-3 Commc'ns Corp. v. OSI Sys., Inc.*, No. 02-cv-9144 (PAC), 2006 WL 988143, at *6 (S.D.N.Y. Apr. 13, 2006) ("Evidence regarding [wealth] is clearly irrelevant, and its inclusion would be unfairly prejudicial.") (internal citation omitted).[13]

## B.    The Court Should Strike the Statements Based on Inadmissible Materials

Local Rule 56.1 further requires that "[e]ach statement by the movant or the opponent 'must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e).'"  *LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortg. Lending, Inc.*, No. 04-cv-5452 (PKL), 2007 WL 2324052, at *6 (S.D.N.Y. Aug. 13, 2007) (quoting Local Rule 56.1(d)).  It is appropriate for the Court to strike material within a 56.1 statement that does not comply with renumbered Rule 56(e) (now Rule 56(c)(2)): "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").  *Id.*

---

[13] As referenced in Meltwater's Counterstatement, numerous other of AP's 56.1 statements are not material to the claims and defenses of this action including: 1-5, 7-26, 30-31, 34, 37, 39-40, 42-85, 96-97, 100-101, 110, 122-126, 141-142, 146-152, 163-164, 182-187, 190, 192-196, 241-243, 249-255, 260-265, 272-275, 280-281, 294-301, 314-331, 314-335, 339-359.

As explained above, much of the material in and attached to the declarations submitted by AP would not be admissible into evidence.  Thus, the Court should strike the statements in AP's 56.1 Statement that rely upon such inadmissible materials.  Meltwater's counterstatement sets forth specific evidentiary objections in response to AP's statements.

### C.   The Court Should Strike the Statements and Documents Regarding Matters Prior to 2009

A party that fails to produce requested information in discovery is precluded from using that information "on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1).  The rule is designed to prevent gamesmanship and encourage full and fair discovery before trial.  *Nosal v. Granite Park LLC*, 269 F.R.D. 284, 289 (S.D.N.Y. 2010).

In responding to Meltwater's document requests, AP unilaterally imposed a date restriction of January 1, 2009.  Klausner Decl. Ex. 20 at ¶ 11.  Except for a sprinkling of documents that it presumably thought helped its case, AP interposed that objection.  Yet, AP's 56.1 statement contains numerous statements concerning matters that took place prior to January 1, 2009.  For example, AP's Rule 56.1 Statement ¶ 39 claims that "[a]s of 2005, AP began focusing on strategies to curb unauthorized use of its content by unlicensed digital aggregators, portals, and search engines."  Similarly, Paragraph  59 alleges that "[i]n 2007, AP began developing plans for a 'digital cooperative."  AP also makes claims concerning when it learned about Meltwater's existence and how it has competed against Meltwater in the marketplace that purportedly date before 2009.  *See* AP SUF ¶ 337 (describing AP knowledge of Meltwater in 2008); ¶¶ 305-306 (describing purported competition prior to 2009).  Because Meltwater did not obtain discovery on these topics due to AP's unilateral date restriction, AP should not be permitted to rely on such matters in support of its motion, and they should be stricken from AP's 56.1 Statement.  The following paragraphs in AP's 56.1 Statement refer to matters that took place prior to January 1, 2009:  38-39, 42-46, 59, 305-306, 333, 337.

**D.    The Court Should Strike the Statements that are Conclusory, Speculation, Conjecture, or Argumentative**

Courts routinely disregard 56.1 statements containing "'conclusory allegations, speculation or conjecture'" and making "legal argument more properly included in [the party's] Memorandum of Law …."  *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (citation omitted); *see also Rodriguez v. Schneider*, No. 95-cv-4083 (RPP), 1999 WL 459813, at *1 n.3  (S.D.N.Y. June 29, 1999) ("Rule 56.1 statements are not argument. They should contain factual assertions, with citation to the record.  They should not contain conclusions, and they should be neither the source nor the result of "cut-and-paste" efforts with the memorandum of law.  A rule 56.1 statement that contains the same turns of phrase, if not the identical whole paragraphs, as the memorandum of law is improper."), *aff'd*, 56 Fed. Appx. 27 (2d Cir. 2003).

AP's Statement is full of such improper statements.  For example, AP's description of the robots exclusion protocol ("robots.txt") is pure advocacy:

> 103.    First, robots.txt instructions do not create a physical or technological barrier to scraping content from a website.  A crawler can simply choose to ignore the robots.txt instructions and scrape the content regardless.  Jones Decl. ¶ 45; *see also* McNamara Decl. ¶ 58, Ex. 3 at 203:5-16.

> 104.    Second, terms of use allow a publisher to convey licensing terms in a far more specific and nuanced fashion than robots.txt, and the microformats and RightsML expression language provide more specific copyright ownership information.  Jones Decl. ¶ 46.

> 105.    Third, AP's members and other licensees — not AP — are the primary publishers of its content on the Internet.  Robots.txt instructions can only restrict access to either an entire website or to content that is segregated in certain directories or files on a website's identified subdomain.  Jones Decl. ¶ 47.

As demonstrated by the ordinal organization into discrete arguments ("first, second, third") these paragraphs are arguments about what the cited materials mean, not statements of material facts that are not in dispute.  The following paragraphs contain legal arguments rather than factual

contentions and should be stricken: 16, 25, 78-79, 81, 83, 84, 102-107, 146-152, 168, 171, 182, 197-199, 209-228, 230, 248, 318-327, 329-331.

### E.     The Court Should Strike the Statements that are Not Supported by the Cited Evidence

Local Rule 56. 1 statements must be disregarded to the extent they are not supported by the cited evidence.  *LaSalle Bank*, 2007 WL 2324052, at *6.  As reflected in detail in Meltwater's response to AP's statement, many of AP's assertions are not supported, and therefore should be stricken.

## CONCLUSION

For the foregoing reasons, Meltwater respectfully requests that the Court issue an order (i) striking the McNamara Declaration; (ii) striking the improper statements in the Cross, Curley, Jones, Kent, and Rizzo Declarations, and AP's 56.1 statement; and (iii) striking the inadmissible exhibits attached to the declarations submitted by AP.

Dated:  December 14, 2012          Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  _____

TONIA OUELLETTE KLAUSNER
BRIAN M. WILLEN
CATHERINE GREALIS
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone:  (212) 497-7700

DAVID H. KRAMER (admitted *pro hac vice*)
650 Page Mill Road
Palo Alto, California 94304
Telephone:  (650) 493-9300

*Attorneys for the Defendants*