# Exhibit 6

Execution Version

# 2010 CURRENT NEWS LICENSE AGREEMENT

THIS 2010 CURRENT NEWS LICENSE AGREEMENT (this "**Agreement**") dated as of January 1, 2010 (the "**Effective Date**"), is made in New York, New York, by and between THE ASSOCIATED PRESS ("**AP**"), a New York not for profit corporation, with offices at 450 W. 33rd Street, New York, New York, 10001, and YAHOO! INC. ("**SUBSCRIBER**"), a Delaware corporation with offices at 701 First Avenue, Sunnyvale, California 94089.

## W I T N E S S E T H

WHEREAS, SUBSCRIBER and AP's wholly-owned subsidiary, Press Association, Inc., previously entered into that certain 2006 Current News License Agreement dated as of June 1, 2006, as amended by the First Amendment to the 2006 Current News License Agreement, executed by both parties on or before April 13, 2007, the Second Amendment to the 2006 Current News License Agreement, dated as of August 1, 2007, the Third Amendment 2006 Current News License Agreement, dated as of August 29, 2007, and the Fourth Amendment to the 2006 Current News License Agreement, dated as of October 27, 2009 (collectively, the "**Prior Agreement**"); and

WHEREAS, SUBSCRIBER and AP mutually desire to replace and supersede the Prior Agreement to reflect new business terms and conditions applicable to the Services.

NOW THEREFORE, in consideration of the premises and mutual agreements set forth herein, the parties intending to be legally bound, agree as follows:

## I.  Grant of License

A.  Subject to the terms and conditions of this Agreement (including the Attachments), AP hereby grants to SUBSCRIBER and SUBSCRIBER's Affiliates (as defined further below in this Section I(A)), a non-exclusive, worldwide license to electronically redistribute, display and market the Service as described in **Attachment A**, solely on the System (including the Syndication Services accessed by Users via the System (each as further described in Section IV of **Attachment B**)). This grant is to market and distribute information supplied on the Service only to individuals (each, a "**User**") who access the System. AP reserves to itself the exclusive right to permit such use by, and SUBSCRIBER shall be prohibited from knowingly soliciting news organizations to access the Service for purposes other than personal, non-commercial use. For purposes of this Agreement, the term "**news organization**" shall include wire services, including The Associated Press, United Press International, Reuters, Agence France Presse, the Drudge Report, its and their employees, subsidiaries and affiliates; and any other person or entity engaged in whole or in part in the business of publication or broadcasting of news and information principally to Users (examples include but are not limited to, the New York Times, the Washington Post, WABC-TV, KNBC-TV, CNN, MSN.com, WINS radio, or KCRW radio). This license permits Users to download and print portions of the Service available on the System for personal, non-commercial use only. AP will determine, in its sole discretion, the editorial content of the Service. For purposes of this Agreement, the term (i) "**Affiliate**" means, in respect of a party, any company or other business entity that, during the Term, is controlled by, controlling or under the common control of that party; and in the case of

Attorneys Eyes Only

AP0000001

Yahoo! the definition of Affiliate shall include Yahoo! Japan Corporation, Alibaba.com Corporation and Seven Network Limited; for the purposes of the definition of "Affiliate", "**control**" shall mean the direct or indirect power to direct or cause the direction of the management and policies of a company or other business entity, whether through ownership of 50% or more of the voting interest, by contract, or otherwise (and "controlling" and "controlled" shall be construed accordingly). SUBSCRIBER shall ensure that all of its Affiliates exercising rights under this Agreement comply with the provisions of this Agreement. In the event that an Affiliate, through a stock or asset sale or otherwise, ceases to remain under control of SUBSCRIBER, such entity shall cease being an "Affiliate" for the purposes of this Agreement and its rights under this Agreement shall terminate. In addition, SUBSCRIBER is prohibited from distributing the service to third party City Guides or Homesteading Sites. For the purposes of this Agreement, a "**City Guide**" shall mean a third party online service that primarily provides local content directed at a particular city and a "**Homesteading Site**" shall mean a third party online site that provides individual users with tools to create his or her own website, and hosts and organizes such websites.

B. AP grants a non-exclusive license to use, reproduce and display AP's brand features in connection with the presentation of the Service in the System and in marketing and promoting the Service on the System, in accordance with Section IV herein.

C. AP hereby grants to SUBSCRIBER and the Affiliates a non-exclusive limited license to create derivative works from the contents of the Service by (i) translating the Service from text to audio content (such work being an "**Audio Translation**") solely for the purposes of distributing and playing back the Audio Translation through SUBSCRIBER's Voice Portal on the System, (ii) translating components of the Service from one language to another (such work being a "**Translation**"), excluding translations from or into the German language, (iii) editing content included in the service for length and style, (iv) creating Teaser Content (as defined below), and (v) standard formatting of content and cropping of photos or minor lighting adjustments; provided, however, that, in the case of clauses (i) through (v) above, SUBSCRIBER shall not alter the editorial content or substance of the Service, or any component thereof. For the purposes of this Agreement, (i) "**Voice Portal**" shall mean a phone accessible application that allows Users of SUBSCRIBER's System to retrieve and listen to content from the Service through their telephones, and (ii) "**Teaser Content**" shall mean AP headlines, snippets and thumbnail photos, which, in the case of distribution of Teaser Content via the Syndication Services (as described in Section IV of **Attachment B**) accessible by Users via the System, such Teaser Content from each story shall not exceed an average of 40 words per story. SUBSCRIBER shall add an audio attribution stating 'news by AP' immediately preceding or following any content distributed through SUBSCRIBER's Voice Portal that is derived from the Service as provided herein.

