Exhibit 22

## AP DIGITAL CURRENT NEWS LICENSE AGGREGATOR/RESELLER AGREEMENT

This CURRENT NEWS LICENSE AGGREGATOR/RESELLER AGREEMENT (this "Agreement") dated as of November 21, 2005, and made in New York, New York, between PRESS ASSOCIATION, INC. ("PA"), a wholly owned subsidiary of The Associated Press ("AP"), a New York corporation with offices at 450 West 33rd Street, New York, New York 10001, and InfoDesk, Inc. ("SUBSCRIBER"), a Delaware corporation with offices at 660 White Plains Road, Suite 300, Tarrytown, New York 10591.

**Section 1.**   Definitions. The following terms shall have the following respective meanings for all purposes of this Agreement, such meanings to be equally applicable to the singular and plural forms thereof:

1.1.   "AP Member" shall mean a member or associate member of AP, or any person that controls, is controlled by or is under common control with any such member or associate member, or any affiliate or related party to any member or associate member of AP.

1.2.   "Approved Customer" shall mean each entity or person either receiving Delivery or Displaying the Service via SUBSCRIBER's Interactive Service under the terms of an executed Approved Customer Addendum. PA hereby agrees that the entities set forth on Schedule A attached hereto that currently receive Delivery of the Service (as defined in each entities' agreement with PA) via SUBSCRIBER's Interactive Service are Approved Customers and SUBSCRIBER may continue to provide Delivery of the Service provided, however, that each such Approved Customer listed on Schedule A maintains a separate license with PA for the rights to the Service Delivered by SUBSCRIBER.

1.3.   "Approved Customer Addendum" ("ACA") shall mean an addendum to the Agreement, executed in advance upon mutual agreement of PA and SUBSCRIBER, which shall either authorize SUBSCRIBER to Deliver the Service via SUBSCRIBER's Interactive Service to an entity or person currently under a license with AP to display the Service, or set forth the terms by which SUBSCRIBER may Display the Service or portion of the Service to an entity or person via SUBSCRIBER's Interactive Service, a copy standard of which is attached hereto as Schedule B. Upon execution by the parties, each ACA will be incorporated herein, provided, however, that should the terms of the ACA conflict with the terms of the Agreement, the terms of the ACA shall control.

1.4.   "Blended AP Feeds" shall mean feeds or content categories that SUBSCRIBER provides to Approved Customers that consist of fifty percent (50%) or less, at any one time, of content from the Service.

1.5.   "Delivery" shall mean SUBSCRIBER's right to transmit the Service to an Approved Customer, for display under the terms of a preexisting agreement between AP and Approved Customer, via SUBSCRIBER's Interactive Service

1.6.   "Display" shall mean SUBSCRIBER's right to transmit and display the Service, via SUBSCRIBER's Interactive Service, to an Approved Customer, under the terms of an ACA.

1.7.   "Page View" shall mean the delivery of a single Web Document containing any part of the Service to a User through a public facing website.

1.8.   "Permitted Users" shall mean those individual employees of an Approved Customer to whom SUBSCRIBER provides access to the Service via an Approved Customer's password protected system for their individual internal use.

1.9.   "Pure AP Feeds" shall mean feeds or content categories that SUBSCRIBER provides to Approved Customers that consist exclusively of content from the Service.

1.10.   "Service" shall mean the selection of information distributed by AP and PA, as such services are modified by AP or PA from time to time, as set forth in each ACA. AP and PA reserve total editorial freedom to control the substance and form of the Service.

1.11.   "Standard Royalty Rate" shall mean   REDACTED

1.12.   "SUBSCRIBER'S Interactive Service" shall mean SUBSCRIBER's electronic aggregation and/or delivery system located as more fully describer on Schedule C, attached hereto.

Attorneys Eyes Only

1.13. "Web Document" shall mean a computer file prepared for delivery to an Internet browser, including, without limitation, ASCII documents, Hypertext Markup Language ("HTML") documents, Active Server Pages ("ASP"), Extendable Markup Language ("XML") documents and forms and any technology performing similar functions existing now, or developed in the future and all associated graphics, files or other ancillary elements of such Web Document.

1.14. "Unique Visitor" shall be defined as each unique IP address used by a visitor to SUBSCRIBER'S Interactive Service as measured by Media Metrix or any other firm providing similar service chosen by PA, in its sole discretion, to measure Unique Visitors.

1.15. "User" shall mean anyone who accesses SUBSCRIBER'S Interactive Service.

**Section 2.** Grant and Limited Scope of License.     PA hereby grants to SUBSCRIBER a non-exclusive, non-transferable limited license solely to Deliver or publicly Display and perform the Service to Approved Customers upon the terms and conditions contained in this Agreement.  PA grants no rights to SUBSCRIBER to translate, modify, prepare derivative works of, or otherwise alter or edit the Service.  PA shall retain all right, title and interest in and to the contents of the Service, including the contents of any translation of the Service that is expressly permitted by a provision of this Agreement, including, without limitation, all of its trademark, copyrights and other intellectual property rights.

**Section 3.** Restrictions.

3.1. SUBSCRIBER shall not alter the editorial content or substance of the Service. Notwithstanding the above, SUBSCRIBER may add metadata to Service for the purpose of enhancing the Delivery, Display, categorization and searchability of the Service within SUBSCRIBER's Interactive Service.

3.2. SUBSCRIBER is prohibited from (i) delivering, providing or sublicensing the Service to; (ii) co-branding pages of SUBSCRIBER'S Interactive Service containing the Service with; or (iii) permitting framing of pages of SUBSCRIBER'S Interactive Service containing the Service by, any other person, entity, third party or affiliate, including any other Internet, interactive or online service unless SUBSCRIBER and PA execute an ACA in advance of each instance of delivering, sublicensing, co-branding, framing or other distribution of the Service or SUBSCRIBER provides PA with prior notice of a trial of the Service to a prospective Approved Customer, which trial shall not exceed thirty (30) days.

3.3. No Approved Customer shall be permitted to receive the Service unless and until such Approved Customer shall have entered into and executed the appropriate agreement with SUBSCRIBER, substantially in the form attached hereto as Schedule D. Notwithstanding the above, SUBSCRIBER may provide thirty (30) day trials of the Service as set forth in subparagraph 3.2 above.

3.4. SUBSCRIBER is prohibited from providing to an Approved Customer the Service or any portions of the Service that is older than fourteen (14) days unless a longer archiving period is provided for in an ACA. Notwithstanding the above, SUBSCRIBER may itself store the Service on its own internal system for up to ninety (90) days.

3.5. Upon receipt from PA or AP of a "kill," "elimination," "withheld," or "correction" directive, SUBSCRIBER will promptly process such directive, and, if applicable, replace affected material.

3.6. SUBSCRIBER shall not display any material from the Service which is slugged or otherwise identified as "on-line out" or "not for publication."

3.7. SUBSCRIBER is prohibited from Displaying, Delivering, providing or sublicensing the Service to AP Members, unless SUBSCRIBER obtains PA's prior written permission.

**Section 4.** PA's Representations, Warranties and Covenants.   The Service shall be delivered to SUBSCRIBER's computer center via the Internet. SUBSCRIBER shall be solely responsible for obtaining, installing and maintaining, at SUBSCRIBER's sole expense, such equipment and/or Internet delivery services as may be required to make use of the Service and to distribute the Service to Users as permitted by this Agreement.  PA shall retain all right, title and interest in and to any and all equipment provided by PA to facilitate delivery of the Service (collectively, "Equipment"), and reserves the right to peacefully repossess the Equipment at any time upon termination of the Agreement or suspension of the Service.  SUBSCRIBER shall provide PA with reasonable access to the installation site to perform installation, removal or maintenance services on the Equipment.

Attorneys Eyes Only

AP0001743

**Section 5.**  **SUBSCRIBER's Representations and Warranties.**   SUBSCRIBER represents and warrants that:

5.1. SUBSCRIBER shall strictly comply with all requirements contained in Schedule E; and

5.2. SUBSCRIBER shall not interfere with any copyright protection mechanism or copyright management information system, including any watermark, employed by PA.

**Section 6.**  **Payment.**   SUBSCRIBER shall pay PA the following sums:

6.1. ACA Fees ("ACA Fee") and/or Royalties ("Royalty") pursuant to the payment amount terms of any ACA, due and payable within fifteen (15) days after SUBSCRIBER collects payment from Approved Customer.

6.2. By the 30th day after the close of each month, SUBSCRIBER shall provide PA with a report detailing the previous month's Page Views for each Approved Customer. Such monthly report shall include, for the previous month, for each Approved Customer, the total number of Page Views, the total number of Page Views for each Pure AP Feed the total number of Page Views for each Blended AP Feed and any other relevant information reasonably requested by PA for such report.

6.3. Any payment of the ACA Fee or Royalty that is late shall be subject to an interest charge of the lower of one percent per month or the maximum rate permitted by law.

6.4. Notwithstanding anything to the contrary, PA reserves the right to immediately terminate any ACA in the event payment is not made within ninety (90) days after the end of the month in which ACA Fee or Royalty is earned.

6.5. All payments of the ACA Fee and/or Royalty shall be exclusive of taxes required to be charged to SUBSCRIBER. SUBSCRIBER shall be responsible for the payment of all taxes incidental to the payment of the Fee and/or the Royalty other than taxes that are based upon PA's net income.

6.6. On each anniversary of the date of this Agreement, the ACA Fee and the Royalty shall be increased by the increase in the Consumer Price Index for All Urban Consumers, New York – Northern New Jersey area (all items, not seasonally adjusted, as published by the Bureau of Labor Statistics) over the intervening twelve (12) month period. Notice of such increases shall be given to SUBSCRIBER by PA within 45 days of such increases taking effect. Any failure of PA to so notify shall not, in any way, be considered a waiver of such increase in the ACA Fee.

6.7. SUBSCRIBER shall maintain books and records accurately reflecting all matters affecting Royalty due to PA for at least one year. PA, by its duly authorized representatives, shall have the right, at reasonable times and upon reasonable notice to SUBSCRIBER, to inspect and audit such books and records to verify the accuracy of any statement. If any inspection shall disclose any error of whatever amount, the parties shall promptly adjust the same, and if such inspection discloses a deficiency of five percent or more, SUBSCRIBER shall pay PA all of PA's out-of-pocket costs of conducting such inspection.

**Section 7.**  **Term and Termination.**

7.1. This Agreement shall take effect on November 21, 2005, and shall continue for three (3) years (the "Term"). The Term shall automatically renew for additional terms of one (1) year, unless either party delivers to the other party written notice of termination not less than sixty (60) days prior to the end of the then-current Term. Under no circumstances shall SUBSCRIBER's failure to use the Service, or SUBSCIBER's inability to integrate the Service with SUBSCRIBER's equipment or services effect the start of the Term.

