DAVID H. KRAMER (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300

TONIA OUELLETTE KLAUSNER
BRIAN M. WILLEN
CATHERINE GREALIS
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 497-7700

*Attorneys for the Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE ASSOCIATED PRESS, | ) CASE NO.: 1:12-CV-01087-DLC<br>) ECF CASE |
| Plaintiff, | ) |
| v. | ) |
| MELTWATER U.S. HOLDINGS, INC.;<br>MELTWATER NEWS U.S., INC.; and<br>MELTWATER NEWS U.S. 1, INC., | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN OPPOSITION**
**TO THE F.R.C.P. 56(d) DECLARATION OF ELIZABETH A. MCNAMARA**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................1

ARGUMENT....................................................................................................................2

I.    AP IS NOT ENTITLED TO "SUPPLEMENTAL" DISCOVERY
CONCERNING ARTICLES OTHER THAN THE ARTICLES IN SUIT .......................2

II.    AP IS NOT ENTITLED TO FURTHER DISCOVERY ABOUT THE
APPERANCE OF THE ARTICLES IN SUIT IN ARCHIVES AND
NEWSFEEDS.........................................................................................................5

III.   AP IS NOT ENTITLED TO ADDITIONAL DISCOVERY CONCERNING
MELTWATER CUSTOMERS' CREATION OF NEWSLETTER EMAILS ..................8

IV.   AP IS NOT ENTITLED TO ADDITIONAL "KNOWLEDGE" DISCOVERY ..............11

CONCLUSION ..............................................................................................................13

## TABLE OF AUTHORITIES

### CASES

*Banque Nationale de Paris S.A. v. Ins. Co. of N. Am.*,
   896 F. Supp. 163 (S.D.N.Y. 1995) ...............................................................................11

*Bennett v. U.S. Lines, Inc.*,
   64 F.3d 62 (2d Cir. 1995) ...............................................................................................8

*Bower v. Bower*,
   808 F. Supp. 2d 348 (D. Mass. 2011).............................................................................9

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,
   769 F.2d 919 (2d Cir. 1985) ......................................................................................6, 7

*Desclafani v. Pave-Mark Corp.*,
   No. 07 Civ. 4639 (HBP), 2008 WL 3914881 (S.D.N.Y. Aug. 22, 2008) .........................7

*Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*,
   891 F.2d 414 (2d Cir. 1989) ....................................................................................2, 12

*In re Subpoena Duces Tecum to AOL, LLC*,
   550 F. Supp. 2d 606 (E.D. Va. 2008) ............................................................................9

*Ingram v. Home Depot, U.S.A., Inc.*,
   No. CIV. A. 97–8060, 1999 WL 88939 (E.D. Pa. Feb. 19, 1999) .....................................7

*McNerney v. Archer Daniels Midland Co.*,
   164 F.R.D. 584 (W.D.N.Y. 1995) ...................................................................................4

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*,
   No. 09-2669 (LAP), 2012 WL 1021535 (S.D.N.Y. Mar. 26, 2012) ...................................4

*Nicholson v. Doe*,
   185 F.R.D. 134 (N.D.N.Y. 1999) .................................................................................13

*Nielsen v. Soc'y of N.Y. Hosp.*,
   No. 87 CIV. 8526 (RO), 1988 WL 100197 (S.D.N.Y. Sept. 22, 1988) ..............................7

*Owusu v. N. Y. State Ins.*,
   655 F. Supp. 2d 308 (S.D.N.Y. 2009) ..........................................................................12

*Paddington Partners v. Bouchard*,
   34 F.3d 1132 (2d Cir. 1994) ...............................................................................6, 11, 12

*Reed Elsevier, Inc. v. Muchnick*,
   130 S. Ct. 1237 (2010)...................................................................................................4

*Vargas v. Midtown Air Condition and Ventilation, Ltd.*,
No. 07 Civ. 3343 (RMB), 2008 WL 5062611 (S.D.N.Y. Nov. 24, 2008) ..........................7

*Viacom Int'l Inc. v. YouTube Inc.*,
253 F.R.D. 256 (S.D.N.Y. 2008) ...................................................................................9

*Zdanok v. Glidden Co.*,
327 F.2d 944 (2d Cir. 1964) .........................................................................................4

## STATUTES

17 U.S.C. § 411(a) ...............................................................................................................3, 4