D. Data-only items pertaining to financial markets, indexes and exchanges, including without limitation, tables and quotes for futures, indexes, currencies and stocks ("**Data-Only Items**"), and headlines containing solely Data-Only Items, included in the AP Financial News feed listed in **Attachment A** shall not be made available in the System by SUBSCRIBER. For purposes of this section, "Data-Only Items" shall also include financial data elements extracted from the text stories contained in such AP Financial News service. These restrictions, however, do not apply to the use of text stories, even if such text stories reference specific financial data.

Page 2

Attorneys Eyes Only

AP0000002

Execution Version

System, or otherwise, shall be owned solely by AP. To the extent that SUBSCRIBER prepares any Derivative Works of the Service as provided herein (including the Audio Translations, Translations, Teaser Content or other output of rights exercised under Section 1(C)), or creates any content containing the news, information, or intelligence from the Service, SUBSCRIBER will not do so in any manner prejudicial to AP or the Service. For the purposes of this Agreement, "**Derivative Work**" shall have the same definition given to that term in 17 U.S.C. § 101 and shall include any translation into another language. For clarification, as between AP and SUBSCRIBER, SUBSCRIBER shall own all pages of the System containing the Service or Derivative Works of the Service, but such ownership rights do not cover the Service or Derivative Works of the Service or in the text, video, audio images or graphics thereof or the facts and news contained in the Service.

B.  [Intentionally omitted.]

C.  SUBSCRIBER agrees that all promotion and advertising of its services in which there is reference to the Service, AP or any of its Affiliates shall be subject to the review and written approval of AP before release.

D.  Subject to SUBSCRIBER's payment obligations therefore and adherence to any applicable restrictions set forth in this Agreement (including the Attachments), SUBSCRIBER shall have the right, but not the obligation, to keep AP content that it publishes on the System in the ordinary course of SUBSCRIBER's editorial operations for the duration of the Term, provided that (i) although AP content may be separately searchable via a general search function, AP content may not be provided to Users in a branded "archive" of AP content, and (ii) AP photos may be archived for no longer than 30 days after the date of first publication.

E.  SUBSCRIBER shall, upon receipt from AP of a "kill," "elimination," "withheld" or "correction" directive, purge and, if applicable, replace affected material and notify Users of the changed status of the affected material. Any materials subject to a "corrective" from AP shall be prominently noted as subject to a corrective (with instructions as to access to the applicable corrective article) or shall be linked electronically to the corrective article itself when Users access material subject to a corrective. SUBSCRIBER may not use any material from the Service in the System that is slugged or identified as "advisory", "on-line out" or "not for publication." SUBSCRIBER acknowledges that certain elements of the Service may have restrictions, prohibitions or other limitations, as reasonably communicated to SUBSCRIBER by AP in each instance (included in metadata contained in the Service), which may require additional permission from AP or a third party for use in the System. Notwithstanding the foregoing, any use of such elements of the Service without such additional permission where SUBSCRIBER is not first made aware of the need for additional permissions will not be a breach of this Agreement, provided that SUBSCRIBER complies with reasonable notice to take down such elements of the Service from AP.

F.  Should SUBSCRIBER expand or modify the System in a manner that materially changes the method or medium by which Service materials are distributed, use of such materials in such modified System shall be subject to AP's written approval, not to be unreasonably withheld.

Attorneys Eyes Only

AP0000010

Execution Version

## XI. Confidentiality

A.  During the Term and for three years after termination, AP and SUBSCRIBER shall maintain in confidence and not disclose to third parties, with the exception of either party's assigned accountants or lawyers, without the other's prior written consent, the information concerning payments outlined in Section V of this Agreement or any other information labeled "Confidential" except for normal reporting to each party's parent corporation, if any. AP and SUBSCRIBER shall not disclose to unaffiliated third parties the specific terms of this Agreement.

B.  Notwithstanding the restrictions set forth in this Section XI, neither party hereto shall have any duty of confidentiality with respect to information or materials disclosed to it by the other party to the extent such information:

   (i)   is or comes into the public domain through no fault of the receiving party hereunder;

   (ii)  is legally obtained from third parties without binder of secrecy;

   (iii) was previously known to the party to whom such information is disclosed without binder of secrecy or is independently developed by such party without access to the confidential information of the disclosing party; or

   (iv)  is required to be disclosed by valid legal process.

## XII. General Provisions

A.  Neither party will be liable to the other for any delay or default in performing its respective obligations under this Agreement due to causes beyond its reasonable control. So long as any such failure continues, the party affected by conditions beyond its control will keep the other party fully informed at all times concerning the matters causing such delay or default and the prospects for their termination.

B.  Nothing in this Agreement shall be construed to constitute or appoint either party as the agent or representative of the other party for any purpose whatsoever, or to grant to either party any rights or authority to assume or create any obligation or responsibility, express or implied, for or on behalf of or in the name of the other, or to bind the other in any way or manner whatsoever.

C.  All notices required by this Agreement shall be sent in writing (by certified or registered mail or overnight courier) to AP and SUBSCRIBER at the following addresses:

If to AP:

The Associated Press
450 West 33rd Street
New York, New York 10001
Attention: Senior Vice President, Global New Media & U.S./Americas Media

Attorneys Eyes Only

AP0000014

Execution Version

IN WITNESS WHEREOF, authorized officers of the parties hereto have executed this Agreement as of the Effective Date.

YAHOO! INC.

By: _____

Name: HILARY SCHNEIDER
Title: EVP YAHOO!, INC.

THE ASSOCIATED PRESS

By: _____

Name: SUE CROSS
Title: SENIOR VICE PRESIDENT

Signature Page

Attorneys Eyes Only

AP0000017