7.2. Upon any material breach or material default of this Agreement by either party hereto, the non-breaching party may give written notice of such breach or default to the breaching party. Unless such breach or default is cured within thirty (30) days of such notice (or immediately for any violation of the license granted in Section 2, above), without limiting any other remedy available at law or equity to the non-breaching party consistent with the terms of this Agreement, the non-breaching party may terminate this Agreement by delivery of a written notice of termination at any time thereafter before such breach or default has been cured. If PA terminates this Agreement under this Section 7.2, SUBSCRIBER shall pay to PA all monthly Fees and estimated Royalties that would have been due and owing had this Agreement been in effect until the end of the then-current term, minus the actual cost of delivering the service, as reasonably estimated by PA. SUBSCRIBER acknowledges that in the event of PA's termination under this

Attorneys Eyes Only

Section, the amounts due under this Section are a reasonable estimate of PA's actual loss, which is difficult to estimate precisely. SUBSCRIBER further acknowledges that these amounts will be due as liquidated damages in lieu of performance and not as a penalty.

7.3. Upon ninety (90) days' written notice to SUBSCRIBER, PA may terminate this Agreement if PA determines that it will (i) not offer a service substantially similar to the Service or (ii) cease providing information services to any similarly situated person. Furthermore, upon forty-five (45) days' written notice to SUBSCRIBER, PA may terminate this Agreement with respect to any components of the Service if PA determines that it will not offer those components to any similarly situated person. However, nothing shall restrict PA from providing any information service to any AP Member, for any purpose.

7.4. Either party may terminate this Agreement effective upon written notice stating its intention to terminate in the event of any of the following: (a) the other party ceases to function as a going concern or to conduct operations in the normal course of business, (b) the other party files a petition under any state or federal bankruptcy or insolvency law or for the appointment of a receiver, (c) the other party has a petition filed against it under any state or federal bankruptcy or insolvency law which petition has not been dismissed or set aside within thirty (30) days of its filing, (d) the other party ceases to pay its debts as they fall due or becomes insolvent or makes a general assignment for the benefit of its creditors, or (e) if the business or property of the other party shall come into the possession of its creditors or of any governmental agency or of a receiver.

7.5. In event of a termination pursuant to this Section 7, neither party shall be liable to the other for any damages by reason of such termination. Notwithstanding the foregoing, SUBSCRIBER shall remain liable to PA for any amount due but unpaid to PA up to the date of termination. Upon any termination of this Agreement, SUBSCRIBER will immediately cease all use of any information from the Service, and shall remove, or cause to be removed, all such information from SUBSCRIBER'S Interactive Service and from any permitted databases or archives were such information may be stored, filed or otherwise maintained.

**Section 8.** Limitation of Liability.

8.1. PA does not guarantee the sequence, accuracy or completeness of any information in the Service and shall not be held liable in any way to SUBSCRIBER, its users, any known or unknown third parties or to any other person who may use such information or to whom such information may be furnished, or to any other person whatsoever, for any delays, inaccuracies, errors or omissions therefrom or in the transmission or delivery of all or any part thereof or for any damage arising therefrom or occasioned thereby.

8.2. IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY INDIRECT, CONSEQUENTIAL, PUNITIVE, SPECIAL, OR ANY OTHER DAMAGES ARISING FROM OR RELATED TO THE SERVICE, REGARDLESS OF THE FORM OF ACTION WHETHER CONTRACT OR TORT.

**Section 9.** Warranty Disclaimer.   EXCEPT AS EXPRESSLY STATED IN THIS AGREEMENT, NEITHER PARTY MAKES ANY WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PURPOSE.

**Section 10.** General Provisions.

10.1. Neither PA nor SUBSCRIBER will be liable to the other party for any delay or default in performing their respective obligations under this Agreement due to causes beyond its reasonable control. So long as any such failure continues, the party unable to perform their obligations will keep the other party informed at all times concerning the matters causing such delay or default and the prospects for their termination.

10.2. Nothing in this Agreement shall be construed to constitute or appoint either party as the agent or representative of the other party for any purpose whatsoever, or to grant either party any rights or authority to assume or create any obligation or responsibility, whether express or implied, for or on behalf of or in the name of the other, or to bind the other in any way or manner whatsoever.

10.3. All notices required by this Agreement shall be sent in writing (by certified or registered mail, telex, overnight courier, facsimile or telegram) to PA and SUBSCRIBER at the addresses written above. All

Attorneys Eyes Only

AP0001745

notices shall be effective upon receipt. Either party may from time to time change its address set forth above by notifying the other party of its new address in writing.

10.4.  No forbearance by either party in enforcing any of the provisions of this Agreement and no course of dealing between the parties shall operate to prejudice either party's rights to enforce such provisions or operate as a waiver of any of either party's rights hereunder.

10.5.  This Agreement shall be subject to all applicable present and future federal, state and local laws and regulations of the Federal Communications Commission and any other federal or state agency. Neither party shall be liable to the other for any failure to perform its obligations hereunder, except for payment of charges already owing, which results directly from such laws or regulations.

10.6.  SUBSCRIBER agrees that all marketing, promotion and advertising of SUBSCRIBER'S Interactive Service or any of its other services, or any press releases in which there is reference to the Service, AP, PA or any servicemark or trademark of AP or PA, shall be subject to the prior written approval of PA before release.

10.7.  This Agreement shall be governed by and construed in accordance with the laws of the District of Columbia, without regard to the choice of law principles thereof. Each party consents to the personal jurisdiction and venue of the Federal courts sitting in The District of Columbia.

10.8.  Any attempted Assignment by SUBSCRIBER without the express prior written consent of PA shall be void and have no effect on the rights or obligations of either party. In the event PA grants SUBSCRIBER written consent to a proposed Assignment of any of SUBSCRIBER's rights or obligations hereunder, such Assignment shall be binding upon SUBSCRIBER'S successors and/or assigns.

10.9.  The provisions of this Agreement, including any schedules, exhibits or attachments, and any written supplemental agreements hereto signed as of the date hereof constitute the entire agreement between the parties relating to the transactions contemplated herein and merge and supersede all prior discussions, agreements, and understandings of every kind and nature between them. No oral modifications or additions hereto shall be binding on either party.

**IN WITNESS WHEREOF**, each of the parties hereto has caused this Agreement to be executed on its behalf by its duly authorized representative as of the date first written above.


**Press Association, Inc.**                    **InfoDesk, Inc.**


By: _____                 By: _____

Name:  Jane Seagrave                           Name:  Sterling Stites

Title:  Vice President of New Media Markets    Title:  President and Chief Executive Officer

Date:  12/07/05                                Date:  November 21, 2005

Attorneys Eyes Only

AP0001746

Schedule A

America Online
Asahi Shimbun (Washington Office)
Asahi Shimbun (New York Office)
Central Intelligence Agency
Copley News Service
Daily Telegraph
Department of Home Land Security (TSOC)
Mayor Bloomberg's Office (City of NY)
National Security Council/White House Situation Room
Nikkei - Washington Bureau
Public Strategies
The Mainichi Newspapers (New York Bureau)
The Mainichi Shimbun (Wahington Bureau)
Times Of London Financial Times Washington Bureau
United States Senate
United States Department of Agriculture
US Mission to the United Nations
Tokyo Chunichi Shimbun
World Picture News

Attorneys Eyes Only

AP0001747

Schedule B

<u>APROVED CUSTOMER ADDENDUM (ACA)</u>

APPROVED CUSTOMER ADDENDUM FOR [ ]

DATED [ ]

       APPROVED CUSTOMER ADDENDUM dated [    ], (the "ACA"), to the CURRENT NEWS LICENSE AGREGATOR/RESELLER AGREEMENT dated  November 21, 2005 , (the "Agreement"), between PRESS ASSOCIATION, INC. ("PA"), a wholly owned subsidiary of The Associated Press ("AP"), a New York corporation with offices at 450 West 33rd Street, New York,  New York and InfoDesk, Inc., ("SUBSCRIBER"), a Delaware corporation having a principal place of business at 660 White Plains Road, Suite 300, Tarrytown, New York 10591.

       WHEREAS, PA and SUBSCRIBER wish to enter into an ACA, pursuant to Paragraphs 1.2, 1.3, 3.2 and 6.1 of the Agreement for the rights to Deliver or Display portions of the Service to [XX] (the "Approved Customer").

NOW THEREFORE, the parties hereby agree as follows:

1.      All terms which are not defined herein shall have the same meaning as set forth in the Agreement.

2.      SUBSCRRIBER shall have the right to [ ] Deliver or [ ] Display to the Approved Customer's system the below listed portions of the Service.

     •
     •

      [If Delivery only, Note preexisting license with AP]

**[Paragraph 3 and 4 to be used only when SUBSCRIBER is sublicensing rights to Display the Service to an Approved Customer]**

3.      Description of Approved Customer's system:

4.      a. SUBSCRIBER shall pay the ACA Fee of [$ ] per month, which ACA Fee shall entitle SUBSCRIBER to display the Approved Service to [ ] Permitted Users.

      *or, for Web Site customers:…to display [##] Page Views (the "Royalty Threshold") of the Approved Service to the Approved Customer.*

      b. SUBSCRIBER shall pay the Standard Royalty *[or Royalty of [$ ]]* for every Page View of the Approved Service displayed to the Approved Customer in excess of the Royalty Threshold.

5.      This Addendum shall be effective as of [XX], have a term of [XX] years and shall survive termination of the Agreement.

Attorneys Eyes Only

AP0001748

IN WITNESS WHEREOF, the parties have caused this Addendum to be executed by their duly authorized representatives as of the date last below written.

**Press Association, Inc.**                          **InfoDesk, Inc.**


By: _____                By: _____
Name: _____                Name: _____
Title: _____                Title: _____
Date: _____                Date: _____

Attorneys Eyes Only

AP0001749

Schedule C – SUBSCRIBER's Interactive Service

**InfoDesk Interactive Service Overview**

InfoDesk is a provider of information and content distribution services to global corporations, the media and government agencies. InfoDesk provides a real-time, multimedia capable Delivery and Display solution that enables information buyers to receive, use, view, personalize and search publisher branded, internet harvested content as well as internal information in a federated manner.

InfoDesk's software products include applications for the real-time acquisition, input and processing of structured and unstructured information as well as a comprehensive range of end-user applications for Delivery and Display of information in real-time, as well as, personalizing, receiving, viewing, searching and integrating information into enterprises.

**InfoDesk Delivery Services**

### Real-Time Streaming Data Delivery

InfoDesk offers a real-time "socket based" streaming data delivery services, which meets the requirements and needs of specific customers who use the InfoDesk viewing tools or have developed real-time applications or need the reliability and performance that FTP delivery does not provide.