18 U.S.C. § 2510(15) ..............................................................................................................9

18 U.S.C. § 2702 ..................................................................................................................1, 9

## RULES

Fed. R. Civ. P 56(d) .....................................................................................................passim

## MISCELLANEOUS

H.R. REP. NO. 94-1476 (1976) ................................................................................................3

S. REP. NO. 100-352 (1988) .................................................................................................3, 4

## INTRODUCTION

Months of exhaustive discovery into AP's secondary infringement claims have confirmed what Meltwater has said all along: there is no evidence that any Meltwater customer stored, emailed, or displayed the full text of any of AP's Articles in Suit in a Meltwater archive, newsletter, or newsfeed, much less that Meltwater knew of such behavior. Based on those undisputed facts, Meltwater is entitled to summary judgment. In a last-ditch effort to avoid that result, AP invokes Federal Rule of Civil Procedure 56(d). AP proffers a declaration from its counsel Elizabeth A. McNamara ("AP 56(d) Decl.") seeking still more discovery on its secondary liability claims. AP's 56(d) application is entirely without merit.

*First*, AP's request for discovery concerning articles other than the 33 Articles in Suit (the works that AP registered with the U.S. Copyright Office and identified in its Amended Complaint), has already been considered and rejected by this Court. AP cannot seek reconsideration of the Court's ruling in the guise of a Rule 56(d) motion, and even if it could, there is no legal basis for AP to conduct discovery concerning works that it has not registered and identified as part of this case.

*Second*, AP makes a vague request for "supplemental discovery" into the appearance of the Articles in Suit in Meltwater archive folders and newsfeeds. But there is nothing more to be produced on these issues. After a painstaking investigation, Meltwater provided to AP all the information that can be found in its records showing any use by Meltwater customers of the Articles in Suit. That evidence shows that AP's secondary infringement claims are unfounded. AP's demand for additional discovery seeks information that does not exist and asks that Meltwater redo work that it has already done at considerable expense and effort.

*Third*, AP's request for production of newsletter emails sent by Meltwater customers that include snippets of the Articles in Suit is barred by the Electronic Communications Privacy Act, 18 U.S.C. § 2702 et seq. ("ECPA"). Such discovery is also unnecessary, as AP already has in its possession all the information on this subject that is plausibly relevant to Meltwater's summary

judgment motion.  Meltwater provided that information in the form of declarations that, by design, gave AP the evidence it needed, while honoring Meltwater's ECPA obligations.  AP has had those declarations for months, and has never objected to them or claimed that they were in any way inadequate.

*Fourth*, AP's request for more, unspecified discovery into Meltwater's supposed knowledge of alleged infringement by its customers is precisely the sort of fishing expedition that Rule 56(d) forbids.  The Second Circuit has made clear that a Rule 56(d) declaration must, at a minimum, set forth:  "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."  *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir. 1989).  AP's request for additional knowledge discovery does not come close to satisfying these requirements.

In sum, AP's 56(d) application provides no basis for denying or delaying decision on Meltwater's motion for summary judgment.

## ARGUMENT

## I.   AP IS NOT ENTITLED TO "SUPPLEMENTAL" DISCOVERY CONCERNING ARTICLES OTHER THAN THE ARTICLES IN SUIT

AP admits that its extensive discovery to date has shown that no Meltwater customer saved the full text of any of the Articles in Suit to an archive folder or shared the full text of any Article in Suit using Meltwater's newsletter or newsfeed features.  AP 56(d) Decl. ¶ 6.  As Meltwater has explained, that failure of proof dooms AP's secondary infringement claims.  *See* Meltwater MSJ at 26-31.  AP now seeks to stave off summary judgment by seeking "supplemental discovery" into whether Meltwater customers may have used the newsletter tool to store or share additional AP articles *other than the Articles in Suit*.  AP 56(d) Decl. ¶¶ 20-26 (seeking a "representative sample" of all Meltwater newsletters sent over a particular time period, regardless of whether those newsletters contain text from any of the Articles in Suit).

AP's bid for discovery into the alleged infringement of works that it has not registered or identified in its Complaint is improper, not least because it has already been considered and rejected by the Court.