InfoDesk's software products include applications for the real-time acquisition, input and processing of structured and unstructured information as well as a comprehensive range of end-user applications for personalizing, receiving, viewing, searching and integrating information in real-time.

### DSDS "Digital Syndication Delivery System"

Automates Web publication of information delivered via DSDS and InfoCache and provides extensive stylistic control of the look and feel of published information through a library of editable extensible style language (XSL) style sheets.

### InfoFTP Delivery Service "FTP Service"

InfoDesk provides a dedicated FTP delivery service for customers that need to receive entitled content via a FTP push or pull service.

**InfoDesk Display Products**

### InfoViewer "Desktop Viewers"

Enables end-users to view, print and e-mail information. Provides desktop and e-mail alerts.

The InfoViewer streams real-time information from all of J&J's news properties. Users can search archived content and e-mail, print and export stories. InfoViewers are available in the following versions:  Web browser based; Active X plug in for Microsoft IE and a Win32 application.

### InfoPortal "User-Definable Portals"

InfoPortal offers customers a convenient, turnkey, hosted solution by providing end-users with the ability to customize their individual portal experience with up-to-the-minute news and information that enhances productivity and decision-making.

Customers can use InfoPortal to deliver information authored within their organizations as well as for receiving external information.

Attorneys Eyes Only

AP0001750

**InfoClient NewsWatch Portal "Shared View Portal"**

InfoClient is a secure, hosted, customer-branded and customized news website that provides information filtering and search capabilities. It is an ideal solution for organizations without large IT departments or that have not made large investments in Web publishing and content management technologies.   It enables end-users to view, print and e-mail information from a "shared view" news website.

**PortalCache and InfoCache "Content Caching Engine"**

Delivers information to Portal based Web sites and other applications and enables administrators to filter information to create customized streams.

**InfoPublisher and PageCreator "Web Publishing Tools"**

Provides authoring and editing capabilities and extensive editorial control over information delivered via InfoDesk to portals and websites.

**InfoNewsletter "Newsletter Creation Tool"**

Enables users to automatically create custom newsletters consisting of news articles, photographs, graphics and other media assets using InfoViewer.

**InfoSearch "90-Day Searchable Archive"**

Enables end-users to find information containing specified keywords and phrases in any filed document. Search supports Boolean operators such as "and," "or" and "not". Quick Search returns all matching information delivered during the previous 24 hours.

Using Advanced Search, users can search specified information sources and can further refine results to information containing specified values in the date, time industrial group, byline, company, stock ticker, location and story ID fields. Advanced Search enables users to save searches as Profiles and to search within the results of existing Profiles.

**InfoAlert "E-mail and Desktop Alerts"**

InfoAlert is a news alerting service that enables users to receive alerts of profiled information in real-time or at scheduled intervals.  Users with personalized access can configure InfoAlerts for information containing specified words or phrases and automatic e-mail delivery of headlines or full stories for information matching their personal information filters (Profiles).

Notifications can also be sent to any e-mail capable device including desktop computers, laptops, Blackberries, Pagers and PDA's.

Attorneys Eyes Only

AP0001751

Schedule D-A – SUBSCRIBER'S Subscriber Agreement

INFODESK INFORMATION DELIVERY AGREEMENT

This agreement (the "Agreement") is entered into as of _____ (the "Effective Date"), by and between InfoDesk, Inc. a Delaware corporation with offices at 660 White Plains Road, Suite 300, Tarrytown, New York 10591 ("InfoDesk") and _____ with offices located at _____ ("Subscriber"), each a "Party" and collectively the "Parties" to this Agreement.

Whereas, InfoDesk provides information delivery services and Subscriber wishes to receive the information set forth on Exhibit A, attached hereto and incorporated herein by reference, (the "Information") via InfoDesk's service.

Therefore, for good and valuable consideration, and in consideration of the mutual covenants and conditions herein set forth, and with the intent to be legally bound thereby, the Parties hereby agree as follows:

**Services.** After receiving a copy of this Agreement signed by and for Subscriber by its authorized representative, InfoDesk will provide the login information needed to access the Information using its delivery tools (the "Tools") and will provide the one-time services set forth on Exhibit A.

**Term.** The "Initial Term" of this agreement will run for one (1) year from date above and will be automatically renewed for additional one-year periods ("Extension Terms"). Either party may terminate this Agreement: (a) at the end of the Initial Term, by giving written notice to the other party no less than sixty (60) days before the end of the Initial Term. As used herein, the "Term" will mean the Initial Term and any extensions.

**Financial Arrangements.** Subscriber agrees to pay InfoDesk one-time and recurring service fees as set forth in Schedule A for services provided by InfoDesk hereunder. Customer agrees to pay one-time fees upon delivery and to pay recurring service fees in equal monthly installments prior to each month of service.

**No Warranties, Exclusion of Liability, Indemnity.** THE SERVICES PROVIDED HEREUNDER ARE PROVIDED "AS IS" AND WITHOUT ANY WARRANTY INCLUDING ANY WARRANTY EXPRESSED, IMPLIED OR STATUTORY INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. Subscriber acknowledges and agrees that in no event will InfoDesk be liable to Subscriber or any other party for lost profits, incidental or consequential damages or any other liability arising out of, resulting from, or connected with (i) InfoDesk's: performance, failure to perform under, or breach of this Agreement (even if InfoDesk has been advised of the possibility of such damages), whether asserted on the basis of contract, tort (including negligence or strict liability) or otherwise; or (ii) the Information. Subscriber will indemnify InfoDesk against all claims, liabilities and costs, including reasonable attorney fees, of defending any third party claim or suit arising out of the use or provision of the Services and Information provided hereunder.

**Notices.** All notices and requests in connection with this Agreement will be in writing, deemed given the day they are received and addressed as follows: if to InfoDesk, to Lynn Epstein at InfoDesk's address set forth above, or by telephone at 914-798-2422; and if to Subscriber, to _____.

**Governing Law / Jurisdiction.**
Agreement shall be construed in accordance with the laws of the state of New York, and the parties consent to jurisdiction and venue in the state and federal courts sitting in the state of New York.

In Witness whereof, the parties have entered this Agreement as of the Effective date written above.

For and on behalf of InfoDesk, Inc.                    For and on behalf of _____

Lynn Epstein, COO

_____                              _____

_____                              _____

Date: _____                                Date: _____

Page 11 of 37

Attorneys Eyes Only

PLEASE FAX AN EXECUTED COPY TO THIS AGREEMENT TO THE ATTENTION OF LYNN EPSTEIN 914-332-5944 AND MAIL TWO SIGNED ORIGINALS TO INFODESK.

INFODESK WILL RETURN ONE FULLY EXECUTED ORIGINAL TO SUBSCRIBER BY US MAIL.

Exhibit A

Fees; Information Services; and User and Billing Contact Information

This schedule may be amended by mutual agreement between the Parties.

**One-Time Services:** _____

**Display Tools:**

InfoViewers:        _____
InfoPortal:         _____
InfoClient:         _____
InfoPublisher:      _____
[Other]             _____

**Fees:**

One Time Fee: $ _____

Recurring Service Fees: $_____ per year

Monthly Portion of Recurring Service Fees: $_____

**Information Services:**

<u>Information Service</u>                     <u>Publisher</u>

**End-User Information:**

(Please include a billing contact only if different than the information provided for Subscriber in the "Notices" Provision.)

**Billing Contact:**

Name: _____        Phone: _____

Address: _____        _____

For and on behalf of InfoDesk, Inc.        For and on behalf of _____
Lynn Epstein, COO
                                           _____

_____        _____

Date: _____        Date: _____

Attorneys Eyes Only

AP0001753

Schedule D-B – SUBSCRIBER'S Subscriber and Service Agreement

INFODESK SUBSCRIBER AND SERVICES AGREEMENT

This agreement including Schedules A, B, C, D, E, F, G, H and I attached hereto and incorporated herein by reference (the "Agreement") is entered into as of this ____ day of _____ by and between InfoDesk, Inc, a Delaware corporation with offices at 660, Suite 300, White Plains Road, Tarrytown New York 10591 ("InfoDesk"), and _____. a _____ corporation with offices at _____ (the "Subscriber"), each a "Party" and collectively the "Parties" to the Agreement.

WHEREAS, InfoDesk compiles and distributes Licensed Information in digital form through its digital content distribution service, and

WHEREAS, Subscriber wishes to receive certain of the Licensed Information from InfoDesk.

NOW THEREFORE, InfoDesk and Subscriber, in consideration of the covenants and conditions hereinafter set forth, and intending to be legally bound hereby agree as follows:

1.  Definitions
    If not otherwise set forth in this Agreement, capitalized terms used in this Agreement have the respective meanings set forth below such meanings to be equally applicable to the singular and plural forms thereof.
    1.1.  Effective Date" of this Agreement shall be the date the last party executes this Agreement.
    1.2.  "Publishers" means those third parties from whom InfoDesk has acquired certain rights to distribute the Licensed Information that InfoDesk transmits or otherwise makes available to Subscriber.
    1.3.  "Licensed Information" means that information, which InfoDesk provides to Subscriber, as further described in Schedule A, "Services" which may be amended from time to time as the Parties agree, including but not limited to stories, articles, translations, text, graphics, images, charts, tables, formatting elements, artwork, photographs, audio recordings, video recordings, and all other materials contained therein, whether or not protected by copyright.
    1.4.  "End-User" means any individual person authorized to use the Licensed Information, Services and Software through a licensing agreement with InfoDesk.
    1.5.  "Software" means InfoDesk's computer programs set forth in Schedule A "Services" or Schedule E "InfoDesk End-User Licensing Agreement," and used by Subscriber or End-Users to receive, manage display or otherwise utilize the Licensed Information.

2.  Services
    Subject to the terms and conditions of this Agreement, Subscriber hereby contracts InfoDesk to provide Subscriber with the Licensed Information, Software, installation, training, support and other services, as set forth in Schedule A, "Services," collectively, and hereinafter "Services."

3.  Use of the Licensed Information
    Subscriber's rights to use the Licensed Information are limited as set forth in Schedule C of this Agreement "Use of the Licensed Information."

4.  Use of Software
    Subscriber's use of the Software shall be governed by and limited as set forth in Schedule B "Cost of Services", Schedule D "Subscriber Software License" and Schedule E, "InfoDesk End-User Licensing Agreement."

5.  Financial Arrangements
    5.1.  Fees
         The annual fees for recurring Services provided hereunder by InfoDesk to Subscriber are set forth in Schedule B "Cost of Services". Such fees are payable monthly in 12 equal installments, hereinafter "Monthly Fees." The estimated fees for the non-recurring Services provided hereunder by InfoDesk to Subscriber are set forth in Schedule B "Cost of Services."