At the start of the case, AP sought to conduct a wide-ranging investigation into whether Meltwater customers stored or distributed full-text versions of any AP article. *See* Grealis Reply Decl. Ex. 10 ("AP May 4 Letter"). Meltwater objected to that effort on the grounds that only AP works that were registered with the U.S. Copyright Office and specifically identified in the Complaint could be the subject of a valid copyright infringement claim. *See* Grealis Reply Decl. Ex. 9 ("Meltwater May 4 Letter"). Then (as now) AP argued that copyright registration is expensive and time-consuming, and that it thus was unfair to limit its infringement claims to the subset of articles that it had successfully registered.[1] After considering the parties' arguments and conducting a conference, the Court denied AP's request for discovery pertaining to unregistered, unidentified works:

> I am going to proceed at this stage of the discovery with limiting examination of how the Meltwater system actually worked with respect to particular article or a particular customer to the 19 [now 33] articles for which plaintiff has a registered copyright and which form the basis of its claims in this lawsuit.

Hearing Tr. May 11, 2012 at 3:22-4:2 (Dkt. No. 22). The Court's ruling reflected the well-established rule that "you cannot bring a claim for copyright infringement unless you have a registered copyright in the work." *Id.* 3:2-22.[2] To honor this requirement while still

---

[1] *Compare* AP May 4 Letter at 2 ("Nor could the AP realistically and cost-effectively register the 1000+ articles it produces a day on an individual basis since the Copyright Office has made it clear that it does not qualify for any of the bulk registration provisions."), *with* AP 56(d) Decl. ¶ 7 ("Yet because the Copyright Office has made clear that AP does not qualify for any of the bulk registration procedures, it is not financially feasible for AP to register each of its articles at a cost of $65 per article for standard registration and $760 per article for an expedited registration.").

[2] The Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Thus, a copyright owner "cannot enforce his rights in the courts until he has made registration." H.R. Rep. No. 94-1476, at 157 (1976); *see also* S. Rep. No. 100-352, at 13 (1988) ("[C]ompliance with copyright registration procedures is a statutory prerequisite to the (continued...)

accommodating AP's interest in having a sufficient sample size for its infringement claims, the Court gave AP time to amend its complaint to add new registered works to the case. *Id.* at 11:19-12:15. AP took advantage of that opportunity, adding 14 additional articles, bringing the total number of Articles in Suit identified in its Amended Complaint to 33. Am. Compl. (filed July 13, 2012) (Dkt. No. 30).

There is no basis for revisiting the Court's order now. The time for reconsideration has long past, and a 56(d) motion is not a proper vehicle for reconsideration anyway. *See McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 588 (W.D.N.Y. 1995) (denying 56(f) request where "plaintiff belatedly seeks the same [discovery] which the court has already denied by granting the motion to quash"); *see also Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."). Moreover, AP's bid for discovery relating to unregistered works has no more merit now than it did when AP made the same request months ago. The Court's order confining discovery to the specific Articles in Suit was correct as a matter of law. Any other result would have been at odds with Section 411(a)'s registration requirement. *See supra* n.2. That requirement cannot be ignored or relaxed merely because it may not be "financially feasible" for AP to register each of its works. *See Muench*, 2012 WL 1021535, at *4 ("The requirement that a plaintiff seeking to avail itself of the remedial provisions of the Act first register its copyright is no mere formality.").

---

(...continued from previous page)

right of an author or other copyright proprietor to seek any redress, whether by injunction, damages or both, for infringement of the work."); *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1242 (2010) (§ 411(a) "establishes a condition—copyright registration—that plaintiffs ordinarily must satisfy before filing an infringement claim and invoking the Act's remedial provisions"); *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, No. 09-2669 (LAP), 2012 WL 1021535, at *5 (S.D.N.Y. Mar. 26, 2012) ("§ 411(a) imposes a bar to copyright infringement claims where a plaintiff has not either received or been denied a copyright registration at the time such a claim is interposed").

The Court's ruling also was more than fair to AP.  It allowed AP to register and include in its Amended Complaint as many articles as it wished.  It gave AP ample time in the discovery period leading up to the parties' motions for summary judgment to investigate whether any of those newly added Articles in Suit was directly infringed by Meltwater's customers.  And (as discussed in more detail below), AP took advantage of that opportunity, conducting comprehensive discovery regarding alleged infringement of the Articles in Suit by Meltwater's customers.  The fact that those efforts came up empty does not entitle AP to more discovery about other works.  To the contrary, the Court expressly rejected that approach, making clear that if – *but only if* – AP successfully established infringement as to the actual Articles in Suit might it then be entitled to further discovery regarding other AP works.  Hearing Tr. May 11, 2012 at 4:21-24, 5:1-4.[3]  For these reasons, AP's request for discovery disconnected from the Articles in Suit should (once again) be rejected, and Meltwater's motion for summary judgment should be granted on AP's secondary infringement claims relating to those Articles.