    5.2.  Payment
         Subscriber acknowledges and agrees that Monthly Fees for recurring Services provided hereunder are

Attorneys Eyes Only

AP0001754

payable to InfoDesk upon receipt of invoice.

5.3. Taxes

Any and all taxes that become due (except taxes on InfoDesk's income) as a result of Subscriber's use of the Services and its end-users' use of the Services shall be the sole responsibility of Subscriber.

6. Term

The "Initial Term" of this Agreement shall commence on the Effective Date and run for a three (3) year period. After the Initial Term, this Agreement will be automatically renewed for successive additional one (1) year periods ("Extension Terms") unless otherwise terminated by either party by giving notice to the other party no less than sixty (60) days before the end of a Term. As used herein, the "Term" will mean the Initial Term and any Extension Terms.

7. Termination of Agreement

7.1. Each party shall have the right to terminate this Agreement by written notice to the other if a party has materially breached any obligation herein and such breach remains uncured for a period of thirty (30) days after written notice of such breach is sent to the other party.   Subscriber shall have the right to terminate this Agreement without cause upon providing ten (10) days prior written notice.  If Subscriber terminates this Agreement without cause before the end of the then-current term, all amounts due to InfoDesk hereunder between the date of termination and the date upon which Subscriber could next terminate the Agreement shall immediately become due and payable.

7.2. The rights and obligations under the sections entitled "Warranties," "Indemnification," "Limitation of Liability," "Confidentiality and Nondisclosure," "Proprietary Rights," and "General Provisions" shall continue to bind the parties after termination of the Agreement as provided herein.

7.3. Upon the termination of this Agreement, all of the following shall apply:

7.3.1. All rights and licenses granted to Subscriber under this Agreement shall immediately terminate.

7.3.2. InfoDesk shall suspend the provision of Services as set forth hereunder.

7.3.3. Subscriber shall immediately cease use of the Software and documentation and promptly return or destroy at InfoDesk's direction all copies of the Software and documentation. Subscriber will delete all copies of Software residing in memory on any computer in its possession and control.

7.3.4. Subscriber shall immediately cease using, transmitting and/or re-transmitting Licensed Information. It shall return any Publisher manuals and/or materials in its care.

7.3.5. Both Parties shall immediately cease any use of the other Party's name, trademark, or of its copyrighted materials in any and all of its electronic or hard-copy advertisements, promotions, Documentation, or materials.

7.4. InfoDesk may at its sole discretion terminate this Agreement or suspend the provision of Services provided hereunder, in the event Subscriber commits a material breach of the provision of this Agreement entitled "Financial Arrangements" and such breach remains unremedied for ten (10) days after receipt of written notice to Subscriber of the breach. Such termination or suspension shall be effective immediately upon giving notice of such failure to remedy.

7.5. If InfoDesk terminates this Agreement because of Subscriber's default, all amounts then payable to InfoDesk under this Agreement shall become immediately due and payable. Including, in addition to any other remedies set forth herein, or provided at law, the total gross revenues due to InfoDesk hereunder between the date of termination and the date upon which Subscriber could next terminate the Agreement.

8. Branding

Subscriber agrees that all software provided by InfoDesk, and all content delivered by InfoDesk utilizing the Software shall display the branding statement "Powered by InfoDesk" that includes an operational link to any InfoDesk World Wide Web site of InfoDesk's choice.

9. Terms of Use Disclosure

Subscriber agrees to include the following disclosure in Subscriber's "Terms of Service" link.  "All information provided by InfoDesk, Inc. ("InfoDesk") and its Suppliers, (the "InfoDesk Information") is owned by or licensed to InfoDesk and its Suppliers and any user is permitted to store, manipulate, analyze, reformat, print and display the InfoDesk Information only for such user's personal use.  In no event shall any user publish, retransmit, redistribute or otherwise reproduce any InfoDesk Information in any format to anyone, and no user

Attorneys Eyes Only

AP0001755

shall use any InfoDesk Information for commercial purposes other than the Subscriber's business activities, including without limitation, any securities, investment, accounting, banking or legal commercial activities. Prior to the execution of a security trade based upon the InfoDesk Information, you are advised to consult with your broker or other financial representative to verify pricing information.  THE INFODESK INFORMATION IS PROVIDED TO THE USERS "AS IS."  NEITHER INFODESK NOR ITS AFFILIATES MAKE ANY EXPRESS OR IMPLIED WARRANTIES OF ANY KIND REGARDING THE INFODESK INFORMATION, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE. NEITHER INFODESK NOR ITS AFFILIATES WILL BE LIABLE TO ANY USER OR ANYONE ELSE FOR ANY INTERRUPTION, INACCURACY, ERROR OR OMISSION, REGARDLESS OF CAUSE, IN THE INFODESK INFORMATION OR FOR ANY DAMAGES (WHETHER DIRECT OR INDIRECT, CONSEQUENTIAL, PUNITIVE OR EXEMPLARY) RESULTING THEREFROM."

10. Publicity
The Parties agree that the use of the other party's name, logo, insignia, photographs or any other publicity pertaining to this Agreement, including but not limited to the existence of this Agreement, shall not be used in any magazine, press release, trade paper, newspaper or other medium, or otherwise disclosed to any person, without the prior written consent of the other Party.

11. Warranties
    11.1.    Limited Warranties of InfoDesk. InfoDesk Warrants that:
        11.1.1. It has the right to perform its obligations under this Agreement and in particular to grant the Licenses;
        11.1.2. Support will be performed in a commercially reasonable manner; and
        11.1.3. To the best of its knowledge, its performance under this Agreement and the delivery to Subscriber of the Licensed Information conforms to all applicable laws and government rules and regulations.
    11.2.    EXCEPT AS PROVIDED HEREIN, THE SERVICES FURNISHED UNDER THIS AGREEMENT ARE PROVIDED ON AN "AS IS" BASIS, WITHOUT ANY WARRANTIES OR REPRESENTATIONS EXPRESS, IMPLIED OR STATUTORY; INCLUDING, WITHOUT LIMITATION, WARRANTIES OF QUALITY, PERFORMANCE, NONINFRINGEMENT, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. NOR ARE THERE ANY WARRANTIES CREATED BY A COURSE OF DEALING, COURSE OF PERFORMANCE OR TRADE USAGE. INFODESK ITS LICENSORS AND OTHER PUBLISHERS DO NOT WARRANT THAT THE SERVICES WILL MEET SUBSCRIBER'S NEEDS OR BE FREE FROM ERRORS, OR THAT THE OPERATION OF THE SERVICES WILL BE UNINTERRUPTED. THE FOREGOING EXCLUSIONS AND DISCLAIMERS ARE AN ESSENTIAL PART OF THIS AGREEMENT AND FORMED THE BASIS FOR DETERMINING THE PRICE CHARGED FOR THE SERVICES.
    11.3.    Virus Warranty. InfoDesk represents and warrants that no software deliverable or delivered to Subscriber by InfoDesk contains any "virus," "Trojan horse," "worm," or "time bomb" (as such terms are commonly understood in the computer software industry), or any other code designed to destroy data or files without the knowledge and consent of the user or otherwise disrupt, damage, or interfere with the use of the computer on which such code resides or any software programs which interact with such computer or such code, and Licensor will ensure that no such viruses, Trojan horses, worms, or time bombs are introduced within Subscriber as a result of the Services.
    11.4.    NO WARRANTY OTHER THAN THE REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS SECTION AND ABOVE ARE MADE. THESE CONSTITUTE THE ONLY WARRANTIES MADE BY THE PARTIES WITH RESPECT HERETO AND ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED, IMPLIED OR STATUTORY, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

12. Indemnification
    12.1.    Each Party agrees to indemnify and hold harmless the other Party for any and all liabilities, losses, claims, demands, actions, proceedings, damages, costs, and expenses including, but not limited to reasonable legal fees and expenses arising out of or in connection with any third party's finally adjudicated claim or suit based upon an actual breach of the indemnifying Party's obligations or warranties under this Agreement except any limited herein.

Attorneys Eyes Only

AP0001756

12.2.    In the event of any claim made against either Party for breach of its warranties, the alleged breaching Party will have the right to undertake the sole defense of these claims. If the other Party wishes to join in the defense of these claims it may do so; however, it will be responsible for any and all of its own expenses including attorney's fees.

12.3.    If either Party becomes aware of any potential claim to be made against the other Party under this Agreement, it will promptly notify the other Party of the existence of such potential or actual claim.

13. LIMITATION OF LIABILITY

13.1.    INFODESK, ITS PUBLISHERS AND OTHER LICENSORS (i) SHALL IN NO EVENT BE LIABLE TO SUBSCRIBER OR ANYONE ELSE FOR CONSEQUENTIAL LOSS, CONSEQUENTIAL INJURY OR CONSEQUENTIAL DAMAGE CAUSED IN WHOLE OR PART BY, (A) FAILURES, DELAYS OR INTERRUPTIONS OF, THE SERVICES OR (B) ANY INACCURACY OR INCOMPLETENESS IN, OR DELAYS OR INTERRUPTIONS, ERRORS OR OMISSIONS IN THE DELIVERY OF INFORMATION; (ii) SHALL IN NO EVENT BE LIABLE TO SUBSCRIBER OR ANYONE ELSE FOR ANY CONSEQUENTIAL LOSSES, INCLUDING WITHOUT LIMITATION, ANY DIRECT, INDIRECT, INCIDENTAL OR SPECIAL DAMAGES, INCLUDING BUT NOT LIMITED TO ANY LOST PROFITS OR TRADING LOSSES ARISING OUT OF OR RELATING TO THE USE OR INABILITY TO USE THE SOFTWARE OR LICENSED INFORMATION OR ANY DECISION MADE OR ACTION TAKEN BY SUBSCRIBER IN RELIANCE ON THE SOFTWARE OR THE LICENSED INFORMATION, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.. INFODESK IS NOT RESPONSIBLE FOR ANY DAMAGE TO SUBSCRIBER'S COMPUTER, SOFTWARE, MODEM, TELEPHONE OR OTHER PROPERTY RESULTING FROM SUBSCRIBER'S USE OF THE SOFTWARE OR THE INFORMATION. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF WARRANTIES OR INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO SUBSCRIBER.

13.2.    NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY OR ANY OTHER PARTY FOR ANY LOSS OF REVENUE, PROFIT OR INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, CONSEQUENTIAL OR OTHER SIMILAR DAMAGES WHETHER BASED ON TORT (INCLUDING WITHOUT LIMITATION NEGLIGENCE OR STRICT LIABILITY), CONTRACT, OR OTHER LEGAL OR EQUITABLE LEGAL GROUNDS EVEN IF SUCH PARTY HAD BEEN ADVISED OR HAD REASON TO KNOW OF THE POSSIBILITIES OF SUCH DAMAGES; PROVIDED, HOWEVER, THAT THIS LIMITATION OF LIABILITY SHALL NOT APPLY WITH RESPECT TO INFODESK'S INDEMNIFICATION OBLIGATIONS HEREUNDER.