## II.   AP IS NOT ENTITLED TO FURTHER DISCOVERY ABOUT THE APPERANCE OF THE ARTICLES IN SUIT IN ARCHIVES AND NEWSFEEDS

Recognizing that it has no evidence of any instance in which a Meltwater customer included the full text of any Article in Suit in an archive folder or newsfeed, AP asks for more discovery into those matters.  AP 56(d) Decl. ¶¶ 9-13.  This request is equally without merit.  AP's declaration is generic and supplies none of the specifics that Rule 56(d) requires:  "the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why

---

[3]    AP's renewed request for discovery regarding unregistered works in service of a claim for "broad injunctive relief" is misguided.  AP 56(d) Decl. ¶ 24.  The Court specifically directed that AP would first need to "succeed in proving an infringement or a contributory infringement with respect to the 19 articles on which it sued" before it could "come back to me and seek broader discovery."  Hearing Tr. May 11, 2012 at 5:1-4.  AP has failed to make that showing, and thus under both black-letter law and the Court's ruling, it is not entitled to any further discovery, whether in service of an injunction of otherwise.

those efforts were unsuccessful." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994). The absence of this required information is reason alone to reject AP's application. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985) (denying 56(d) request where plaintiff did not "disclose[] with any specificity what it desired to elicit").

The shortcomings in AP's 56(d) application are not surprising, as AP has already received all the information that reasonably can be unearthed regarding possible instances in which Meltwater customers saved excerpts from the Articles in Suit in archives folders or included them in newsletter emails. In response to AP's discovery requests, Meltwater conducted an extensive investigation aimed at finding and producing all available evidence about its customers' use of the Articles in Suit – whether in archives, newsletters, or newsfeeds. This investigation spanned approximately six months and involved multiple Meltwater employees, who were diverted from their regular jobs in order to sift through Meltwater's extensive records for the appearance of any text (even small portions) of the Articles in Suit. *See* Saab SJ Decl. ¶¶ 3, 37 (describing Meltwater's investigation). Those efforts were exhaustive: employees had to write new computer scripts just to conduct the searches, and in many instances were forced to manually gather, combine, sort, and reformat large quantities of data from different computer systems. Grealis Reply Decl. Ex. 2 (Saab. Dep. 309:1-310:9). Meltwater's investigation resulted in the production of voluminous evidence, including two massive spreadsheets that detailed all recorded use of any portion of the Articles in Suit by Meltwater's customers. Saab SJ Decl. ¶¶ 37-43; Grealis Decl. Exs. 80-81. That inquiry supplied AP with all the information that can be found in Meltwater's records concerning whether any Meltwater customers stored any text from the Articles in Suit in archive or included such text in newsfeeds. There simply is no more discovery reasonably to be had on these subjects.

AP's 56(d) declaration gives no reason for thinking otherwise. It does not identify any faults with Meltwater's investigation. Nor does it identify any particular information regarding

Meltwater customers' use of archives and newsfeeds that is likely to be found but that Meltwater has not already produced. Instead, the only excuse that AP offers for requesting more discovery is the claim that Meltwater "failed to preserve" all such evidence. AP 56(d) Decl. ¶¶ 9, 13. That suggestion is entirely meritless. As AP has known for many months, Meltwater's computer systems have never stored information about news articles that its users once saved in archives or caused to be displayed in newsfeeds but subsequently removed. Meltwater explained this to AP early in the meet-and-confer process, and its witnesses testified in deposition that the company has never created such records and that there would be no business purpose for doing so. Grealis Reply Decl. Ex. 2 (Saab Dep. 334:25-335:13; 336:10-13). Meltwater's longstanding record-keeping practices are entirely legitimate, and AP would have had no basis for demanding that Meltwater reengineer its operations (at considerable effort and expense) to create new records.[4] But, in any event, AP did not make such a demand: it never went to Court asking for an order compelling Meltwater to change its systems to begin storing new categories of information. While that request would almost certainly have been unsuccessful, AP's failure to take that step means that it cannot now rely on Rule 56(d) to avoid summary judgment. *See, e.g., Burlington Coat Factory*, 769 F.2d at 928 ("A party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need."); *Vargas v. Midtown Air Condition and Ventilation, Ltd.*, No. 07 Civ. 3343 (RMB), 2008 WL 5062611, at *8 (S.D.N.Y. Nov. 24, 2008) (denying 56(d) request where "Plaintiffs were not diligent in pursing discovery"); *Desclafani v. Pave-Mark Corp.*, No. 07 Civ. 4639 (HBP), 2008 WL 3914881, at *8 (S.D.N.Y. Aug. 22, 2008) (same).