14. Force Majeure

During the term of this Agreement, neither Party shall be liable for damages for any delay or default in its respective obligations under this Agreement, if such delay or default is caused by conditions beyond its control, (including but not limited to acts of God, catastrophes, government restrictions, wars, insurrections, strikes, fires, floods, or work stoppages). Provided however that if such delay or default shall exceed six (6) months, then the other party may, so long as the delay or default continues, terminate this Agreement upon two (2) weeks' written notice to the first party.  So long as any such delay or default continues, the party affected by the conditions beyond its control shall keep the other party at all times fully informed concerning the matters causing the delay or default on the prospects of their ending.

15. No Agency

Nothing contained herein shall be construed as creating an agency, partnership or other form of joint enterprise between the Parties.

16. Confidentiality and Nondisclosure

The specific terms of this Agreement shall be confidential between the Parties hereto, as shall be all confidential and/or proprietary information obtained by each Party relating to the other's business, where such information could not otherwise be obtained through independent third party sources ("Confidential Information"). Confidential Information includes customer and subscriber lists; usage or royalty amounts; technology including; computer programs and computer codes; and all other trade secrets or information of a material nature. Each Party agrees not to disclose to any third party any Confidential Information of the other Party obtained under the Agreement.  The confidentiality obligations set forth in this Section 15 shall terminate three years after the termination of this Agreement and shall not apply to information that (i) became known to

Attorneys Eyes Only

AP0001757

Subscriber prior to InfoDesk's disclosure of such information; (ii) is or becomes part of the public knowledge or literature, not as a result of any action or inaction of Subscriber; (iii) was subsequently disclosed to Subscriber from a source other than InfoDesk not known to Subscriber to be bound by an obligation of confidentiality to InfoDesk or (iv) was independently developed by Subscriber without use of InfoDesk's Confidential Information.

17. Proprietary Rights

Subscriber acknowledges that the Software is InfoDesk's sole and exclusive property. Subscriber shall treat the Software on a confidential basis and shall not, at any time, disclose the trade secrets embodied in the Software or supporting Documentation to any other person, firm, organization or employee who does not need to obtain access thereto consistent with Subscriber's rights under this Agreement. Under no circumstances may Subscriber modify, reverse compile or reverse assemble the object code contained in the Software. Subscriber shall devote its reasonable best efforts to ensure that all persons afforded access to the Software and supporting Documentation protect InfoDesk's trade secrets against unauthorized use, dissemination or disclosure.

18. Notices

All notices and requests in connection with this Agreement shall be deemed given as of the day they are received via messenger or delivery service, or via fax with a copy sent by the United States mail, postage prepaid, certified or registered, return receipt requested, and addressed as follows:

| Notices to InfoDesk: | Notices to Subscriber: |
|---|---|
| InfoDesk, Inc. | |
| 660 White Plains Road, Suite 300 | |
| Tarrytown, New York  10591 | |
| Attention: Sterling Stites | Attention: |
| President and Chief Executive Officer | |
| Tel: 914-332-5940 | Tel: |
| Fax: 914-332-5944 | Fax: |

19. General Provisions

19.1.   Governing Law/Jurisdiction. This Agreement shall be governed by, and construed in accordance with, the Laws of the State of New York without regard to conflict of law principles thereof. Each of the Parties hereto irrevocably submits to the jurisdiction of the Commercial Part of the New York State Supreme Court located in New York County and the United States District Court for the Southern District of New York, for the purposes of any suit, action or other proceeding arising out of this Agreement or any transaction contemplated hereby.

19.2.   Entire Agreement. This Agreement together with all schedules, exhibits, appendices or other attachments, which are incorporated herein by reference, constitutes the entire Agreement between the parties and supersedes all oral or written Agreements and understandings made and entered into by the parties prior to the date hereof. Only a written instrument signed by both parties may amend this Agreement. In the event that Subscriber issues a purchase order to InfoDesk for purposes related to this Agreement, such purchase order will be supplementary to this Agreement and in all instances this Agreement will be the controlling document in defining the terms and conditions agreed to by the parties.

19.3.   Assignment. This Agreement will be binding upon and inure to the benefit of the parties hereto, their respective heirs, personal representatives, successors and assigns. Neither party may assign this Agreement in whole or in part without the prior written consent of the other party; provided, however, that Subscriber shall be entitled to assign this Agreement to its affiliated companies or to the purchaser of all or substantially all of its assets or to any successor corporation, whether by merger or otherwise.

19.4.   Severability. If any provision of this Agreement shall be held by a court of competent jurisdiction or arbitrator to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect.

19.5.   Waiver. No waiver of any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party.

Attorneys Eyes Only

AP0001758

19.6.      Section Headings. The section headings used in this Agreement are intended for convenience only and shall not be deemed to supersede or modify any provisions.

In Witness whereof, the Parties have entered this Agreement as of the Effective Date written above.

**InfoDesk Inc.**                                        **[Subscriber]**

By: _____              By: _____

Name:  Sterling Stites                           Name: _____

Title:    President and Chief Executive Officer     Title: _____

Date: _____             Date: _____

Attorneys Eyes Only

AP0001759

**Schedule A**

**SERVICES**

1. Software Licenses
   [TBD]

2. Content Procurement Assistance
   [TBD]

3. Content Delivery Services
   [TBD]

4. Portal Hosting Service
   [TBD]

5. Portal Creative Services
   [TBD]

6. Training
   InfoDesk will provide _____ days training at a mutually agreed upon location.

7. Service Level Support
   InfoDesk will provide on-going service level support to Customer with regard to technical, administrative and service-oriented issues relating to the utilization, transmission and maintenance of the Services, as Customer may reasonably request and InfoDesk may reasonably accommodate. Contact information for support and notification is included on Schedule G Contact Information.  The Bronze Support Level is included with the Content Delivery Services. The Bronze Support Level includes the following services:

   7.1. Telephone and E-mail Assistance:  Unlimited, toll-free telephone and e-mail assistance for InfoDesk supported software and network problems between 9:00 AM ET and 5:00 PM ET, Monday through Friday, excluding InfoDesk holidays ("Normal Support Hours").  When a Customer calls for assistance, InfoDesk will call back within an average of two (2) Normal Support Hours.

   7.2. Remote Dial-in Analysis:  Remote examination and diagnosis of systems through the Customer provided gateway.  Customer will give InfoDesk the appropriate permission to access the supported remote systems strictly for the purpose of fulfilling the support responsibilities.

   7.3. InfoDesk Enhancement Releases:  Customer will receive periodic delivery of all enhancement releases.

   7.4. Patches and Maintenance Release Access:  Customer will receive patches and maintenance releases for InfoDesk software.

   7.5. Early Notification Service: Periodic notice from InfoDesk containing information on newly discovered problems and bugs.

8. Task Orders.  From time to time, Subscriber may wish to acquire additional Licensed Information from InfoDesk, or have InfoDesk develop and perform certain applications, computer programming and/or other consulting services, or purchase other services from InfoDesk ("Additional Services").  Such Additional Services are to be set forth in corresponding task orders to be executed by the parties (each such task order, as completed on the form set forth in Schedule I attached hereto and executed by the parties, a "Task Order").  Upon execution by the parties, each Task Order will be incorporated herein, provided, however, that should the terms of the Agreement conflict with the terms of any Task Order, the terms of such Task Order will control.

Attorneys Eyes Only

AP0001760

9. The Licensed Information to be provided hereunder is set forth below. Subscriber agrees to use the Licensed Information in accordance with the terms and conditions set forth in this Agreement or the Publishers Agreement as applicable.

9.1. [Name of Publisher]

| Publisher Name | |
| --- | --- |
| Service Name | |

[Repeat for each Publisher]

Attorneys Eyes Only

AP0001761

**Schedule B**

**COST OF SERVICES**

1. Fees for Licensed Information
   In consideration of the license rights granted herein, Subscriber shall pay to InfoDesk the following fees for Licensed Information.

   1.1. Annual price increase for all Licensed Information: Three (3) year contract with 3% increase in year two (2) and year three (3).

   1.2 [Name of Publisher]

| Service Name | Annual Fee | Monthly Portion of Annual Fee |
|---|---|---|
|  |  |  |

   [Repeat for each Publisher]

2. Fees for Content Delivery Service
   In consideration of the license rights granted herein, Subscriber shall pay to InfoDesk the following fees.   For pricing for additional products and services, see Schedule H "InfoDesk Fees."

   2.1 Annual price increase: Three (3) year contract, with 3% increase in year two (2) and year three (3).

   2.2 Recurring Fees

| Recurring Fees | Annual Fee | Monthly Portion of Annual Fee |
|---|---|---|
| Content Delivery Services:<br>• [TBD]<br>• [TBD]<br>• [TBD]<br><br>Portal Hosting Service: (optional)<br>• [TBD] |  |  |

   2.3 One-time Fees

| One-time Fees | | One-time Fee |
|---|---|---|
| Service Setup:<br>• Content Procurement Assistance<br>• Real-time Newswire setup<br>• InfoViewer user setup<br>• RSS setup<br>• _____ days on-site training |  |  |

Attorneys Eyes Only

AP0001762

| | | |
|---|---|---|
| Creative Services: (optional)<br>• [TBD]<br><br>Portal Hosting Setup: (optional)<br>• [TBD] | | |

### 2.4 Optional Fees

| Optional Fees | Annual Fee | Monthly Portion of Annual Fee |
|---|---|---|
| Silver Support Level<br>Gold Support Level<br>(See description of Optional<br>Service Levels in Schedule H) | | |

3. **Expenses**
   All actual, out-of-pocket expenses will be billed separately; provided, however, that all out-of-pocket expenses shall be approved in advance by Subscriber

4. **Training**
   Training beyond initial setup; InfoDesk will provide additional on-site training at the rate of; full day $1,200, half day $600 plus expenses.

5. **Portlet Development and Customization**
   Customization and development beyond initial setup.  Fixed price quotation based on hourly rate of $150 based upon specifications and scope of work requested by Subscriber.

6. **Portlet Administration**
   Portlet administration and implementation services beyond initial setup.  Fixed price quotation based on hourly rate of $150.

Attorneys Eyes Only

AP0001763

**Schedule C**

**USE OF THE LICENSED INFORMATION**

1.  Only the specific uses enumerated in this Schedule are being granted to Subscriber. This license shall be strictly construed. It is understood that any use that exceeds the license granted herein shall violate Publishers copyrights.