---

[4] *See, e.g., Nielsen v. Soc'y of N.Y.*, No. 87 CIV. 8526 (RO), 1988 WL 100197, at *3 (S.D.N.Y. Sept. 22, 1988) ("[D]efendant is not required to alter its computer program or create records not kept in the ordinary course of business."); *Ingram v. Home Depot, U.S.A., Inc.*, No. CIV. A. 97-8060, 1999 WL 88939, at *3 (E.D. Pa. Feb. 19, 1999) ("A defendant in a civil action cannot be compelled to create, upon the request of the plaintiff, documentary evidence which is not already in existence in some form.").

In short, AP has all the information that could be found in Meltwater's records about the appearance of the Articles in Suit in archive folders and newsfeeds. AP's demand for additional information is a request for records that do not exist – and that did not exist at the time AP sued. In seeking such "supplemental discovery," AP is merely trying to delay the inevitable: summary judgment for Meltwater on secondary liability claims that were deficient when AP made them and that extensive discovery has shown to be unfounded. AP's request should be denied.

### III.  AP IS NOT ENTITLED TO ADDITIONAL DISCOVERY CONCERNING MELTWATER CUSTOMERS' CREATION OF NEWSLETTER EMAILS

AP also asks that a ruling on Meltwater's summary judgment motion be delayed until AP is given "all customer newsletters containing text from the Registered Articles." AP 56(d) Decl. ¶ 15. This request is equally misguided. Meltwater has already given AP all of the pertinent information – and everything that Meltwater may legally disclose – concerning the tiny number of customer newsletter emails containing excerpts from any of the Articles in Suit.

Months ago, Meltwater provided AP with two declarations that described in detail the results of its investigation into the appearance of text from the Articles in Suit in newsletter emails. Grealis Decl. Exs. 73-73. Those declarations were prepared by Sara Saab, the Meltwater employee who had conducted the relevant investigation. Ms. Saab's declarations explained – and AP does not dispute – that no Meltwater customer created a newsletter containing the full text of any Article in Suit. Grealis Decl. Ex. 73 (¶ 3); *id.* Ex. 74 (¶ 3); Meltwater SUF ¶ 61.[5] The declarations also explained that Meltwater had located 10 newsletter emails sent by just three customers that contained short excerpts of text from a total of two of the Articles in Suit.

---

[5] AP expressly told the Court (and Meltwater) that its secondary infringement claims were based only on the *full text* use of its articles by Meltwater customers. Grealis Decl. Ex. 57 at n.1 ("The secondary infringement claims are based on the use of the *full text* of AP articles, whereas the direct liability claims are based on the use of *excerpts* from AP articles"). Meltwater relied on this statement in briefing its motion for summary judgment, and AP is now estopped from retreating from its representation by asserting claims based on Meltwater customers' mere use of article snippets in newsletter emails. *See, e.g., Bennett v. U.S. Lines, Inc.,* 64 F.3d 62 (2d Cir. 1995).

Grealis Decl. Ex. 73 (¶ 3); *id.* Ex. 74 (¶¶ 4-5). For each of those newsletters, the declarations carefully set forth, among other things: (1) the date on which the newsletter was created; (2) the specific Articles in Suit from which the snippets were drawn; (3) the original online source that published those articles; (4) the number of words/characters from the Articles in Suit included in the snippets contained in the newsletter emails; and (5) whether the snippet that was included contained an "opening sentence" or "hit sentence." *Id.* In addition, Meltwater made Ms. Saab available for deposition on these issues, including the nature of her investigation and Meltwater's newsletter email functionality more broadly. *See* Grealis Reply Decl. Ex. 2 (Saab Dep. 338:22-339:25, 373:17-376:12).