2.  Publishers reserve the exclusive right to determine who receives their Licensed Information and to restrict the retransmission, distribution or method of distribution of their Licensed Information; provided, however, that in the event Licensed Information is restricted as a result thereof, InfoDesk shall refund any fees paid in advance with respect to the remaining term for use of such Licensed Information.

3.  Subscriber shall use best efforts to stop any unauthorized use of the Licensed Information immediately after such use becomes known to Subscriber.

4.  Subscriber acknowledges that InfoDesk will be collecting and forwarding statistical information concerning Licensed Information usage to InfoDesk for purposes of InfoDesk's reporting obligations to the Information Providers. Subscriber must provide InfoDesk with 24 by 7 access to servers containing such information for these purposes.

5.  This License in non-exclusive.

6.  Under no circumstances may Subscriber distribute the Licensed Information in its entirety to any third party.

7.  In providing the Licensed Information to Subscriber, InfoDesk and its Publishers expect that the Licensed Information may require editorial intervention by the Subscriber on a timely basis when notified by InfoDesk or the applicable Publishers, and that Subscriber will be solely responsible for the technical implementation and presentation of the Licensed Information both on an automated or editorial basis.

8.  Internal Use
    Subscriber shall use Licensed Information furnished under this Agreement solely for use on Subscriber's internal and public facing web portal. Subscriber hereby agrees that it will not publish the Licensed Information and that it will not give or sell to, or authorize the use of the Licensed Information or any part thereof by any other person, firm or corporation. Subscriber shall use best efforts to stop any such distribution and/or use immediately after such distribution and/or use becomes know to it.

9.  Except as specifically authorized in writing by Publishers, Subscriber shall not translate any of the Information into another language other than that in which it was provided.

10. Embargoes and Restrictions
    In order to cover certain events and obtain credentials, Publishers are required to agree to certain restrictions on the dissemination of the information it gathers. Subscriber agrees to honor and abide by the restrictions upon receipt of notice of the terms of the restrictions brought to its attention prior to or upon receipt of said materials.

11. Except as specifically authorized in writing by InfoDesk or its Publishers, Subscriber may not market, sell or distribute the Licensed Information or any subset of the Licensed Information in any manner or medium. This limitation includes the distribution (except for previously authorized promotional efforts), marketing or selling, through unauthorized hard copies, through any electronic medium, whether on-line or otherwise, and by means of any electronic storage device.

12. Except as specifically authorized in writing by InfoDesk or Publishers, Subscriber shall not grant any third party or any third party's customers access to the Licensed Information or subset thereof, nor the right to view, frame or be linked to the Licensed Information or a subset of the Licensed Information (except for previously authorized promotional efforts) through any currently known technology or hereafter developed technology.

Attorneys Eyes Only

AP0001764

13. Copyright

Subscriber acknowledges that InfoDesk's Publishers are the copyright owners of all Licensed Information provided to it, and that this Agreement constitutes a license to use the Licensed Information only for the Term of this Agreement. Subscriber further acknowledges that nothing in the Agreement shall constitute a sale or other transfer of title or any rights from any Publisher to Subscriber for any of the Licensed Information. All rights with respect to the Licensed Information not explicitly granted to Subscriber are reserved to Publishers. Subscriber shall not be entitled to any use of the Licensed Information provided by InfoDesk not specifically granted to Subscriber hereunder

14. Releases

Subscriber acknowledges that it will be solely responsible for obtaining any and all necessary releases from whatever individuals and/or entities are necessary for Subscriber's non-news uses of the Licensed Information or those of its customers, agents, distributors, or end-users.

15. Display of Notices with Licensed Information

15.1. Print Applications

In any display, republication or redistribution of any of the Licensed Information received by Subscriber from InfoDesk, Subscriber shall ensure that Publishers' copyright notices or credit lines received therewith shall appear on the Licensed Information.

15.2. Electronic Applications

In any electronic display, republication or redistribution of any of the Licensed Information received by Subscriber from InfoDesk, Subscriber shall ensure that Publishers' copyright notices or credit lines received therewith shall appear on the Licensed Information.

16. Subscriber's End-User and Distributor Terms and Conditions

16.1. Subscriber's customers, End-Users or distributors are to be barred from commercial use of the Information. To effect these limitations, Subscriber shall require its End Users to agree to the terms set forth in Schedule E hereto.

16.2. Any End-User requests or inquiries for republication rights for Information shall be directed to Publisher for authorization and payment as necessary.

17. Archiving

17.1. Subscriber may retain copies of the Licensed Information after receipt from InfoDesk for the period of time (the "Archive Period") specified in a Publisher and/or service specific manner in the provision of this Agreement entitled "Publisher Specific Terms, Conditions and Restrictions" and only for specific uses provided for herein. After such period has expired, the Licensed Information must be deleted and no copies may be kept except as specifically provided for in this Agreement or in writing by InfoDesk or the applicable Publisher.

17.2. Where online rights are granted, Subscriber may maintain the Licensed Information on its web site for the Archive Period after it was published by Subscriber. All financial and revenue sharing provisions of this Agreement shall apply to the accessible archive. After the Archive Period has expired, the Licensed Information must be deleted and no copies may be kept except as specifically provided for in this Agreement or in writing by Publisher.

17.3. Subscriber may archive only that subset of Licensed Information posted in Subscriber's publication and/or on Subscriber's web site only under the terms and conditions set forth in this Agreement.

17.4. Subscriber may maintain that subset of the Licensed Information that has appeared in Subscriber's print publication and/or online edition in an archive which may be used by Subscriber for internal and historical purposes for the duration of this Agreement. After the termination of this Agreement, the Licensed Information must be deleted and no copies may be kept except as specifically authorized by this Agreement or in writing by Publisher. While the Licensed Information is maintained in the internal and historical archive, no third party may access this archive, Licensed Information may not be posted or copied and it may not be included in any products of any kind except as set forth herein.

Attorneys Eyes Only

AP0001765

18. Modifications
 18.1. Subscriber shall not use the Licensed Information except as agreed in this Agreement.  Subscriber shall not edit, alter, modify or prepare any derivative works based on the Licensed Information.  Additionally, Subscriber shall not imply, directly or indirectly, including by using the Licensed Information together with content provided by Subscriber or others, that Publisher provides, endorses, sponsors, certifies or approves of other content included within the Subscriber Site or any products or services advertised in or near the Licensed Information.

19. Publisher Specific Terms, Conditions and Restrictions
 Subscriber agrees that its use of the following listed Licensed Information services shall be governed by and conform to the following terms, conditions and restrictions set forth here.
 19.1. If Publisher requests that any portion of the Licensed Information be deleted, replaced, made inaccessible or modified because such Licensed Information may contains error, is or could be subject to a third party claim, Subscriber shall use commercially reasonable efforts to remove or modify promptly the particular piece of Licensed Information from the Subscriber Site as soon as practicable.
 19.2. Throughout the Term, Subscriber shall post on the Subscriber Site end user terms, the compliance with which use of the Subscriber Site (including the Licensed Information) is expressly conditioned, that are reasonably designed to protect Subscriber's intellectual property rights and provide Publisher with at least as protective limitations of liability as Subscriber provides for itself.
 19.3. Publisher hereby grants Subscriber a limited, non-exclusive, non-transferable royalty-free license to use the trademarks, trade names, designs and logos ("Marks") of Publisher designated by Publisher from time to time during the Term, all in accordance with Publisher's usage guidelines, solely in connection with displaying, and to advertise, market and promote the availability of, the Licensed Information on the Subscriber Site; provided that all advertising, marketing and promotional uses shall require Publisher's prior approval.  All uses of Publisher's Marks, and all goodwill associated therewith, shall inure solely to the benefit of Publisher.

 19.4.

| Publisher | _____ |
|---|---|
| Product Name(s) | _____ |
| Archiving | The Archive Period for Licensed Information transmitted to Subscriber as part of _____ service is as per the _____ Agreement. |
| Special Events | _____ has designated the following as "Special Events Coverage", subject to additional licenses.<br><br>NONE<br><br>Licenses for material relating to the above-mentioned events shall be negotiated separately from this Agreement. |
| Photos | No _____ photograph may be displayed, transmitted and distributed by Subscriber in any electronic medium at a resolution greater than 640 pixels in any one dimension. No _____ video recording may be displayed, transmitted and distributed by Subscriber in any electronic medium at a resolution greater than 640 pixels in any one dimension. |
| Other | In the event that _____ is licensed for electronic use, LexisNexis shall be granted online access to Subscriber's online services in order to verify Subscriber's use of the Licensed Information. |

[Repeat for each Publisher]

Attorneys Eyes Only

AP0001766

**Schedule D**

**SUBSCRIBER SOFTWARE LICENCE**

1. Pursuant to the terms and conditions of this Agreement and the terms and conditions of Schedule E of this Agreement "End-User Software License Agreement," InfoDesk grants Subscriber a non-exclusive and non-transferable license during the Term to:
   1.1. Install on computer systems under Subscriber's control, and use within Subscriber's organization, fully paid up copies of the Software and Documentation up to the limits specified in Schedule A of this Agreement "Services."
   1.2. Make a full and complete copy of the Software and Documentation for archival or re-build purposes only (limited to a reasonable number of copies), provided that all copies of the Software and Documentation will be subject to the terms of this Agreement.

2. Subscriber agrees Subscriber will not:
   2.1. make available or distribute all or any part of the Software, Documentation or Licensed Information to any third party whether by assignment, sublicense or by any other means other than provided for hereunder or to its affiliated companies or to the purchaser of all or substantially all of its assets or to any successor company whether by merger or otherwise;
   2.2. copy, adapt, reverse engineer, decompile, disassemble, or modify, in whole or in part, any of the Software or Documentation, except as allowed by this Agreement;
   2.3. use the Software to operate in a time-sharing, outsourcing, or service bureau environment.
   2.4. remove the Software from its premises without our prior written consent;
   2.5. conceal, remove or alter any title, trademark, copyright, proprietary or restricted rights notices, or attribution notices incorporated in the Software, Documentation, or Licensed Information;
   2.6. use any Software supplied by InfoDesk other than as a bundled part of the Software.

3. Use of Software and Subscriber's Responsibilities
   Subscriber agrees it:
   3.1. will not use the Services in breach of any applicable laws, regulations or market conventions;
   3.2. will cooperate with InfoDesk and provide any necessary assistance to allow InfoDesk to perform our obligations under this Agreement, including the provision of Support;
   3.3. will ensure that each of Subscribers employees who will use the Software and/or Licensed Information are aware of and comply with the applicable terms of this Agreement;

4. Copyright of Software
   Subscriber acknowledges that InfoDesk is the copyright owner of all Software provided to Subscriber, and that this Agreement constitutes a license to use the Software only for the Term of this Agreement. Subscriber further acknowledges that nothing in the Agreement shall constitute a sale or other transfer of title or any rights from InfoDesk to Subscriber for any of the Software. All rights with respect to the Software not explicitly granted to Subscriber are reserved to InfoDesk.