The reason that Meltwater did all this, rather than just producing the newsletter emails themselves, is that the emails are protected from disclosure by ECPA. ECPA prohibits an "electronic communications service" from disclosing the contents of electronic communications that it holds in electronic storage. 18 U.S.C. § 2702(a). Meltwater is an "electronic communications service provider" (18 U.S.C. § 2510(15) (defining term)), and its customers' newsletter emails are "electronic communications" that Meltwater cannot disclose, even in response to a civil discovery request. *See Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 264 (S.D.N.Y. 2008) (explaining that ECPA contains "no exception for disclosure of such communications pursuant to civil discovery requests").[6] Because the additional discovery that AP seeks is barred by ECPA, AP's 56(d) request fails as a matter of law.

AP's demand for the newsletter emails also comes too late. AP has long been aware that ECPA bars Meltwater from producing its customer newsletter emails. Meltwater raised this

---

[6]   *See also, e.g., Bower v. Bower*, 808 F. Supp. 348, 350 (D. Mass. 2011) ("[C]ourts have repeatedly held that providers such as ... Google may not produce emails in response to civil discovery subpoenas."); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 614 (E.D. Va. 2008) ("[T]he plain language of the [ECPA] prohibits AOL from producing the Rigsbys' e-mails in response to State Farm's subpoena because a civil discovery subpoena is not a disclosure exception under the [ECPA].").

issue months ago in meet-and-confers, provided AP with information about ECPA, and explained in discovery responses (and elsewhere) that the statute prohibits disclosure of private customer emails. *See Klausner Decl. Ex. 68 at Response to Request 22; Grealis Reply Decl. Ex. 6 (email from B. Willen to L. Steinman et al., dated April 30, 2012).* After repeated discussions about these issues between the parties, Meltwater told AP that – in order to ensure that both parties had the evidence they needed to make their summary judgment arguments, while still complying with ECPA – Meltwater would prepare and produce declarations summarizing the results of its investigation into the appearance of the Articles in Suit in customer newsletters. Meltwater made clear to AP that these declarations would be provided in lieu of producing the actual newsletter emails, which was prohibited by ECPA. As it now concedes, AP agreed with this approach. *See AP 56(d) Decl. ¶ 17.* And, after receiving Meltwater's declarations, AP never claimed that they were inadequate or objected to them in any way. Having taken no steps to seek additional discovery concerning these emails during the discovery period, it is too late for AP to do so now. *See supra* at 7.

Beyond the legal bar of ECPA and AP's acquiescence in Meltwater's use of declarations, AP's bid for production of the emails themselves should be rejected for the simple reason that AP has failed to identify any information likely to be gleaned from them that AP does not already have and that could somehow defeat Meltwater's motion. That is to be expected, as the declarations provide all the information that could reasonably be thought necessary for AP to address whether Meltwater's customers engaged in direct infringement by creating the newsletter emails.[7] Because AP fails to show "how the facts sought are reasonably expected to create a

---

[7]     As described above (*supra* n.5), AP's statement to the Court limiting its secondary liability claims to full text use of the Articles in Suit (which Meltwater relied on) prevents it from changing tune now and trying to base those claims on the mere use of snippets. In any event, for the newsletters that contained short snippets from the Articles in Suit, the declarations explained exactly how many words/characters were used and whether that text was from the opening text of the article or the "hit sentence." That gives AP enough information to make its argument that the use of such excerpts was infringing – an argument that fails as a matter of law, because such limited private emailing of article snippets by Meltwater

(continued...)

genuine issue of material fact," its request for further discovery does not satisfy Rule 56(d).

*Paddington Partners*, 34 F.3d at 1138; *see also, e.g.*, *Banque Nationale de Paris S.A., v. Ins. Co. of N. Am.*, 896 F. Supp. 163, 166 (S.D.N.Y. 1995) (denying 56(d) request where party offered "no reasonable basis from which to infer that discovery would produce evidence of the existence of a genuine issue of material fact that would defeat this summary judgment motion").