5. Designated Environment
   Subscriber agrees to provide, at Subscribers own expense, a suitable Designated Environment for use of the Software in accordance with instructions furnished in Schedule F of this Agreement "Designated Environment."

Attorneys Eyes Only

**Schedule E**

**INFODESK END-USER LICENSE AGREEMENT**

This InfoDesk End-User License Agreement ("License") is your proof of license for the InfoViewer, WebInfoViewer, InfoPublisher, InfoClient and InfoPortal software (the "Software"). An electronic copy of this Agreement will also be provided to each employee of your organization upon installation of the Software.

1.  Grant and Term of License. InfoDesk, Inc. ("InfoDesk") grants you a non-exclusive, non-transferable right to install and use the Software. The Software may be installed on computers or network servers under your control. This License shall continue in effect until terminated by InfoDesk or immediately upon any failure by you to comply with the limitations set forth in this License. You agree to comply with the conditions imposed on your use of the Software and the information provided through the use of the Software, as set forth in this License and elsewhere in our Internet site.

2.  Licensed Information. Certain data accessible through use of InfoDesk Software and Internet site ("Licensed Information") is the intellectual property of the relevant Publisher or third parties that provide such data to the relevant service provider, or InfoDesk. The data is protected by copyright and other intellectual laws and all ownership rights remain with the Publisher, the third party or InfoDesk, as the case may be. InfoDesk makes no warranty or representation whatsoever with respect to the Licensed Information available through the Software, and you acknowledge that, among other things, there is an inherent risk that some Licensed Information available on through InfoDesk Software may be inaccurate, incomplete, untimely, offensive or inappropriate under applicable law and you agree to assume all such risks.

3.  Restrictions. The Software and the Licensed Information is the property of InfoDesk and/or its licensors and Licensed Publishers and is protected by U.S. and international copyright and intellectual property laws and treaty provisions. All rights to patents, copyrights, trademarks and trade secrets in the Software, any modifications to it or the Licensed Information shall be and remain in InfoDesk and/or its licensors and Licensed Publishers. You may not modify, alter, translate, reverse engineer, decompile, disassemble or create derivative works based on the Software, or remove any proprietary notices or labels that it contains. You are permitted to install the Software on one computer and to make a complete copy of the installed Software for backup purposes. You may only use the Licensed Information for your own personal and non-commercial purposes while using InfoDesk Software. You may not copy, distribute or redistribute the Licensed Information, including by caching, framing or similar means or sell, resell, re-transmit or otherwise make the Licensed Information available in any manner to any third party.

4.  You will not use the Product in breach of any applicable laws, regulations or market conventions.

5.  You will ensure that each of your employees, contractors or other parties working under your control to whom you have provided the Software to and who will use the Software (collectively "Users") is aware of and complies with the terms of this Agreement.

6.  Each password provided to Users by InfoDesk or its authorized distribution agents will be kept confidential by Users. If you learn or suspect that such confidentiality has, in any way been breached, you will immediately notify InfoDesk or its authorized distribution agent. InfoDesk or such agent may assign a new password to permit the use of all or any portion of the Product.

7.  No Warranties or Liabilities
    You acknowledge and agree that your use of this Software is AT YOUR OWN RISK and that the Software and the Licensed Information is provided "AS IS" without any warranties or conditions whatsoever. INFODESK, ITS LICENSORS AND OTHER PUBLISHERS (i) DISCLAIM ANY EXPRESS OR IMPLIED WARRANTIES AS TO THE NONINFRINGEMENT, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE SOFTWARE OR THE LICENSED INFORMATION OR THAT THE OPERATION OF THE SOFTWARE OR TRANSMISSION OF THE LICENSED INFORMATION WILL BE UNINTERRUPTED OR ERROR-FREE; (ii) SHALL IN NO EVENT BE LIABLE TO YOU OR ANYONE ELSE FOR LOSS, INJURY OR DAMAGE CAUSED

Attorneys Eyes Only

IN WHOLE OR PART BY, (A) FAILURES, DELAYS OR INTERRUPTIONS OF, THE SOFTWARE OR (B) ANY INACCURACY OR INCOMPLETENESS IN, OR DELAYS OR INTERRUPTIONS, ERRORS OR OMISSIONS IN THE DELIVERY OF LICENSED INFORMATION; (iii) SHALL IN NO EVENT BE LIABLE TO YOU OR ANYONE ELSE FOR ANY CONSEQUENTIAL LOSSES, INCLUDING WITHOUT LIMITATION, ANY DIRECT, INDIRECT, INCIDENTAL OR SPECIAL DAMAGES, INCLUDING BUT NOT LIMITED TO ANY LOST PROFITS OR TRADING LOSSES ARISING OUT OF OR RELATING TO THE USE OR INABILITY TO USE THE SOFTWARE OR LICENSED INFORMATION OR ANY DECISION MADE OR ACTION TAKEN BY YOU IN RELIANCE ON THE SOFTWARE OR LICENSED INFORMATION, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. INFODESK IS NOT RESPONSIBLE FOR ANY DAMAGE TO YOUR COMPUTER, SOFTWARE, MODEM, TELEPHONE OR OTHER PROPERTY RESULTING FROM YOUR USE OF THE SOFTWARE OR THE LICENSED INFORMATION. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF WARRANTIES OR INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU.

8.  Export Restrictions
    You acknowledge that the Software and Documentation acquired hereunder are subject to the export control laws and regulations of the U.S.A. You confirm that with respect to the Software and such Documentation, you will not export or re-export them, directly or indirectly, either to (i) any countries that are subject to U.S.A. export restrictions (currently including, but not necessarily limited to, Iran, Iraq, Syria, Cuba, North Korea, Libya and Sudan); (ii) to any other user of this Software who you know or have reason to know will utilize the Software and/or Documentation in the design, development or production of nuclear, chemical or biological weapons; or (iii) to any other user of this Software who has been prohibited from participating in the U.S.A. export transactions by any federal agency of the U.S.A. government. You further acknowledge that the Software may include technical data subject to export and re-export restrictions imposed by U.S.A. law.

9.  General
    This License together with a valid InfoDesk Services Agreement executed with due authority by you or your organization constitutes the entire agreement between you and InfoDesk with respect to the Software and the Licensed Information and supersedes any other communication (including advertising). If any provision of this License is held unenforceable, that provision shall be enforced to the maximum extent permissible so as to give effect the intent of this License, and the remainder of this License shall continue in full force and effect. This License shall be governed by the laws of the State of New York, U.S.A. without reference to conflict of laws principles.

10. Government Restricted Rights
    If the user of this commercial computer software is an agency, department, or other entity of the United States Government ("Government"), use, reproduction, release, modification, or disclosure of this product, or of any related Documentation of any kind, including technical data, is restricted in accordance with Federal Acquisition Regulation ("FAR") 12.212 for civilian agencies and Defense Federal Acquisition Regulation Supplement ("DFARS") 227.7207 for military agencies. This product is commercial. The use of this product by any Government agency, department, or other entity of the Government is further restricted in accordance with the terms of this License, and any modification thereto. The manufacturer is InfoDesk, Inc., 660 White Plains Road, Suite 440, Tarrytown, New York 10591-5107.

11. Special Notices
    Special notices are available on the InfoDesk Website http://www.idsk.com/license/.

Attorneys Eyes Only

AP0001769

**Schedule F**

**DESIGNATED ENVIRONMENT**

1. InfoClient Hardware and Software Requirements

   The InfoClient runs on a dedicated server located at the Subscriber site.  Subscriber must supply required hardware, operating system and software.

   Hardware:

   - Processor – 2.8 GHz Pentium 4 or better.
   - Memory – 512 Megabyte or greater (1 Gigabyte recommended).
   - 40 Gigabyte Hard Disk or greater depending upon volume of content.

   Software

   - Windows 2000 Server or above.
   - Microsoft Internet Information Server (IIS) 4.0 or above.
   - IE Browser 6.0 or above

2. InfoPortal Hardware and Software Requirements

   The InfoPortal runs on a dedicated server located at the Subscriber site.  Subscriber must supply required hardware, operating system and software.

   Hardware:

   - UNIX Processor – 440 MHz UltraSparc or better.
   - Linux Processor – 2.8 GHz Pentium 4 or better.
   - Memory – 1 Gigabyte or greater (2 Gigabyte recommended).
   - 40 Gigabyte Hard Disk or greater depending upon volume of content.

   Software

   - Solaris 9 or Linux 9 (RedHat) or above.
   - Portal Server Software (i.e., WebLogic Portal 8.1 SP3 Server or above).

3. InfoViewer Hardware and Software Requirements

   The InfoViewer runs on a workstation at the Subscriber site.  Subscriber must supply required hardware, operating system and software.

   Hardware:

   - Processor – 2.4 GHz Pentium 4 or better.
   - Memory – 256 Megabyte or greater (512 Megabyte recommended).
   - 40 Gigabyte Hard Disk or greater depending upon volume of content.

   Software

   - Windows 2000 Professional or above.
   - IE Browser 6.0 or above

Attorneys Eyes Only

AP0001770

4. WebInfoViewer Hardware and Software Requirements

The WebInfoViewer runs on a workstation at the Subscriber site.  Subscriber must supply required hardware, operating system and software.

Hardware:

- Processor – 2.4 GHz Pentium 4 or better.
- Memory – 256 Megabyte or greater (512 Megabyte recommended).
- 40 Gigabyte Hard Disk or greater depending upon volume of content.

Software

- Windows 2000 Professional or above, or MAC 9 OS or above (using IE Browser 6.0 or above only).
- IE Browser 6.0 or above

5. InfoPublisher Hardware and Software Requirements

The InfoPublisher runs on a workstation at the Subscriber site.  Subscriber must supply required hardware, operating system and software.

Hardware:

- Processor – 2.4 GHz Pentium 4 or better.
- Memory – 256 Megabyte or greater (512 Megabyte recommended).
- 40 Gigabyte Hard Disk or greater depending upon volume of content.