## IV.    AP IS NOT ENTITLED TO ADDITIONAL "KNOWLEDGE" DISCOVERY

As Meltwater has explained, there is no evidence that Meltwater knew about any instance in which its customers included text from the Articles in Suit in archives, newsletter emails, or newsfeeds. This provides an independent basis for granting summary judgment to Meltwater on the secondary liability claims. *See* Meltwater MSJ at 32-33. AP's 56(d) declaration seeks to avoid that result by requesting "discovery of communications between Meltwater employees and the specific customers who have archived text from [the Articles in Suit], included [an Article in Suit] in a newsfeed, and/or included text from [an Article in Suit] in a newsletter." AP 56(d) Decl. ¶ 27. AP apparently hopes to find something – anything – to support its allegation that Meltwater knew about and materially contributed to direct infringement of the Articles in Suit by its customers. For at least three reasons, AP's bid for this additional discovery cannot prevent summary judgment.

*First*, as discussed above (and in Meltwater's motion for summary judgment), AP's secondary infringement claims cannot stand because there is no evidence of any direct infringement of the Articles in Suit by Meltwater's customers. Given that there was no direct infringement for Meltwater to have knowledge of, there is no basis for further discovery regarding such knowledge.

---

(...continued from previous page)
customers is fair use. Meltwater's production of the email newsletters themselves – even if permitted by ECPA – would not change that. Meltwater SJ Reply Br. at 13.

*Second*, AP already has been provided with extensive discovery concerning Meltwater's communications with its customers.  AP requested:

- All communications between Meltwater News sales or customer service personnel and Meltwater News customers concerning the storage of articles in a customer archive.

- All documents and communications concerning whether full-text articles used in customer newsletters are licensed from copyright holders.

Klausner Decl. Ex. 68 at Requests No. 6, 24.  Meltwater agreed to produce documents responsive to these requests and long ago produced over 53,000 documents (in contrast to roughly 3,000 documents from AP), including extensive correspondence between its employees and customers.  AP does not explain why Meltwater's production was in any way incomplete, particularly in light of the limitations that both parties expressly agreed to, or why more emails from other unidentified sources would reasonably be expected to change the landscape.  Simply put, AP has all the documents regarding Meltwater's knowledge to which it is entitled.  It is telling in that respect that AP "does not identify any particular documents that [it] has not yet received – instead [it] simply asserts that there must be more documents in existence." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 331 (S.D.N.Y. 2009).  Under Rule 56(d), that will not do. *See id*; *Hudson River Sloop Clearwater*, 891 F.2d at 422; *Paddington Partners*, 34 F.3d at 1138.

*Third*, AP made no effort during the discovery period to seek any additional documents regarding Meltwater's knowledge of infringement, including the additional communications between Meltwater and its customers that it now claims to want via its 56(d) declaration.  AP tries to excuse its lack of diligence by claiming that "it was AP's understanding that Phase I of this case did not include third-party discovery."  AP 56(d) Decl. ¶ 27.  That excuse rings hollow.  Nothing in the Court's rulings or the parties' agreement excluded third party discovery from the initial phase of discovery.  Meltwater served several third-party subpoenas at the very start of the period, and AP never moved to quash or otherwise sought clarification from the Court as to whether third party discovery was permissible in Phase I.  Indeed, the parties' joint letter to the

-12-

Court of July 13, 2012 setting forth a revised discovery schedule that *specifically contemplated non-party depositions*. Dkt. 29. AP had every chance to take third-party discovery, but chose not to do so. In any event, AP's supposed confusion about the propriety of third-party discovery does not explain why AP did not *ask Meltwater* for additional email communications that might bear on knowledge. AP's inexplicable lack of diligence would warrant denial of its application, even if its request otherwise had merit, which it does not. *See, e.g.*, *Nicholson v. Doe*, 185 F.R.D. 134, 137 (N.D.N.Y. 1999) (denying 56(d) request for lack of diligence in discovery where "Plaintiff has not submitted any evidence that it sought additional discovery from defendants prior to the cut-off date.").

## CONCLUSION

A robust discovery process has confirmed that AP's secondary infringement claims have no merit. AP's 56(d) request offers no basis to avoid summary judgment on those claims.

Dated:  January 11, 2013

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: _____

TONIA OUELLETTE KLAUSNER
BRIAN M. WILLEN
CATHERINE GREALIS
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone:  (212) 497-7700

DAVID H. KRAMER (admitted *pro hac vice*)
650 Page Mill Road
Palo Alto, California 94304
Telephone:  (650) 493-9300

*Attorneys for the Defendants*

-14-