Software

- Windows 2000 Professional or above.
- Microsoft Internet Information Server (IIS) 4.0 or above.
- IE Browser 6.0 or above

Attorneys Eyes Only

AP0001771

**Schedule G**

**CONTACT INFORMATION**

| | InfoDesk | Subscriber |
|---|---|---|
| Name | InfoDesk, Inc. | |
| Main Telephone | (914) 332-5940 | |
| Fax | (914) 332-5944 | |
| Address | 660 White Plains Road, Suite 440 | |
| | Tarrytown NY, 10591-5107 | |
| Administrative | | |
| Name | Lynn Epstein | |
| Title | COO | |
| Telephone | (914) 798-2422 | |
| Fax | (914) 332-5944 | |
| Email | lynn@idsk.com | |
| Billing | | |
| Name | Joe Gallo | |
| Title | VP Finance | |
| Telephone | (914) 798-2421 | |
| Fax | (914) 332-5944 | |
| Email | jgallo@idsk.com | |
| Primary Support Contact | | |
| Name | Elizabeth Maresca | |
| Title | VP Product Development | |
| Telephone | (914) 798-2430 | |
| Fax | (914) 332-5944 | |
| Email | emaresca@idsk.com | |
| Content | | |
| Name | Lynn Epstein | |
| Title | COO | |
| Telephone | (914) 798-2422 | |
| Fax | (914) 332-5944 | |
| Email | lynn@idsk.com | |

Attorneys Eyes Only

AP0001772

**Schedule H**

**INFODESK FEES (Standard Price Sheet)**

InfoDesk reserves the right to change InfoDesk Fees with thirty (30) days written notice to Subscriber.

### InfoViewer (Desktop Content Viewer)

| Fee Basis | Per month |
|---|---|
| Fees | |

### InfoClient Portal (NewsWatch Service)

| Fee Basis | Per month |
|---|---|
| Fees | |
| Hosting Service | |
| Creative Service | |
| Setup Service | |

### InfoPortal (Portlet Service)

| Fee Basis | Per month |
|---|---|
| Fees | |
| Hosting Service | |
| Creative Service | |
| Setup Service | |

### InfoPublisher (Website Publishing Tools)

| Fee Basis | Per month |
|---|---|
| Fees | |

### Support Services

| Fee Basis | Per month |
|---|---|
| Option 1 | Bronze Support Level – Included in Base Content Delivery Service.<br>Telephone and e-mail support with two (2) hour response during "Normal Support Hours".  (See Support Services Option Descriptions for details) |
| Option 2 | Silver Support Level – _____ per month.<br>Telephone and e-mail support with two (2) hour response during "Extended Support Hours".  (See Support Services Option Descriptions for details) |
| Option 3 | Gold Support Level – _____ per month.<br>Telephone and e-mail support with 24x7x365 response.  (See Support Services Option Descriptions for details) |

Attorneys Eyes Only

AP0001773

**Optional Service Level Descriptions**

InfoDesk can provide any one of three levels of support.

1. Bronze Support Level

    The Bronze Support Level is included with the Content Delivery Services. The Bronze Support Level includes the following services:

    1.1. Telephone and E-mail Assistance:  Unlimited, toll-free telephone and e-mail assistance for InfoDesk supported software and network problems between 9:00 AM ET and 5:00 PM ET, Monday through Friday, excluding InfoDesk holidays ("Normal Support Hours").  When a Customer calls for assistance, InfoDesk will call back within an average of two (2) Normal Support Hours.

    1.2. Remote Dial-in Analysis:  Remote examination and diagnosis of systems through the Customer provided gateway.  Customer will give InfoDesk the appropriate permission to access the supported remote systems strictly for the purpose of fulfilling the support responsibilities.

    1.3. InfoDesk Enhancement Releases:  Customer will receive periodic delivery of all enhancement releases.

    1.4. Patches and Maintenance Release Access:  Customer will receive patches and maintenance releases for InfoDesk software.

    1.5. Early Notification Service:  Periodic notice from InfoDesk containing information on newly discovered problems and bugs.

2. Silver Support Level

    Customers who purchase the Silver Support Level will receive the following services:

    2.1. Telephone and E-mail Assistance:  Unlimited, toll-free telephone and e-mail assistance for InfoDesk supported software and network problems between 8:00 AM ET and 8:00 PM ET, Monday through Sunday, excluding InfoDesk holidays ("Extended Support Hours").

    2.2. Customer Defined Priority and Response Time:  When Customer calls for support assistance, Customer will assign a priority rating to the call: Urgent, Serious, or Not Critical:

        2.2.1 Urgent (system unusable) – Live transfer of service request during Extended Support Hours.

        2.2.2 Serious (system seriously impaired) – Callback within an average of two (2) Extended Support Hours of service request.

        2.2.3 Not Critical – Callback within an average of four (4) Extended Support Hours of service request.

    2.3. Remote Dial-in Analysis:  Remote examination and diagnosis of systems through the Customer provided gateway.  Customer will give InfoDesk the appropriate permission to access the supported remote systems strictly for the purpose of fulfilling the support responsibilities.

    2.4. InfoDesk Enhancement Releases:  Customer will receive periodic delivery of all enhancement releases.

    2.5. Patches and Maintenance Release Access:  Customer will receive patches and maintenance releases for InfoDesk software.

Attorneys Eyes Only

AP0001774

2.6. Early Notification Service: Periodic notice from InfoDesk containing information on newly discovered problems and bugs.

3.  Gold Support Level

Customers who purchase the Gold Support Level will receive the following services:

3.1  24 x 7 Telephone and E-mail Assistance:  Unlimited, toll-free telephone and e-mail assistance for InfoDesk supported software and network problems 24 hours per day, 7 days per week, including InfoDesk Holidays ("24x7 Support Hours").

3.2  Customer Defined Priority and Response Time:  When Customer calls for support assistance, Customer will assign a priority rating to the call: Urgent, Serious, or Not Critical:

3.2.1 Urgent (system unusable) – Live transfer of service request during 24x7 Support Hours.

3.2.2 Serious (system seriously impaired) – Callback within an average of two (2) 24x7 Support Hours of service request.

3.2.3 Not Critical – Callback within an average of four (4) 24x7 Support Hours of service request.

3.3  On-Site Assistance:  On-site support assistance between 9:00 AM ET and 5:00 PM ET Monday through Friday, excluding InfoDesk holidays ("On-Site Hours").  Once a determination is made that on-site assistance is required, InfoDesk support personnel will arrive at the installation site within an average of one (1) business day or at a later mutually agreed upon time.  Subscriber will pay pre-approved travel expenses.

3.4  Remote Dial-in Analysis:  Remote examination and diagnosis of systems through the Customer provided gateway.  Customer will give InfoDesk the appropriate permission to access the supported remote systems strictly for the purpose of fulfilling the support responsibilities.

3.5  InfoDesk Enhancement Releases:  Customer will receive periodic delivery of all enhancement releases.

3.6  Patches and Maintenance Release Access:  Customer will receive patches and maintenance releases for InfoDesk software.

3.7  Early Notification Service: Periodic notice from InfoDesk containing information on newly discovered problems and bugs.

3.8  Remote Systems Monitoring:  InfoDesk's will provide remote system monitoring tools that will periodically collect data from the Customer's designated remote systems.  InfoDesk will provide Customer with performance reports.  Customer will give InfoDesk the appropriate permission to access the supported remote systems strictly for the purpose of fulfilling the support responsibilities.

3.9  Personal Technical Account Manager:  Customer account will be assigned to an InfoDesk Account Manager who will assists Customer in assessing critical support issues and help coordinate InfoDesk's response.  The assigned InfoDesk Account Manager may also provide available information on potential system problems and currently available patches.  These services are provided to Customer during InfoDesk's Normal Support Hours.

Attorneys Eyes Only

AP0001775

4.  Expenses
    All actual, out-of-pocket expenses will be billed separately; provided, however, that all out-of-pocket expenses shall be approved in advance by Subscriber

5.  Training
    Training beyond initial setup; InfoDesk will provide additional on-site training at the rate of; full day $1,200, half day $600 plus expenses.

6.  Future Portlet Development and Customization
    Customization and development beyond initial setup.  Fixed price quotation based on hourly rate of $150 based upon specifications and scope of work requested by Subscriber.

7.  Portlet Administration
    Portlet administration and implementation services beyond initial setup.  Fixed price quotation based on hourly rate of $150.

Attorneys Eyes Only

AP0001776

**Schedule I**

**FORM OF TASK ORDER**

This Task Order No. _____, dated as of _____, 200__, is issued pursuant to, and incorporates herein, the InfoDesk Subscriber and Services Agreement by and between _____ and InfoDesk, Inc. dated _____ ("Agreement"). Any capitalized term not otherwise defined herein shall have the meaning ascribed to that term in the Agreement.

I.      **Description of Task Order:**

II.     **Detailed Specification for Deliverable(s):**

        **Deliverable(s):**

        **Specifications:**

        **Special Development Requirements:**

        **Scheduled Delivery Dates:**

III.    **Payments:**

        **Development Fees:**

        **Payment Terms:**

        **Approved By:**

IV.     **Additional Matters (if any):**

In the event of any conflict between the terms of the Agreement and this Task Order, the terms of this Task Order shall control for services performed and Deliverables developed and delivered under this Task Order.

IN WITNESS WHEREOF, the parties acknowledge that this Task Order shall be an integral part of the Agreement among the parties hereto to which it is attached.

InfoDesk, Inc.                                          [Subscriber]


By: _____          By: _____
Name: Sterling Stites                                  Name:
Title:  President and Chief Executive Officer          Title:

Attorneys Eyes Only

AP0001777

## Schedule E - Copyright Notice

AP COPYRIGHT STATEMENT, NOTICE AND CREDIT

1.      Copyright Statement.    SUBSCRIBER will prominently display and incorporate into the SUBSCRIBER's User agreement the following notice to all Users who access the Service in SUBSCRIBER'S Interactive Service:

**Associated Press text, photo, graphic, audio and/or video material shall not be published, broadcast, rewritten for broadcast or publication or redistributed directly or indirectly in any medium. Neither these AP materials nor any portion thereof may be stored in a computer except for personal and non-commercial use.  AP will not be held liable in any way to the User or to any third party or to any other person who may receive information in the Service or to any other person whatsoever, for any delays, inaccuracies, errors or omissions therefrom or in the transmission or delivery of all or any part thereof or for any damages arising from any of the foregoing or occasioned thereby.**

2.      Notice. SUBSCRIBER will display the following copyright notice updated each year, along with the AP graphic logo, on each item of AP Service used in SUBSCRIBER'S Interactive Service:

**Copyright 2005 Associated Press.   All rights reserved.   This material may not be published, broadcast, rewritten, or redistributed.**

3.      Credits. SUBSCRIBER also will display the following credit or attribution for each item or portions of AP Service used in SUBSCRIBER'S Interactive Service:

**For text:**        (AP) or by The Associated Press and the writer's byline.

**For photos:**   Visual representation of "AP" logo on picture or immediately below adding "Associated Press" and photographer's byline.

**For graphics:** Visual representation of "AP" logo on graphic or immediately below adding "Associated Press".

**For audio:**    On-screen visual representation of "AP Audio" and the reporter's byline.

**For video:**    Visual representation of "AP" logo on each frame of AP video or immediately below adding "APTN" or "Associated Press Television News" and the reporter's byline.

Attorneys Eyes Only

AP0001778